UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6009-CIV-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,

    Plaintiff,

v.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,

    Defendants.

_____/



### DEFENDANTS', JENNE, HITCHCOCK AND BROWARD COUNTY'S, MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

The Defendants, KEN JENNE, WILLIAM HITCHCOCK and BROWARD

COUNTY DEPARTMENT OF CORRECTIONS AND REHABILITATION, by and

through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure

56 and Local Rule 7.5, hereby respectfully request this Court to enter an order

granting summary judgment in their favor, and in support thereof states:

### INTRODUCTION

This is a 42 U.S.C. §1983 action for an alleged violation of Plaintiff's First

Amendment Right to receive publications through the United States Mail as a pre-

trial detainee in Broward County's Main Jail.  Plaintiff alleges that Defendants,

without justification, violated his First Amendment Right by not permitting him to

receive publications through the United States Mail during his incarceration at the

jail. Plaintiff further alleges that he has been punished for filing grievances on his

alleged First Amendment violations by: (1) being denied access to the jail's law

library; (2) being placed in a high custody cell; and (3) having his legal documents

confiscated and destroyed.  Plaintiff further alleges that Defendants do not apply the

ban on publications equally to all housed at the jail.

## CONCISE STATEMENT OF MATERIAL FACTS

1.    On March 20, 1997, the Broward Sheriff's Office revised its Standard

Operating Procedure (SOP) 5.4.1 entitled Inmate Mail Procedures.[1]

2.    SOP 5.4.1 J.1 states that "Books, magazines, and newspapers for

inmates will not be accepted through the mail."[2]

3.    This SOP, as well as all the others, are applied equally to everyone

housed at the jail whether their status is that of an inmate or a pre-trial detainee.[3]

---

[1]See Bate Stamp numbers 131-135.

[2]See Bate Stamp number 134.

[3]See affidavit of William Hitchcock, attached hereto as Exhibit "A".

4.       The purpose of SOP 5.4.1 is to maintain order and security within the jail.[4]

5.       Plaintiff has been in custody at the Broward County Main Jail since July 18, 1997. (support)

6.       Currently, Plaintiff has approximately 35 charges against him which are pending trial. Until said charges are determined, Plaintiff will remain at the jail as a pre-trial detainee. (support)

7.       On or about October 28, 1997, Plaintiff made his first inquiry as to how he was to go about receiving books and/or magazines through the mail.[5]

8.       In November 1997, Plaintiff received a response informing him that books and magazines from the publisher were not permitted into the jail and that is why his request was denied.[6]

9.       On November 20, 1998, Plaintiff requested a copy of the rules which govern the receipt of religious materials through the mail.[7]

---

[4]See affidavit of Hitchcock.

[5]See Inmate Request Form date 10/28/97, attached to Plaintiff's complaint.

[6]See Inmate Request Form dated 10/28/97, attached to Plaintiff's complaint.

[7]See Inmate Request Form dated 11/20/97, attached to Plaintiff's complaint.

ADORNO & ZEDER, P.A.
888 SOUTHEAST 3RD AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33335-9002 • TELEPHONE (954)523-5885 • TELEFAX (954) 760-9531

10.    On November 23, 1998, Superintendent William Hitchcock responded to Plaintiff's request via memorandum and provided him a copy of the revision to SOP 5.4.1. Hitchcock further informed Plaintiff that the remaining SOP's were available to him in the law library.[8]

11.    Plaintiff has been permitted to receive religious publications through the mail while a pre-trial detainee at the Broward County Main Jail.[9]

12.    On April 11, 1998, while Plaintiff was in his cell, he was observed setting a fire while in possession of an unauthorized material.[10] Plaintiff was disciplined for said incident by receiving three (3) days in lockdown.[11],[12]

13.    On August 8, 1998, Plaintiff was relocated to the 8th floor of the jail due to violent acts.[13]

_____

[8]See Interoffice Memorandum dated 11/23/98 attached to Plaintiff's complaint.

[9]*See Plaintiff's complaint, ¶2 of Statement of Facts.*

[10]See bate stamp no. 119.

[11]The 8th floor is where the high custody cells are located and where the inmates are considered to be in "lockdown". While on the 8th floor, inmates are only permitted to leave their cell for one hour a day.

[12] *See* bate stamp no. 118.

[13]See bate stamp no. 148.

14. On February 16, 1999, Plaintiff was relocated to the 8th floor of the jail due to violent/disruptive behavior.[14]

15. On October 5, 1999, while Plaintiff was in his cell, he was observed trying to cook some food while in possession of an unauthorized object (metal stinger).[15] Plaintiff was disciplined for said incident by receiving thirty (30) days in lockdown. (support)

16. On November 23, 1999, Deputy Wilcox obtained a file from Plaintiff containing grievances, inmate request forms and commissary ledgers.[16]

17. Said file was obtained to investigate an alteration on the commissary ledgers.[17]

18. After said investigation, Deputy McManus returned the file to Plaintiff the same way it was received.[18]

19. As of June 8, 1998, Plaintiff's access to the law library has been as follows:

---

[14]See bate stamp no. 149.

[15]See bate stamp no. 117.

[16]See affidavit of Deputy Wilcox, attached hereto as Exhibit "B".

[17]See affidavit of Deputy Wilcox.

[18]See affidavit of Deputy McManus, attached hereto as Exhibit "C".

Monday from 7:30 am-11:45 am
Tuesday from 7:30 am-11:45 am and 12:30 pm-2:30 pm
Wednesday from 12:30 pm-2:30 pm
Thursday from 7:30 am-11:45 am and 12:30 pm-2:30 pm

for a total of approximately 18 hours per week.[19],[20]

## MEMORANDUM OF LAW

### I.    Applicable legal standards

#### A.    Standard for granting summary judgment.

Rule 56(b) of the Federal Rules of Civil Procedure provides, in relevant part,

that:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a
> declaratory judgment is sought may, at any time, move with or without
> supporting affidavits for a summary judgment in the party's favor as to all or
> any part thereof.

Fed.R.Civ.P. 56(b). In ruling on a motion for summary judgment, a court must

review all facts and inferences in a light most favorable to the non-moving party. It

must consider all facts before it, and not merely those alleged by the non-moving

party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Kirby v.</u>

<u>Siegelman</u>, 195 F.3d 1285, 1289 (11th Cir. 1999) ("Summary judgment is

---

[19]With the exception of when Plaintiff was in lockdown as he was only permitted to leave his cell
for one hour a day.

[20]*See bate stamp no. 76.*

appropriate where, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law").

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-248, 106 S.Ct. 2510 (emphasis in original). The non-movant need not be given the benefit of every inference but only every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988). As the Supreme Court noted in Anderson, "[t]there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for the party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511. "Summary judgment procedure is properly regarded not as a disfavored procedure shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

Federal courts are charged with the duty of liberally construing complaints filed by *pro se* plaintiffs to allow them to develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079 (1972). However, it is not the court's function to decide issues of fact, but rather to decide *whether* there is an issue of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986) (emphasis added).

## B.    Standard for claims arising under 42 U.S.C. §1983 alleging a First Amendment Violation.

As Plaintiff was, and still is, a pre-trial detainee, due process mandates that he not be subject to punishment, whereas an inmate may be. According to Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979), the appropriate inquiry to determine if a pre-trial detainee's rights have been violated is "whether those conditions [the detainee is subject to] amount to punishment." "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment'." Id. at 539. See also Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997).

As a detainee retains certain constitutional rights, those rights are still subject to restrictions and limitations. "A detainee simply does not possess the full range of freedoms of an unincarcerated individual". Bell, 441 U.S. at 546. Legitimate

governmental interests, including maintaining order and security, are valid goals

which may require a limitation on the constitutional rights of inmates and detainees

alike. Id.

## C.     Standard for qualified immunity.

It is also well established that "[u]nder qualified immunity, 'government

officials performing discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Alexander v.

Fulton County, Ga., 2000 WL 331384, 7  (11th Cir. 2000) (citing Harlow v.

Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  As the

Alexander court explained:

> *For the law to be clearly established to the point that qualified immunity does
> not apply, the law must have earlier been developed in such a concrete and
> factually defined context to make it obvious to all reasonable government actors,
> in the defendant's place, that 'what he is doing' violates federal law.*'[ ] And
> 'for qualified immunity to be surrendered, pre-existing law must dictate, that
> is, truly compel (not just suggest or allow or raise a question about), the
> conclusion for every like-situated, reasonable government agent that what
> defendant is doing violates federal law in the circumstances.'

Id. (internal citations omitted) (emphasis added); Priester v. City of Riviera Beach,

Fla., 208 F.3d 919,  926 (11th Cir. 2000).  Therefore, the first consideration for the

court when analyzing the defense of qualified immunity is whether the government

actor was "acting within the scope of her discretionary authority when the alleged

wrongful acts occurred." Id. (citing Evans v. Hightower, 117 F.3d 1318, 1320 (11th

Cir. 1997). *If it is established that the government actor was acting within her*

*discretionary authority, it is then Plaintiff's burden to "demonstrate that she violated*

*clearly established law based on objective standards.*" Id.; Priester, 208 F.3d at 925-

26 (holding that "once public official proves that he was acting within scope of his

discretionary authority, the plaintiff must demonstrate that the official's acts, at the

time they were taken, violated clearly established federal statutory or constitutional

rights of which a reasonable person would have known") (emphasis added).

## II.        APPLICATION OF THE LAW TO THE FACTS

### A.        Plaintiff fails to present any evidence which would show that DEFENDANTS violated any of Plaintiff's civil rights

Plaintiff has failed to present any evidence that the ban on the receipt of

publications into the jail has violated his civil rights.  The ban is not intended as

punishment but rather is in place to maintain the security and order within the jail.

This is evidenced by the affidavit of Defendant Hitchcock which was sworn to under

oath.  Defendant Hitchcock states that this ban helps to ensure that no weapons or

drugs reach any of the inmates or pre-trial detainees.[21]  This ban further prevents the

---

[21]See affidavit of Hitchcock.

*Lawson v. Jenne, et al*
*USDC Case No.: 00-6009*

risk of disorder at the jail whereas an inordinate amount of time would have to be spent by the deputies searching and inspecting all of the books, magazines, newspapers, etc. which arrived at the jail.[22]  Based upon this sworn testimony, it is for the Court to decide whether the ban on publications is in place to further a legitimate governmental purpose. Bell, 441 U.S. at 538. In considering the purpose of the ban on publications, courts should heed the warning that such "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. at 540 n.23.

Furthermore, SOP 5.4.1 is in compliance with Florida Admininstrative Code §33-501.401 which governs what reading materials may be taken into Florida jails and under what circumstances materials may be excluded. In order to exclude materials from the jail, it must be determined that the publication "presents a threat to security, order, or rehabilitation objectives of the correctional system or the safety of any person." FLA. ADMIN. CODE §33-501.401(2)(k).

Not only does SOP 5.4.1 comply with the Florida Administrative Code, it complies with Florida Statute §944.11 which permits the Department of Corrections

---

[22]See affidavit of Hitchcock.

to regulate the admission of books. "The department shall have the authority to prohibit admission of such materials at a particular state correctional facility upon a determination by the department that such material or publications would be detrimental to the safety, security, order or rehabilitative interests of a particular state correctional facility or would create a risk of disorder at a particular state correctional facility." §944.11(2), Fla. Stats. (1999).

As Hitchcock stated in his affidavit, publications are excluded as they present a threat to security as weapsons or drugs could be concealed and smuggled in.[23] Publications also pose a threat to the order of the jail as the deputies would spend hours searching and inspecting every publication that entered the jail and would take them away from their main purpose, guarding the jail and the inmates.

Plaintiff further alleges that he has been punished for continuing to point out that his civil rights are being violated.[24] The first way he claims he is being punished is by being denied access to the law library. Plaintiff's access to the law library has been denied, but only when he was in lockdown.[25] When an inmate is in lockdown, it is due to the display of violent and/or disruptive behavior, failure to follow

---

[23]See affidavit of Hitchcock.

[24]See Plaintiff's complaint, ¶10 under Statement of Facts.

[25]See affidavit of Hitchcock.

commands or failure to adhere to the rules and regulations of the jail.[26] While in lockdown, an inmate is only permitted out of his cell for one hour a day.[27] Upon further disobedience, that one hour can be taken away.[28]

Plaintiff not only has access to the law library, he is scheduled to be in the law library for approximately 18 hours per week,[29] thus, negating his allegation that he is denied access to the law library.

Furthermore, SOP 7.4, which regulates the inmates' access to the law library, has been and is complied with by the deputies at the jail.[30]

Plaintiff next contends that he has been moved to a high custody cell for alleging his civil rights are being violated. Plaintiff has been moved to a high custody cell on a number of occasions for flagrant violations of the jail rules and regulations as well as the display of violent and/or disruptive behavior. For instance, Plaintiff was seen starting a fire in his cell[31] and has been caught with possession of a metal stinger

---

[26]See affidavit of Hitchcock.

[27]See affidavit of Hitchcock.

[28]See affidavit of Hitchcock.

[29]See Bate Stamp number 76.

[30]See Bate Stamp number 169.

[31]See Bate Stamp number 119.

ADORNO & ZEDER, P.A.
888 SOUTHEAST 3RD AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33335-9002 • TELEPHONE (954)523.5885 • TELEFAX (954) 760-9531

made from hair clippers.[32]  It is due to Plaintiff's behavior and actions that he has

been placed in a high custody cell, not the allegations that his civil rights are being

violated.

Plaintiff lastly contends that he has had documents confiscated from his cell

only to be destroyed by Deputy Wilcox.  According to Deputy McManus, a file was

taken from Plaintiff which only contained grievances, inmate request forms and

commissary ledgers.[33]  This file was taken because there was an alteration on one of

the ledgers.[34]  After determining the cause of the alteration, the file was returned to

Plaintiff just as it was when it was taken.[35]

Plaintiff also makes an allegation that SOP 5.4.1 is not applied equally across

the board to all inmates.  This allegation is conclusory at best as Plaintiff provides no

credible evidence that this did, or does occur.  See Avirgan v. Hall, 932 F.2d 1572

(11th Cir. 1991) (holding that the evidence presented cannot consist of conclusory

allegations which would not be admissible at trial).

## B.     DEFENDANTS are entitled to qualified immunity.

[32]See Bate Stamp number 117.

[33]See Bate Stamp number 69 and affidavit of Deputy McManus.

[34]See affidavit of Deputy McManus.

[35]See affidavit of Deputy Wilcox.

14

The record clearly reveals that DEFENDANTS, Ken Jenne as the Broward
County Sheriff, and William Hitchcock, as the Superintendent of the Main Jail, were
performing their discretionary functions when Plaintiffs requests to receive
publications through the mail were denied. Since DEFENDANTS were performing
their discretionary functions during Plaintiffs stay at the jail, the burden thereby
shifts to Plaintiff to demonstrate that those actions violated Plaintiff's clearly
established statutory or constitutional rights of which a reasonable person would have
known. Priester, 208 F.3d at 925-926.

Plaintiff has failed to satisfy his burden of demonstrating that DEFENDANTS
violated clearly established law when they denied Plaintiffs request to receive
publications through the mail in furtherance of maintaining order and security at the
jail. Although the Due Process Clause forbids a pre-trial detainee to be punished
prior to an adjudication of guilt, the DEFENDANTS have the right to further
legitimate governmental interests, i.e. order and security at the jail. Plaintiff has
failed to show; *One*, that the ban on publications was meant as a punishment, and
*Two*, that under the totality of the circumstances at issue in this case,
DEFENDANTS violated any of Plaintiff's "clearly established" statutory or
constitutional rights. Simply, Plaintiff has failed to show (and the current state of the

law does not clearly establish) that DEFENDANTS' adherence to SOP 5.4.1 is a clear violation of Plaintiff's civil rights.

As the Eleventh Circuit Court of Appeals has reiterated, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." <u>Priester</u>, 208 F.3d at 926. In fact, as the authority cited herein demonstrates, at all times material in this matter, a reasonable person would not have known that DEFENDANTS' application of SOP 5.4.1 would be in violation of Plaintiff's civil rights. Plaintiff has clearly failed to establish that the law had "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in [DEFENDANTS'] place, that 'what [they were] doing violated federal law.'" <u>Alexander</u>, 2000 WL 331384 at 7. Consequently, DEFENDANTS are entitled to qualified immunity protection and their Motion for Summary Judgment should be granted in its entirety.

## CONCLUSION

Based on the authority cited and the arguments presented, DEFENDANTS respectfully request the Court grant summary judgment on Plaintiff's Amended Complaint in their favor and/or grant DEFENDANTS qualified immunity protection

<i>Lawson v. Jenne, et al</i>
USDC Case No.: 00-6009

from suit in this matter; to award costs; to make this order final and appealable; and

any other relief this Court deems equitable and just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via

U.S. Mail this 24 day of October, 2000 to: **ROSS JAY LAWSON**, Pro Se

Plaintiff, FL 97-9905, Post Office Box 9356, Fort Lauderdale, Florida 33310.

ADORNO & ZEDER, P.A.
Counsel for Jenne & Hitchcock
888 Southeast Third Avenue
The Legal Center, Suite 500
Fort Lauderdale, Florida 33335-9002
(954) 523-5885
(954) 760-9531 (Fax)

ROBERT H. SCHWARTZ
Fla. Bar No.: 301167

TAMATHA S. ALVAREZ
Fla. Bar No.: 0151467



99-7

DATE:     · November 23, 1999

TO:       Captain William G. Hitchcock,
          Main Jail, South Operations

FROM:     Deputy J. McManus, Report Coordinator
          Administrative Aide to Captain Hitchcock
          Main Jail, South Operations

SUBJECT:  Inmate Lawson, Ross #57979905

Deputy Wilcox, had taken a file from Inmate Lawson. The file contained
Grievances, Inmate Request Forms, Commissary Ledgers. One of the Commissary
Ledgers was altered. We noticed that on September 10, 1999 there was a
deposit of $165 put into his account. On the same day, it was disbursed back out.
From talking with Inmate Lawson's family on Monday, November 22, 1999,
Inmate Lawson received money for lost property. I will return the file back to this
inmate today, the way we received it.

Cc. File

LWSON 0000069

Law Libr/ . ule:

Lawson, Ross
FL97-9905

6/8/98

| | | | |
|---|---|---|---|
| MONDAY | 0730-1145 | | Four (4) Hours |
| TUESDAY | 0730-1145 AND 1230-1430 | | Six (6) Hours |
| WEDNESDAY | 1230-1430 | | Two (2) Hours |
| THURSDAY | 0730-1145 AND 1230-1430 | | Six (6) Hours |

TOTAL    (18) HRS

cc: Supt. W. Roberts
    Asst. Supt. W. Robinson
    Lt. McPherson
    Lt. Garrison
    Sgt. Bellavance
    6TH Floor Sgt.
    Program Deputy

Valid
Schedule

LWSON 0000076

## INMATE DISCIPLINARY REPORT

**PART I: REPORT OF INFRACTION**     Inmate's present location: MJ / 7C  – 7B208
Facility/Pod/Housing Unit/Cell Number

| Inmate's Name: LAWSON, ROSS | | Violation Classification | Violation Code |
|---|---|---|---|
| Arrest Number: F1979905 | Date/Time of Infraction: 10/5/99  1830 hrs. | 1. CONDUCT WHICH DISRUPTS | A-5 |
| Place of Infraction: 7C315 | | 2. POSSESION OF UNAUTHORIZED | A-16 |
| | | 3. UNAUTHORIZED AREA | B-12 |

Description of infraction (who,what,when,where,how,why,and your actions):

AT ⁸THE ABOVE DATE & TIME WHILE CONDUCTING A SECURITY WALL-THRU I NOTICED I/M ROSS LAWSON IN CELL 7C315 WHEN I LOOKED TO SEE WHAT HE WAS DOING IN THE CELL I NOTICED HIM TRYING TO COOK SOME FOOD WITH A METAL STINGER MADE FROM HAIR CLIPPERS. I/M LAWSON BEGGED ME NUT TO WRITE HIM A D.R. AND LATER GAVE ME AN ELECTRIC MOTOR USED FOR TATTOOS AS A PLEA BARGAIN TO ONLY GIVE HIM 15 days I/D INSTEAD OF 30.

| Reporting employee's signature/CCN: #P.681 | Date/Time: 10/5/99 1922 | Employee's name and title (print): DEPUTY O. TIANGA #8681 |
|---|---|---|

Evidence collected? [✓]Yes [ ]No     Event Report completed? [✓]Yes [ ]No   Case Number 99-10-2643

**PART II: INVESTIGATION**      Investigation starting date: 10/15/99 , time: 494 hours

Inmate present for statement (check one)? [✓]Yes  [ ]No   [ ]Refused

Inmate requested:  representation? [ ]Yes [ ]No   witnesses? [ ]Yes [ ]No

Comments/action taken and finding of infraction: _____

| Inmate's signature: Ross Lawson | | Investigator's signature/CCN: |
|---|---|---|
| Reviewing supervisor's signature/CCN: Sgt W. Williams #3695 | | Disciplinary Report expires on: Date: 10-12-99 Time: 1830 hrs. |
| D.R. copy delivered to inmate by (name/CCN): | Date/Time delivered: 10/15/99 2235 | Hearing Date and Time: 10-07-99  2/30 HRS |

White (original) - Inmate file   Yellow copy - Facility Administrator's file   Pink copy - Inmate

BSO DJ#88 (Revised 12/95)                    LWSON 0000117

**DISCIPLINARY COMMITTEE ACTION SHEET**

**PART I: COMMITTEE TYPE** (check one): [ ] IDC [ ] UDC    Date: 4/17/98    Time: 0835 hours

Inmate's present location: _____    Facility/Pod/Housing Unit/Cell Number

| Inmate's Name: | | Violation Classification | Violation Code |
|---|---|---|---|
| Arrest Number: | Date/Time of Infraction: 1350 | 1. Calling A Fire | A-4 |
| Place of Infraction: | | 2. Pass of Contra toxic | A-16 |
| | | 3. | |

Disciplinary Report expiration date: 4/17/98, time: 1350 hours

Hearing Continuance?    [ ] Yes [✓] No  Reason: _____

Representative requested?    [ ] Yes [✓] No  Name: _____

If denied, reason: _____

Witnesses requested?  [ ] Yes [✓] No  If yes, name(s): _____

Name of witness(es) present: _____

Name of witness(es) not present and why (if denied by committee, reasons must be specific): _____

Reporting employee present? [ ] Yes [✓] No  If yes, name/CCN: _____

Inmate's Plea (check one):    [ · ] Guilty    [✓] Not Guilty

**PART II: HEARING** (Presentation of Evidence)

1. Inmate's statement summary: _Lawson Claim he was not involved, he was taking a piss, and told the guys to put it out, the fire_

2. Testimony summary of each witness: _____

3. Physical evidence received and considered:    YES

4. Written statements received and considered:    YES

5. Confidential information considered and not provided to inmate: [ ] Yes [✓] No  Reason for confidentiality: _____

6. Information from informant is relevant to matter at issue: [ ] Yes [✓] No

7. Reason for confidential informant/information reliability: _____

8. Reliance level of informant information: _____

9. Evidence which corroborates information from informant: _____

**PART III: DISPOSITION OF DISCIPLINARY COMMITTEE**
The disciplinary committee finds you (check one):    [✓] Guilty as charged    [ ] Not Guilty

Committee sanctions imposed are based on the following information: _in mate was in room and knew what was hap_

Special Condition(s): _Lock down for 3 days_

Disciplinary Detention: [✓] Yes [ ] No  Number of days: 3  Loss of Gain Time: [ ] Yes [✓] No  Number of days: ____

Committee Action: _inmate was present committee said hasactive says he guilty 3 day_

| Action date: 4/17/98 | Chairperson/CCN: 3877 | Member #1/CCN: 4216 | Member #2/CCN: Soil |
|---|---|---|---|

**YOU, THE INMATE HAVE THE RIGHT TO APPEAL THIS ACTION WITHIN 15 DAYS.**

**FOR ADMINISTRATIVE USE ONLY**: Check applicable box: [✓] APPROVED  [ ] DISAPPROVED  [ ] MODIFY

Unit Manager's/Facility Administrator's Signature/CCN: _____    Date: 4/17/98

BSO DJ#96 (New 5/95)    White (original) - Inmate file   Yellow copy - IDC/UDC file   Pink copy - Inmate

LWSON 0000118

## INMATE DISCIPLINARY REPORT

**PART I: REPORT OF INFRACTION**     Inmate's present location: _Main Jail / 6AE302_
                                                                 Facility/Pod/Housing Unit/Cell Number

| Inmate's Name: Lawson, Ross | Violation Classification | Violation Code |
|---|---|---|
| Arrest Number: FL979905    Date/Time of Infraction: 4-11-98 / 1350 | 1. Setting a fire | A-11 |
| | 2. Possession of Unauthorized Material (Toxic) | A-16 |
| Place of Infraction: M.J. / 6A302 (cell) | 3. | |

Description of infraction (who,what,when,where,how,why,and your actions):

During a routine physical sight check, I, Dep.Mercado 8123, entered cell 6A302. Inmate Lawson, Ross FL979905 was standing in the cell and I/M Ingram, Shawn FL983523 was squatting near the desk trying to cover something up. I approached x/lll8123 where I/M Ingram was and saw that there was a small fire lit on the floor. I asked I/M Lawson and I/M Ingram what they were doing and they both stated that they were trying to fix a radio. I told them that setting a fire was dangerous to the facility and both would be receiving a D.R. I confiscated a plastic bottle cap which contained some type

| Reporting employee's signature/OCN: Dep. Mercado /8123 | Date/Time: 4-11-98 /1430 | Employee's name and title (print): Dep.Mercado 8123 |
|---|---|---|

Evidence collected? [✓Yes] [ ]No     Event Report completed? [ ]Yes [✓No]     Case Number _N/A_

**PART II: INVESTIGATION**

Investigation starting date: _4/12/99_, time: _10.32_ hours

Inmate present for statement (check one)?   [✓Yes]   [ ]No    [ ]Refused

inmate Lawson stated, "I'm not guilty and I'd like to speek to the D.R committee."

Inmate requested:     representation? [ ]Yes [✓No]     witnesses? [✓Yes] [ ]No

Comments/action taken and finding of infraction: _Vancey C. RVIS 3/M    BS985382_

| Inmate's signature: Ross Lain | Investigator's signature/CCN: |
|---|---|
| Reviewing supervisor's signature/CCN: | Disciplinary Report expires on: Date: 4-72-98 Time: 1350 |
| D.R. copy delivered to inmate by (name/CCN):    Date/Time delivered: 1041  4/14/98 | Hearing Date and Time: 4/18/98 - 0830 |

White (original) - Inmate file   Yellow copy - Facility Administrator's file   Pink copy - Inmate

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**STANDARD OPERATING PROCEDURES**

**03/20/97**                                                                                       **5.4.1**

## 5.4.1 INMATE MAIL PROCEDURES (REVISED)

The following revised SOP will become effective immediately.

### POLICY:

It is the policy of the Department of Corrections and Rehabilitation not to place limits on the volume of lawful mail an inmate may send or receive, or on length, language, content or source of mail. Limitations may be imposed only when clear and convincing evidence exists to justify such limitations for reasons of public safety or facility order and security. Guidelines for inmate correspondence shall adhere to existing laws and rules governing the management of inmate mail.

### AUTHORITY:
Florida Model Jail Standards 9.03, ACA 3D-16 and 5D-01 -5D-08

### Forms:
Detainee Property Inventory and Transfer Form - **BSO DB#21**
Rejected Mail Notification Form - **BSO DJ#15**
Event Report - **BSO RP#1**

### Definitions:

**Privileged Mail:** Mail addressed to or received from attorneys, the courts, public officials, and the media.

**Rejected Mail:** Correspondence or material that is sexually explicit, poses a threat to the security, good order or discipline of the facility and/or facilitates criminal activity.

**Indigent Inmate:** An inmate with one dollar ($1.00) or less in their commissary account.

### PROCEDURE:

### A. General Guidelines

1. Written policy and procedures govern inmate correspondence; they are available to all staff and inmates reviewed annually and updated as needed.

2. During the orientation process, inmates are informed of mail procedures. This information is made available to each inmate through the Inmate Handbook.

3. Inmates in special management housing units can send and receive letters on the same basis as inmates in the general population.

4. Unless there is reasonable belief that some limitation is needed to protect public safety or the security and orderly operation of the facility, there will be no limit on the volume of mail an inmate can send or receive or on the length, language, content or source of mail an inmate may receive or send, as long as the inmate can afford the postage.

5. Incoming and outgoing mail will not be held for more than 24 hours and packages will not be held for more than 48 hours, excluding weekends and holidays.

LWSON 0000131

**1 of 5**

6. Inmate Correspondence privileges will not be withdrawn as punishment. Mail can be stopped by court order.

7. Both incoming and outgoing mail may be opened and inspected for contraband. Mail is read, censored, or rejected when based on legitimate facility interest of order and security. Inmates are notified when incoming or outgoing letters are withheld in part or full.

8. Mail received for persons not in custody will be returned to the Post Office.

9. Mail Clerks maintain a Daily Log of all mail that is to be returned to sender.

## B. Volume of Mail

1. The will be no limitation on the volume of correspondence an inmate can send or receive, or on the length, language content, except where there is reasonable belief that limitation is necessary to protect public safety or facility order and security, as listed in section H2 of this procedure.

## C. Limits on Inmate Correspondence

1. Inmates will not correspond with other inmates housed in a Broward County DCR Facility or inmates housed in any other state or local correctional facility without prior approval of the facility superintendent.

2. Inmates such as married couples and immediate family members incarcerated within a Broward County DCR facility may request to correspond with each other, via letter, with approval of the facility superintendent(s).

3. Should approval be granted, it will be the responsibility of the facility superintendent(s) to set specific guidelines, if any, for the correspondence.

4. When correspondence between inmates housed in Broward County DCR facilities has been denied or approved the inmate(s) will be notified in writing.

## D. Indigent Inmates

1. Indigent inmates will be supplied with writing materials and postage to correspond with attorneys and the court. In addition, inmates without funds will be supplied writing materials and postage to correspond with their immediate family at reasonable intervals.

## E. Privileged Mail

1. Inmates are permitted to send sealed letters to a specified class of persons and organizations, including but not limited to the following: courts, officials of the confining authority; state and local chief executive officers; administrators of grievance systems; and members of the paroling authority. Mail to inmates from this specified class of persons and organizations **may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing.**

2. Staff will not open or inspect privileged mail unless there is a reasonable suspicion of a prohibited act listed in section H2 of this procedure. Mailroom staff will stamp all privileged mail, **"Legal Mail".**

3. Staff will deliver privileged mail to inmates (Mon. - Fri.) and open it in the inmate's presence in order to intercept checks, money orders or other contraband only.

4. An Event Report will be written if contraband found in privileged mail is illegal to possess. The sender will be notified by the Superintendent or designee that the contraband has been seized. If the contraband found is illegal and needed for a criminal investigation or prosecution the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. Chain of custody will be maintained.

5. Contraband found in mail that may be legally possessed outside the detention facility will be returned to sender. Perishable items will be disposed of.

6. Outgoing privileged mail will not be opened, but may be held for a reasonable time not to exceed seventy-two hours pending verification that it is properly addressed to a person or agency.

## F. Outgoing Mail Procedures

1. Inmates of the Broward County DCR are permitted unlimited and uncensored correspondence with whomever they wish. Outgoing mail will not be limited unless such mail violates this Standard Operating Procedure, or federal or state law or if done so by a court order.

2. Inmates are permitted to send sealed letters to a specified class of persons and organizations, including but not limited to the following: courts, officials of the confining authority; state and local chief executive officers; administrators of grievance systems; and members of the paroling authority.

3. Outgoing mail may be opened and inspected to determine if:

   a. The letter contained threats of physical harm against a person or threats of criminal activity;
   b. The letter threatens blackmail or extortion;
   c. The letter contains plans to escape;
   d. The letter contains plans for activities in violation of detention facility rules;
   e. The letter is in code;
   f. The letter contains information which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

4. Outgoing mail suspected of containing security threats will be inspected by the Superintendent or his designee. If the inspection proves contraband is present, the Superintendent will initiate a formal investigation into the matter.

5. Outgoing mail will be collected once a day by staff. Mail is collected by the U.S. Postal Service every day except Saturdays, Sundays, and holidays.

## G. Incoming Mail

1. Incoming mail will not be held for more than 24 hours, excluding weekends and holidays.

2. Incoming mail may be monitored to ascertain any attempts at escape, security violations or conspiracy to introduce contraband.

3. Incoming mail may be inspected to intercept cash, checks, money orders or physical contraband. Cash, money orders and cashier's checks will be verified and a money receipt completed with a copy placed in the letter for the inmate. The original receipt and legal tender is taken to Inmate Banking and deposited in the inmate's account and a copy is maintained in the Mail Unit.

4. All incoming mail will be researched to determine the presence and location of the inmate in the jail system. Inmates no longer in the system will have their correspondence marked "Return to Sender" and returned to the Postal Service. Inmates in the system will have their housing locations noted on the front of the correspondence.

5. Certified or registered mail is picked up at the Post Office by the Mail Clerks or signed for by a Mail Clerk when it is delivered to a facility by a Postal employee. Certified or registered mail is processed in the same manner as all other incoming mail.

6. An Event Report (BSO RP#1) will be written if contraband found in mail is illegal to possess. The perimeter deputy will complete Event Reports documenting contraband seized by mailroom staff. The sender will be notified by the Superintendent or designee that the contraband has been seized. If the contraband found is illegal and needed for a criminal investigation or prosection the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. Chain of custody will be maintained.

7. Contraband found in mail that may be legally possessed outside the detention facility will be returned to sender. Perishable items will be disposed of.

## H. Rejection of Mail

1. Inmates will be notified when incoming or outgoing letters are rejected by the completion of the Rejected Mail Notification Form BSO DJ#15.

2. Reasons for rejection of mail may include, but not limited to:

   a. The letter contained threats of physical harm against a person or threats of criminal activity;
   b. The letter threatens blackmail or extortion;
   c. The letter contains plans to escape;
   d. The letter contains plans for activities in violation of detention facility rules;
   e. The letter is in code;
   f. The letter contains information which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

## I. Returned Mail Procedures

1. Inmate mail returned to the DCR by the United States Postal System due to insufficient postage or an incorrect address, will be returned to the inmate who originally sent the letter.

2. If the sender's name does not appear on the envelope, then the letter may be opened to ascertain the sender's name, and returned to the sender immediately.

3. Mail received for inmates no longer in custody will be returned to the sender.

## J. Publications

1. Books, magazines, and newspapers for inmates will not be accepted through the mail.

2. A variety of outside publications for inmates will be ordered by each facility and made available to inmates through the Inmate Leisure Library.

3. Each inmate may retain a total of four (4) articles of reading materials in their cell; e.g., two (2) magazines and two (2) books. Note: Dictionary, Religious text approved by the Chaplain and other prior approved program books are not included in this total.

4. Inmates will not be permitted to accumulate printed material so as to pose a fire hazard in their housing area.

## K. Packages

1. Inmates are only permitted to receive packages containing clothing to be worn at court appearances.

2. Packages containing anything except court clothes will be returned to sender. If the package does not have a return address it will be returned to the US Postal Service.

3. The Mail Clerk will verify if the inmate is in custody, document the receipt of the package in the Daily Log and forward the package to the scanner deputy for inspection. Facilities not having a scanner will transport packages to the nearest facility to have the packages scanned.

4. Mail Clerks will search scanned packages for contraband. Perishable items will be disposed of. If contraband is found that may be legally possessed outside the detention facility, the entire package will be returned to the sender. If the contraband found is illegal and needed for a criminal investigation or prosecution the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. The perimeter deputy will complete Event Reports documenting contraband seized by Mail Clerks.

5. Mail Clerks will forward inmate court clothing, received in packages, to visitation staff for inspection and placement in the inmate's property.

FL97-9905    Lawson Ross    8-4-98    7A30∂

ARREST#    NAME    TODAY'S DATE/ PRESENT LOCATION

## PART A - 8TH FLOOR    DISCIPLINARY OR RELOCATION OF INMATE TO OR FROM THE 8TH FLOOR

### FORWARD ALL DR'S TO CLASSIFICATION TO ENSURE MOVEMENT OF INMATE!

__X__ INMATE DR'D FOR VIOLENT ACTS AND NEEDS TO BE MOVED TO THE 8TH FLOOR

____ INMATE DR'D FOR NON-VIOLENT ACTS HOWEVER HE WILL NOT STAY IN CELL OR WILL NOT COOPERATE WITH STAFF OR CURRENTLY IS ON I-95 AND NEEDS TO BE MOVED TO A SECURE LOCATION

____ INMATE IS TO BE CONSIDERED AN EMINENT THREAT TO THE SAFETY AND SECURITY OF THIS FACILITY

____ INMATE'S DR TIME HAS BEEN SERVED AND NEEDS MOVEMENT OUT OF DISCIPLINARY

____ INMATE'S DR SENTENCE HAS BEEN MITIGATED AND NEEDS MOVEMENT OUT OF DISCIPLINARY

LIST SPECIFIC DR VIOLATIONS, ACTS, BEHAVIORS OR CIRCUMSTANCES WHICH SUBSTANTIATES THIS REQUEST FOR MOVEMENT TO THE 8TH FLOOR - PLEASE BE SPECIFIC - TO THE POINT -

KSF)Pinkey Kenny B/m FL98-8271 — Rel 12/10/98
Williams, Charles B/m BS97-27425 — Rel 10/29/98
Stafford, Paul B/m mm98-0879 — Rel 12/5/98
Swearin Neville B/m FL98-11683 Rel 9/5/99 · 11/19/98 s/4 8 B102 Ross
WHO ARE THIS INMATE'S CURRENT KSF'S?    NONE / LIST: 2, Prychette

_____    _____    8 B414
DEPUTY SIGNATURE/ DATE 4/Aug98    SERGEANT AND/OR LIEUTENANT    REQUESTED LOCATION

## PART B - PROGRAMS:    INMATE MOVEMENT INTO OR OUT OF PROGRAMING

MOVE INMATE INTO : ____ DRUG CELL, ____RELAPSE PREVENTION, ____SCHOOL CELL, ____TRUSTY PROGRAM

REQUESTED LOCATION:_____

MOVE INMATE OUT OF PROGRAM: ____ COMPLETED COURSE,____FAILED TO MEET EXPECTATIONS, ____KSF'S

_____
AUTHORIZED SIGNATURE AND DATE

## PART C:    MISCELLANEOUS RELOCATIONS

____INMATE RELEASED FROM MEDICAL, MOVE OUT OF MEDICAL

____INMATE HAS TURNED 18 YEARS OLD - MOVE TO ADULT CELL,

____ INMATE LOST TRUSTY STATUS, MOVE OUT OF TRUSTY UNIT

_____    _____
AUTHORIZED SIGNATURE(S) WITH DATE    New location

LWSON 0000148

INMATE RELOCATION REQUEST FORM
REVISED 7-21-1998

Lawson, Russ _____ FL979905 _____ 2/16/99 _____ 7B201
Inmate Name _____ Arrest Number _____ Today's Date _____ Present Locatio

## 8th Floor Disciplinary Movement

### PLEASE SUBMIT THE DR TO ASSURE INMATE RELOCATION!

✓ Inmate DR for Violent/Disruptive behaviors or threatens safety and security of the facility (8th floor B placement)

___ Inmate Dr for Non-Violent behaviors or doesn't threaten the safety and security of the facility (8th floor C1 placement)

___ Inmate's DR EXPIRED or was rescinded due to other TECHNICAL VIOLATION

___ Inmate's sentence MITIGATED due to overcrowding - Relocate from DR lockdown

___ TIME SERVED - Relocate to appropriate housing      From Guilty of D-2 Given 30 days

LIST CURRENT KSF'S:

Deputy Sign/Date _____ Dep C. Thomas 1989 2/16/99
_____ Sergeant and/or Lieutenant Sign/Date

Classification: ✓ Approved   ✓ Denied (If Ck'd Document Reasons):

No copy of DR of findings recieved.

Authorized Signature/Date: _____ 8098   2/16/99   New Housing Location: N/A.

## Programs Inmate Relocation

(Choose One)
Request Entry To ___  OR  Request Relocation From___

___Drug Cell  ___Relapse Prevention  ___School Cell  ___Trusty Status

Reason: ___Court Ordered  ___Self-Referred or Self-Removed  ___Completed Successfully  ___Failed to Meet Standar

_____ _____ _____
Current location   Requested location   Program Coordinator Sign/Date

Classification Approved___   Classification Denied___ (If Ck'd Document Reasons):

Authorized Signature/Date: _____ New Housing Location: _____

## Other Relocations

___ Medical Relocation (Attach MEDICAL RELEASE authorizing return to inmate housing).

___ Juvenile to Adult Status  ___8th Floor Special Administrative (Fill Out and Attach Segregation Review Form)

Classification Approved___   Classification Denied___ (If Ck'd Document Reasons):

LWSON 0000149

**Broward Sheriff's Office**
**Department of Detention and Community Control**
**Standard Operating Procedures**

| 12/99 | 7.4 |
|---|---|

### 7.4 - INMATE ACCESS TO LAW LIBRARY

#### POLICY:

It is the policy of the Division of Detention (DOD) to establish a procedure which shall provide that inmates have access to legal materials if there is not adequate free legal assistance to assist them with criminal, civil, and administrative legal matters. Inmates shall have access to paper, typewriters or typing service, and other supplies and services related to legal matters.

AUTHORITY: Florida Model Jail Standards (9.09), ACA 3E-03

#### PROCEDURE:

A. All inmates who are unable to obtain the assistance of counsel or are representing themselves are provided reasonable access to legal materials to assist them with criminal, civil and administrative legal matters.

B. **Each Facility maintains a Law Library containing the following:**

   1. United States Reports,

   2. Southern Reporter (Florida Cases),

   3. Florida Statutes Annotated,

   4. Florida Jurisprudence,

   5. United States Code Annotated,

   6. Florida Rules of Criminal Procedure,

   7. Federal Rules of Criminal Procedure,

   8. Federal Rules of Civil Procedure,

   9. Local Municipal Code,

   10. Black's Law Dictionary,

   11. Florida Model Jail Standards

C. Inmates have access to paper and other supplies and services related to legal matters available to them in each Law Library. Notary Services are also made available.

D. The Law Library Schedule is posted in each housing unit and inmates have access on a weekly basis.

E. Inmates in Special Management are provided legal materials through a written request to the Law Library.

F. Inmates abide by all Departmental Rules and Regulations while utilizing the Law Library. Any violations result in disciplinary action.

AUDITS: Audits shall be conducted at least annually in accordance with the internal audit schedule.

LWSON 0000169

(12433.029)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6009-CIV-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,
 Plaintiff,

v.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,

 Defendants.

_____/

## AFFIDAVIT OF WILLIAM HITCHCOCK

STATE OF FLORIDA  )
        ) SS:
COUNTY OF BROWARD )

 **BEFORE ME** the undersigned authority personally appeared WILLIAM

HITCHCOCK, and after first being duly sworn, deposes and states as follows:

 1. My name is William Hitchcock, and I am over the age of eighteen (18)

and otherwise sui juris.

 2. I make this Affidavit based on my personal knowledge of the contents

hereof.

 3. I have been employed as a deputy with the Broward County Sheriff's

Office since October 15, 1979.


EXHIBIT
A

4.      I have been the Superintendent/Captain of the Main Jail since March 14, 1998.

5.      As the Superintendent/Captain, some of my duties include:  monitoring the inmate  grievances, monitoring  the outcome of the inmate disciplinary hearings, supervising the general staff and inspecting the facility to ensure its upkeep.

6.      One of my duties is to ensure that all Standard Operating Procedures (SOP's) are enforced and complied with.

7.      SOP's are applied equally to everyone who is housed at the Main jail, whether an inmate or a pretrial detainee.

8.      SOP's are enforced to maintain order and security throughout the jail.

9.      SOP 5.4.1.J.1 provides that inmates are not permitted to receive  books, magazines or newspapers through the mail.

10.     SOP 5.4.1.J.1 was instituted for security purposes.

11.     Security issues include keeping contraband (drugs and weapons) out of the facility.

12.     SOP 5.4.1.J.1 is also in place to ensure order within the jail whereas if inmates were permitted to receive these materials, deputies would be required to search and inspect each item entering the jail.  This would encompass an inordinate amount of time and preclude the deputies from focusing on the inmate population of the jail.

13.     Inmates who are in "lockdown" are housed on the eighth floor of the jail, and as such, are only permitted to leave their cell for one hour a day.

14.     When Plaintiff, Ross Lawson, was in "lockdown", he did not have personal access to the law library. As such, if he required information from the law library, he would gain that information from a third person.

15.     During Ross Lawson's tenure at the Main Jail, his access to the law library has been from 18-25 hours per week so long as he was housed in the general population of the Main Jail, was not in "lockdown" and he was proceeding *pro se.*

16.     To date, when Plaintiff, Ross Lawson, is housed with the general population of the jail, he is permitted to visit the law library for approximately 25 hours a week.

17.     On or about November 23, 1999, I received a file from Deputy Wilcox which had been given to her by Ross Lawson.

18.     I reviewed that file to investigate the alteration of Ross Lawson's commissary ledger.

19.     After I reviewed the file, I gave it to Deputy McManus to return to Ross Lawson.

20.     I did not keep or destroy any documents that were in the file obtained from Ross Lawson.

21.    I returned the file to Deputy McManus in the same condition as I had

received it.

FURTHER AFFIANT SAITH NAUGHT

WILLIAM HITCHCOCK

The foregoing instrument was acknowledged before me, this, the _24_ day of _October_, 2000 by WILLIAM HITCHCOCK, who was personally known to me or who has produced _fDL #333-927-53-452_ as identification and who did take an oath.

Signature of Notary Public

Printed Name of

KIMBERLY A. FRIDAY
MY COMMISSION # CC 736201
EXPIRES: May 14, 2002
Bonded Thru Notary Public Underwriters

My Commission Expires:

(Seal)

(12433.029)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6009-CIV-DIMITROULEAS
### MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,

      Plaintiff,

v.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,

      Defendants.

_____/

## AFFIDAVIT OF ANGELA WILCOX

STATE OF FLORIDA    )
                    ) SS:
COUNTY OF BROWARD    )

    **BEFORE ME** the undersigned authority personally appeared ANGELA WILCOX,

and after first being duly sworn, deposes and states as follows:

    1.    My name is Angela Wilcox, and I am over the age of eighteen (18) and

otherwise sui juris.

    2.    I make this Affidavit based on my personal knowledge of the contents

hereof.



3.      I have been employed as a deputy with the Broward County Sheriff's Office for approximately six (6) years.

4.      As a deputy, some of my duties include:  ensuring the care, custody and control of the jail including cell inspections and pat downs.

5.      On or about November 23, 1999, I obtained a file from Ross Lawson.

6.      Ross Lawson gave me the file and asked me to make copies of his grievances and requests slips which were inside.

7.      After Ross Lawson gave me the file, I noticed that it also contained commissary ledgers which appeared to have been altered.

8.      Upon noticing the altered commissary ledgers, I brought it to the attention of Captain Hitchcock and turned the file over to him.

9.      When the filed was turned over to Captain Hitchcock, it was in the same condition as I had received it from Ross Lawson.

10.    I did not keep or destroy any documents that were in the file I obtained from Ross Lawson.

FURTHER AFFIANT SAITH NAUGHT

_Angela Wilcox_
ANGELA WILCOX

    The foregoing instrument was acknowledged before me, this, the 24th day of _October_ , 2000 by ANGELA WILCOX, who was personally known to me or who has produced _FDL w 422-004-71-801_ as identification and who did take an oath.

Signature of Notary Public

Printed Name of Notary

KIMBERLY A. FRIDAY
MY COMMISSION # CC 736201
EXPIRES: May 14, 2002
Bonded Thru Notary Public Underwriters

My Commission Expires:

(Seal)

(12433.029)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6009-CIV-DIMITROULEAS
### MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,

      Plaintiff,

v.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,

      Defendants.

_____/

## AFFIDAVIT OF JEAN MCMANUS

STATE OF FLORIDA     )
                       ) SS:
COUNTY OF BROWARD   )

      **BEFORE ME** the undersigned authority personally appeared JEAN MCMANUS,

and after first being duly sworn, deposes and states as follows:

      1.    My name is Jean McManus, and I am over the age of eighteen (18) and

otherwise sui juris.

      2.    I make this Affidavit based on my personal knowledge of the contents

hereof.



EXHIBIT

C

3.    I have been employed as a deputy with the Broward County Sheriff's Office for approximately ten (10) years.

4.    As a deputy, some of my duties include:  receiving and recording inmate grievances, disciplinary reports and event report. I further maintain a file on all of the above.

5.    On or about November 23, 1999, Deputy Wilcox obtained a file from Ross Lawson.

6.    Deputy Wilcox noticed that the commissary ledgers contained in the file appeared to be altered and brought it to the attention of Captain Hitchcock.

7.    After Captain Hitchcock investigated the altered commissary ledgers, he gave the file to me to return it to Ross Lawson.

8.    I did not keep or destroy any documents that were in the file obtained from Ross Lawson.

9.    I returned the file to Ross Lawson in the same condition as I had received it from Captain Hitchcock on or about November 23, 1999.

FURTHER AFFIANT SAITH NAUGHT

JEAN MCMANUS

The foregoing instrument was acknowledged before me, this, the 24th day of October, 2000 by JEAN MCMANUS, who was personally known to me or who has produced _FDL M 255-463 62-6 10_ as identification and who did take an oath.

Signature of Notary Public

KIMBERLY A. FRIDAY
MY COMMISSION # CC 736201
EXPIRES: May 14, 2002
Bonded Thru Notary Public Underwriters

Printed Name o

My Commission Expires:

(Seal)