UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6009-CIV-DIMITROULEAS

MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,         /
(Plaintiff)

VS.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,/
(Defendant)



### PLAINTIFF, ROSS JAY LAWSON'S RESPONSE TO DEFENDANT JENNE, HITCHCOCK, AND BROWARD COUNTY'S MOTION FOR SUMMARY JUDGEMENT AND INCORPORATED MEMORANDUM OF LAW

Comes Now the Plaintiff, ROSS JAY LAWSON pro,se and responds to the Defendant's Motion For Summary Judgement And Incorporated Memorandum Of Law, and requests this Honorable Court to enter an Order denying the Defendant's Motion For Summary Judgement. Grounds for this Plaintiff's request are as follows:

### PLAINTIFF'S RESPONSE TO DEFENDANT'S SECTION TITLED
#### INTRODUCTION

The Defendants in their section INTRODUCTION state;

This is a 42 U.S.C. §1983 action for an alleged violation of Plaintiff's First Amendment Right to receive publications through the United States Mail as a pre-trial detainee in Broward County's Main Jail. Plaintiff alleges that Defendants, without justification, violated his First Amendment Right by not permitting him to receive publications through the United States Mail during his incarceration at the jail. Plaintiff further alleges that he has been punished for filing grievances on his alleged First Amendment violations by: (1) being denied access to the jail's law library; (2) being placed in a high custody cell; and (3) having his legal documents confiscated and destroyed. Plaintiff further alleges that Defendants do not apply the ban on publications equally to all housed at the jail.



Although the Defendants are true/partially accurate in some of their facts contained in their section titled INTRODUCTION, they do not, however, cover/show the entire picture. Therefore the Plaintiff states the following in reguards to the Defendant's section titled INTRODUCTION:

This is a 42 U.S.C. §1983 action. But not only for violations of the Plaintiff's 1ST amendment rights by the Defendants named in this action, but also for violations of the Plaintiff's 5TH and 14TH amendment rights by the Defendants named in this action. Not only does the Plaintiff claim that he was denied publications through the UNITED STATES MAIL as a pretrial detainee, but the Plaintiff also claims that he was denied publications of any type from being dropped off/delivered to him from any outside source. Such outside sources include but not limited to, Publishers, Newspapers, Colleges, Universities, Family, Technical Training Centers, Law Centers, Libraries, Book Stores, Government, Religious Sources, etc. etc. It is true that the Plaintiff was and still is a pretrial detainee awaiting trial, and has not been convicted, and does still fall under Due Process and not Cruel And Unusual Punishment. As this Honorable Court is well aware, Due Process of course prohibits any type of punishment prior to conviction, not merely Cruel And Unusual Punishment. Plaintiff as well, does, claim that the Defendants named in this action were without justif--ication in instituting or upholding the policy that bands publications of any type from coming into the Jail for inmates. And that the Plaintiff's rights were violated when the Defendants named in this action would not change the policy, or allow the Plaintiff to receive publications through the UNITED STATES MAIL or dropped off/delivered to the Plaintiff by any outside source. The Plaintiff further claims that he was punished and acts of reprisal were committed against him, not only for filing Requests and Grievances that explained that his CONSTITUTIONAL & CIVIL RIGHTS were being violated, but that the Plaintiff was also punished and acts of reprisal committed against him for attempting to have copies made of the original copy of this action, so as he could file such to the Federal Courts and initiate this action that is now pending before this Honorable Court. Some of the punishment/acts of reprisal by the Defendants named in this action, in which the Plaintiff was forced to endure are, but are not limited to: (1) being placed in a high custody level cell; and (2) being denied access to the jail's law library; and (3) having legal documents confiscated and destroyed. The Plaintiff has/does further allege that Defendants did not apply the ban on publications equally to all housed at the jail from the period of time that the ban on publications was enacted or the date of the Plaintiff's incarceration (7/17/97), until S.O.P. 5.4.1. (J) (1) was enacted on 3/5/99, which allowed the following: Books, magazines, and newspapers for inmates will not be accepted through the mail. The only exception is: religious publications (soft cover) may be ordered directly from the publisher or provided by outside religious groups.

(3)

v-06009-WPD    Docu~~PLAINTIFF'S RESPONSE TO THE DEFENDANT'S~~ Docket 12/04/2000    Pa
**CONCISE STATEMENT OF MATERIAL FACTS**

Defendants claim;    1.    On March 20, 1997, the Broward Sheriff's Office revised its Standard

Operating Procedure (SOP) 5.4.1 entitled Inmate Mail Procedures.[1]

Plaintiff's response to (1), The Plaintiff agrees that the Broward Sheriff's Office revised
its Standard Operating Procedure (S.O.P.) 5.4.1. entitled
Inmate Mail Procedure, on March 20, 1997.

Defendants claim;    2.    SOP 5.4.1 J.1 states that "Books, magazines, and newspapers for

inmates will not be accepted through the mail."[2]

Plaintiff's response to (2), The Plaintiff agrees that S.O.P. 5.4.1. (J),(1) states that
"Books, magazines, and newspapers for inmates will not be
accepted through the mail."

Defendants claim;    3.    This SOP, as well as all the others, are applied equally to everyone

housed at the jail whether their status is that of an inmate or a pre-trial detainee.[3]

Plaintiff's response to (3), The Plaintiff disagrees! And claims the following in opposition;

The Plaintiff ROSS JAY LAWSON was arrested on 7/17/97, and booked into the Broward
County Jail on the same day. The ban on publications was in affect and upheld by the
Defendants at that time. This is verified by S.O.P. 5.4.1 (INMATE MAIL PROCEDURE) dated
3/20/97 section (J) Publications, and such section read as follows, "Books, magazines,
and newspapers for inmates will not be accepted through the mail." Although it was the
policy to ban/prohibit all publications from entering the jail in any fashion, the
Defendants allowed Christian materials, Christian Correspondence Courses, and all types
of Christian publications, to be admitted to the jail and inmates in several fashions.
Such fashions were as follows, U.S. MAIL, Christian visitors hand delivering them, and
dropped off at the jail for inmates. This Christian material/publications was the
Defendant's only exception to the rule banning all publications, and this exception
was an un-written law that was upheld by the Defendants named in this action. Then on

3/5/99 the Defendants revised the S.O.P. section 5.4.1. (J) Publications: which then allowed and read as follows, "Books, magazines, and newspapers for inmates will not be accepted through the mail. The only exception is: religious publications (soft covered) may be ordered directly from the publisher or provided by outside religious groups." Therefore the Defendants allowed one religious group/type of inmates to receive religious publications, while denying all other types the same. This went on from 7/17/97 until 3/5/99. And by the Defendants instituting S.O.P. 5.4.1 dated 3/5/99 they show that they knew the well established law concerning publications and inmates rights to such. The inmate affidavits that are incorporated in this response to Defendants request for summary judgement shall prove beyond a doubt that the Defendants in this action did in fact apply the ban on publications unequally to inmates of their choosing housed in the Broward County Jail. It should also be noted that the Plaintiff in this action is Jewish by birth, and not Christian, and therefore the Christian publications that were allowed in to the jail from 7/17/97 until 3/5/99 were of no use or desire to the Plaintiff in this action.

Defendants claim;   4.   The purpose of SOP 5.4.1 is to maintain order and security within the jail.[4]

Plaintiff's response to (4), The Plaintiff disagrees! And Claims the following in opposition;

The Plaintiff claims that the purpose of S.O.P. 5.4.1. was not to maintain order and security within the jail. But that S.O.P. 5.4.1. entitled "INMATE MAIL,ACCESS TO PUBLICATIONS AND INSPECTION OF LETTERS AND PACKAGES" was revised and put into effect by Sheriff Ron Cochran & SUSAN W. McCampbell on August 23, 1996. And that S.O.P. 5.4.1. was inacted to ban all publications from the Broward County Department Of Corrections and Rehabilitation in order to cut costs, and save money, while at the same time prohibit all inmates, convicted, non-convicted, sentenced, or non-sentenced, from exercising their First Amendment Rights to receive publications of their choice, practice and study religion of their choice, and learn subjects of their choice, through receiving publications of their choosing. The Plaintiff also claims that it was no coincidence that 42 USCS §1997e. "Suits by prisoners" was enacted and only months prior to Cochran & Campbell revising and putting into effect S.O.P. 5.4.1. not to mention that Chapter 33 governing county jails was abolished in the end of 1996 and county jails only had to develop a minimum of the Florida Model Jail Standards. With these two main laws/factors in play Cochran & Campbell were under the assumption that they could deny inmates their First Amendment Rights by revising S.O.P. 5.4.1. and save them both time and money as well. The Defendants named in

this action inforced and upheld S.O.P. 5.4.1. even when it was brought to their attention
that S.O.P. 5.4.1. violated the Plaintiff's in this action rights. The Defendants in this
action refused to change such policy. Showing that the Defendants in this action totally
disregarded the Plaintiff's Rights. This done after numerous requests, grievances, and
letters, informing the Defendants that S.O.P. 5.4.1. violates the Plaintiff's Rights.
To further the Plaintiff's position on this issue Defendant Hitchcock claims in his
affidavit that, and I quote, " S.O.P.5.4.1. is also in place to ensure order within the
jail whereas if inmates were permitted to receive these materials, deputies would be
required to search and inspect each item entering the jail. This would encompass an
inordinate amount of time and preclude the deputies from focusing on the inmate population
of the jail". This shows that time and money are one of the main factors in Defendant
Hitchcock's reasons for upholding a ban on publications that violates the Plaintiff's
First Amendment Rights.

Defendants claim;    5.    Plaintiff has been in custody at the Broward County Main Jail since July

18, 1997. (support)

Plaintiff's response to (5), The Plaintiff states that he was booked into the Broward County
Main Jail on July 17, 1997, not July 18, 1997.

Defendants claim; 6.    Currently, Plaintiff has approximately 35 charges against him which are

pending trial. Until said charges are determined, Plaintiff will remain at the jail as a

pre-trial detainee. (support)

Plaintiff's response to (6), The Plaintiff agrees that he has numerous charges against him,
and that he will remain at the jail as he is now, as a pretrial
detainee, non-convicted, awaiting trial.

Defendants claim;    7.    On or about October 28, 1997, Plaintiff made his first inquiry as to how

he was to go about receiving books and/or magazines through the mail.[3]

Plaintiff's response to (7), The Plaintiff states that he made his first inquiry as to how
he was to go about receiving publications within the first
couple of weeks from the date he arrived at B.C.M.J. 7/17/97.

(6)

v-06009-WPD Defendants claim; Document 34 In November 1997, Plaintiff received a response informing him that Entered on FLSD Docket 12/04/2000 P:

books and magazines from the publisher were not permitted into the jail and that is

why his request was denied.[6]

Plaintiff's response to (8), The Plaintiff agrees that in November 1997, the Plaintiff
                            received a response informing him that books and magazines
                            were not permitted into the jail and that is why his request
                            was denied.

Defendants claim;     9.     On November 20, 1998, Plaintiff requested a copy of the rules which

govern the receipt of religious materials through the mail.[7]

Plaintiff's response to (9), Plaintiff filed two requests on November 20, 1998, one was
                            to the Mail Room & the other was to the Chaplain these two
                            requests are Plaintiff's Summary Exhibit #13 & #14.

Defendants claim;    10.     On November 23, 1998, Superintendent William Hitchcock responded

to Plaintiff's request via memorandum and provided him a copy of the revision to

SOP 5.4.1. Hitchcock further informed Plaintiff that the remaining SOP's were

available to him in the law library.[8]

Plaintiff's  response to (10), The Plaintiff agrees that on November 23, 1998
                            Superintendent William Hitchcock responded to one of
                            the Plaintiff's requests on the subject of publications.
                            Defendant Hitchcock's response is Plaintiff's Summary
                            Exhibit #16.

Defendants claim;   11. Plaintiff has been permitted to receive religious publications through the

mail while a pre-trial detainee at the Broward County Main Jail.[9]

Plaintiff's response to (11), See Plaintiff's response to (3), the Plaintiff from
                            7/17/97 until 3/5/99 was not allowed to receive religious
                            publications through the mail.

Defendants claim;    12.    On April 11, 1998, while Plaintiff was in his cell, he was observed

setting a fire while in possession of an unauthorized material.[10]  Plaintiff was

disciplined for said incident by receiving three (3) days in lockdown.[11],[12]

Plaintiff's response to (12), the incident that took place on April 11, 1998 has
                    no bearing on this action. This is do to the fact that
                    the classification points that were assessed for this incident
                    were removed after 90 days by classification. Inmates
                    classification points are increased by 4 points when
                    given a D.R. and every 90 days 7 points are deducted from
                    all inmates classification points upon being reviewed. The
                    Plaintiff will present this evidence/impeachment material
                    during trial, thus showing that the incident that was alleged
                    to have taken place on April 11, 1998 has no bearing on this
                    action, nor the Plaintiff's claims.

Defendants claim;    13.    On August 8, 1998, Plaintiff was relocated to the 8th floor of the jail

due to violent acts.[13]

Plaintiff's response to (13), Plaintiff admits that on August 8, 1998 he was relocated
                    to the 8th floor for a D.R. But on August 11, 1998 the
                    Plaintiff was released from the 8th floor to to the D.R.
                    he was given being dismissed by a Deputy that personally
                    witnessed the incident, and testified to the Plaintiff's
                    innocents. This incident has no bearing on the Plaintiff's
                    allegations in this action.

Defendants claim;    14.    On February 16, 1999, Plaintiff was relocated to the 8th floor of the jail

due to violent/disruptive behavior.[14]

Plaintiff's response to (14), The Plaintiff denies that on February 16, 1999 Plaintiff was
                    relocated to the 8th floor of the jail due to violent/disruptive
                    behavior.

Defendants claim;    15.    On October 5, 1999, while Plaintiff was in his cell, he was observed

trying to cook some food while in possession of an unauthorized object (metal

stinger).[15] Plaintiff was disciplined for said incident by receiving thirty (30) days in

lockdown. (support)

Plaintiff's response to (15), Plaintiff agrees with Defendant claim (15.) and states that
he was placed in a non-violent lockdown for 28 days.

Defendants claim;    16.    On November 23, 1999, Deputy Wilcox obtained a file from Plaintiff

containing grievances, inmate request forms and commissary ledgers.[16]

Plaintiff's response to (16), The Plaintiff denies that on November 23, 1999 Deputy Wilcox
obtained a file from Plaintiff containing grievances, inmate
request forms and commissary ledgers. The Plaintiff states
that on November 11, 1999 Deputy Wilcox received a file folder
containing a law suit (this action), grievances, request forms,
letters & legal work on Plaintiff's criminal cases, etc.

Defendants claim;    17.    Said file was obtained to investigate an alteration on the commissary

ledgers.[17]

Plaintiff's response to (17), The Plaintiff denies that said file was obtained to investigate
an alteration on the commissary ledgers. The Plaintiff states
that the file obtained by Deputy Wilcox from the Plaintiff on
November 11, 1999, was obtained in order for Deputy Wilcox to
make copies for the Plaintiff and return such same day.

DEfendants claim;    18.    After said investigation, Deputy McManus returned the file to Plaintiff

the same way it was received.[18]

Plaintiff's response to (18), Plaintiff denies Defendant's (18.) claim. The Plaintiff states
that on or about November 23, 1999 Deputy McManus returned
the file that the Plaintiff had given to Deputy Wilcox to make

copies for him. But said file that was returned to Plaintiff
by Deputy McManus was missing law suit (this action),
letters and legal work (defendant's criminal cases),
grievances, requests, letters, etc. And that Plaintiff in
this action informed Deputy McManus of such.

Defendants claim;   19.   As of June 8, 1998, Plaintiff's access to the law library has been as

follows:

Monday from 7:30 am-11:45 am
Tuesday from 7:30 am-11:45 am and 12:30 pm-2:30 pm
Wednesday from 12:30 pm-2:30 pm
Thursday from 7:30 am-11:45 am and 12:30 pm-2:30 pm

for a total of approximately 18 hours per week.[19],[20]

Plaintiff's response to (19),   The Plaintiff denies Defendant's (19.) claim. The Plaintiff
states that on January 23, 1998 the Honorable Judge SUSAN
LEBOW signed an Order recommending that the Plaintiff in
this action be given a minimum of 17 hours per week in the
jails law library. Judge LEBOW'S Order was followed by the
jail and it's staff untill on or about 6/99. At that time
the Plaintiff received a inmate correspondence from Defendant
HITCHCOCK dated July 2, 1999, said correspondence granted the
PLaintiff in this action once again 17 hours per week in the
jail's law library, and was addressed to both acting
Lieutenants W. McPherson & Bechard compelling them to ensure
that the Plaintiff in this action receive 17 hours access per
week law library time as Ordered by the Honorable Judge LEBOW.
The Plaintiff then got 17 hours access to the law library
untill jail Deputies learned of this action the Plaintiff
was planning to file naming Defendant Hitchcoch as a Def.
Then on November 24, 1999 (the next day that Plaintiff had
file returned missing pleadings from this action, etc.) The
Plaintiff received a inmate correspondence from Defendant
Hitchcock, informing the Plaintiff that the matter of law
library would be sent to their legal department and that the
Plaintiff in this action would receive a response on Dec. 3,
1999. On or about Dec. 3, 1999 the Plaintiff received a
response dated Dec. 3, 1999, and such response came from
Defendant Hitchcock denying Plaintiff law library time.

**CONCISE STATEMENT OF MATERIAL FACTS, IN CHRONOLOGICAL ORDER,**
**CONCERNING THE PLAINTIFF BEING PLACED IN A HIGH CUSTODY CELL,**
**BEING DENIED ACCESS TO THE JAIL'S LAW LIBRARY, AND HAVING**
**LEGAL DOCUMENTS CONFISCATED AND DESTROYED.**

1. Plaintiff has been in custody in the Broward County Jail as a pretrial detainee since July 17, 1997.

2. Upon the Plaintiff entering the Broward County Jail on July 17, 1997 the Broward County Department Of Corrections and Reh. had a ban on publications that was in effect and enforced and read as follows: 3/20/97 S.O.P. 5.4.1. (J)(1) Books, magazines, and news papers for inmates will not be accepted through the mail.

3. S.O.P. 5.4.1. (J)(1) dated 3/20/97 was enforced on all publication other then Christian religious publications which were allowed to be admitted both by mail and dropped of for inmates that wanted such. It should be noted that the Plaintiff in this action is Jewish by birth not Christian. And Jewish publications were denied at that time.

4. In October of 1997 the Plaintiff in this action received a <u>REJECTED MAIL NOTIFICATION</u> from the BROWARD SHERIFF'S OFFICE DEPARTMENT OF CORRECTIONS AND REHABILITATION for a U.A. BOOK (Non-Religious) in which the rejected mail notification informed the Plaintiff that his book (non-religious) was returned to sender. Other <u>REJECTED MAIL NOTIFICATIONS</u> were received by the Plaintiff on 10/29/????, and 9/10/99, denying Plaintiff other publications as well.

5. From 10/25/97 until 11/25/99 the Plaintiff in this action filed 12 requests, 6 grievances, and several letters concerning publications and receiving such at the Broward County Jail, all of which were denied. There were other requests, grievances, and letters written as well that were taken by Deputy Wilcox and never returned to the Plaintiff in this action, and those are not included in this number.

---

(1.) *See Plaintiff's Summary Exhibit #1 (Jail's Computer Booking Printout)*

(2.) *See Plaintiff's Summary Exhibit #2 (S.O.P. Dated 3/20/97)*

(3.) *See Plaintiff's Summary Exhibit #3 (See attached affidavits)*

(4.) *See Plaintiff's Summary Exhibit #4 (See attached REJECTED MAIL NOTIFICAT)*

(5.) *See Plaintiff's Summary Exhibit #5-23 (Grievances,Requests, Letters, Etc)*

6. On January 23, 1998 the Honorable Judge Susan Lebow signed an Order granting the Plaintiff in this action 17 hours per week access to the law library in the Broward County Jail. Shortly after the Plaintiff in this action received a Law Library Schedule giving/granting the Plaintiff 18 hours per week access to the jail's law library.

7. The schedule was followed by the jail and the Plaintiff took every opportunity he was given to attend the law library untill approx. June of 1999 the Plaintiff was denied the scheduled access to the law library that he was granted for 18 hours, this due to shifts and personel changing positions in the jail.

8. Because of the changes in positions in the jail, and the Plaintiff in this action not getting his 17 hours per week in the law library as Court Ordered, the Plaintiff on 6/24/99 sent a letter to Sgt. ADAMS and Deputy Wilcox, with copies to Director PATRICK TIGHE, and one of the Defendants in this action Superintendent/Captain WILLIAM HITCHCOCK, and the Plaintiff in such letter requested to have his Court Order and law library schedule honored so as the Plaintiff would have access of 17 hours per week in the jail's law library.

9. On July 2, 1999 one of the Defendants in this action Superindenent/Captain WILLIAM HITCHCOCK responded to the letter written by the Plaintiff dated 6/24/99. In WILLIAM HITCHCOCKS response titled INMATE CORRESPONDENCE dated July 2, 1999 HITCHCOK stated:

The Subject inmate has a Court Order (see attached) that grants him access to the Law Library on a 17 hour a week basis. He currently has a total of 46 charges against him according to the Classification Staff who researched his files. Only a very few have been concluded in any form. See that Inmate Lawson receives the weekly 17 hour Law Library access as ordered by Judge Lebow on January 23, 1998. If you have time constraints you can not deal with, work with the Charlie shift to get him more access. Let me know if there are any other problems.

CC:    Inmate Ross Lawson , 7-C-3
       File

---

(6.) See Plaintiff's Summary Exhibit #24 (Court Order Granting Law Library time)

(6.) See Plaintiff's Summary Exhibit #25 (B.C.M.J.'s law library schedule)

(7.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(8.) See Plaintiff's Summary Exhibit #27 (See Letter to Sgt. ADAMS & WILCOX)

(9.) See Plaintiff's Summary Exhibit #28 (See Def. HITCHCOCK'S Inm. CORRESP.)

10. The Plaintiff in this action was then given his 17 hours access to the Broward County
    Jail'S law library every week. The Inmate Correspondence written by Defendant HITCHCOCK
    was complied with even if some of the 17 hours per week needed to be made up by taking
    the Plaintiff to the law library on Charlie shift because Bravo shift did not have all
    the hours open to allow the Plaintiff to attend the law library on Bravo shift. This
    went on untill 10/5/99.

11. On 10/5/99 the Plaintiff in this action was given a D.R. for non-violent violations
    of the jail's rules and regulations.

12. On 10/5/99 after getting a D.R. for non-violent violations of the jail's rules and
    regulations the Plaintiff was then moved to non-violent lockdown unit 7/B/209 which
    housed inmates for non-violent D.R.s where as inmates that get D.R.s for violent rule
    violations go to the 8th floor lockdown (one man per room) lockdown.

13. The Deputy's that wrote the D.R. promised the Plaintiff in this action that he would
    not receive more then 15 days in lockdown for the D.R. that the Plaintiff received on
    10/5/99, but the Plaintiff infact did get 30 days lockdown and served 28 of those
    thirty days in non-violent lockdown, getting out two days early for completing
    extra duty.

14. On 11/4/99 the Plaintiff was released two days early from his 30 day lockdown sentence
    and moved/transferred to 6/C/1-6-2, 6/C/1 is a lower custody level floor then the
    7th floor, Plaintiff was moved to 6/C/1 due to classification's 45 day review and
    finding the Plaintiff at max custody level, not closed custody level, but max custody
    level as Plaintiff was assessed at 29 points.

---

(10.) See Plaintiff's Summary Exhibit #29 (See Comp. Print. Inm. Movement)

(11.) See Plaintiff's Summary Exhibit #30 (See Inmate Posting Sheet)

(11.) See Plaintiff's Summary Exhibit #31 (See Inmate Relocation Request Form)

(12.) See Plaintiff's Summary Exhibit #30 (See Inmate Posting Sheet)

(12.) See Plaintiff's Summary Exhibit #31 (See Inmate Relocation Request Form)

(12.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's & Inmates affidavits)

(13.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card 10/5/99)

(14.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card 11/4/99

(14.) See Plaintiff's Summary Exhibit #33 (See Inmate Relocation Request Form)

15. Prior to entering unit 6/C/1 Deputies searched the Plaintiff's property. Upon the Deputies searching Plaintiff's property, the Deputies found the original hand written/ruff draft of this action. Deputies made comments to the fact that Mr. Hitchcock (one of Defendants in ruff draft) will be told of the matter. And that even the Courts can't tell the jail what to do, officers run the jail, not the Courts!

16. Upon the Plaintiff being housed in unit 6/C/1, he was harassed by staff/ Deputies about the amount of legal work, and documents pertaining to legal matters. Do to this the Plaintiff contacted his family, and in turn the Plaintiff's family contacted the Broward County Jail's Classification department. The Classification Department then agreed/promised the Plaintiff's family that they were going to relocate the Plaintiff to a cell that he had previously was housed in so as his adjustment to inmate open population would be as smooth as possible, and so that he the Plaintiff would not be harassed any more concerning his legal work or issues surrounding such.

17. On 11/6/99 the Plaintiff in this action was relocated to his previous cell 7/C/3-9-1 per Classification. This done after a complete review was conducted on the Plaintiff and his Classification file.

18. On 11/6/99 after the Plaintiff had settled in to unit 7/C/3 with no problems, the shifts changed and do to acts of reprisal for no reason or truthful justification the Plaintiff was moved to the most secure/high risk/lockdown unit in the jail, unit 8/C/2-04.

---

(15.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(16.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(16.) See Plaintiff's Summary Exhibit #34 (See Plaintiff's Family's Affidavit

(17.) See Plaintiff's Summary Exhibit #35 (See Inmate Posting Sheet)

(17.) See PLaintiff's Summary Exhibit #36 (See Classification Review Form)

(17.) See Plaintiff's Summary Exhibit #37 (See Inm. Relocation Request Form)

(18.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card )

(18.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

19. Unit 8/C/2-04 does not allow inmated housed in it's unit to have access to the jail's
    law library, nor any movement unless chained and shackled and handcuffed to any where
    that inmate must go, such as Court and Medical etc. the 8th floor is the highest
    custody level floor in the Broward County's Jail System, and houses only the most
    violent dangerous inmates who violate the jail's rules and regulations with violent
    rule violations.

20. It should also be noted that the Broward County Main Jail's law library does not
    have a paralegal to assist or help inmates in any way, nor does it have an employee
    to do so.

21. On 11/6/99 upon the Plaintiff being placed in unit 8/C/2 the Plaintiff discovered
    that he would be denied access to the jail's law library and so forth. So the
    Plaintiff submitted a request to have access to the law library as designated by
    the Defendant Superintendent/Captain William Hitchcock on July 2, 1999. The request
    that the Plaintiff submitted was dated 11/8/99

22. Also on 11/8/99 the Plaintiff submitted a request asking for copies to be made.

23. On 11/10/99 again the Plaintiff submitted a request form begging to allow him access
    to the jail's law library so he could make copies, research, etc, etc,.

24. On 11/11/99 early in the morning the Plaintiff once again requested to have copies
    made.

---

(19.) See Plaintiff's Summary Exhibit #38 (S.O.P. 7.30-Adm.Segregation)
(19.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidavits)
(20.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidivits)
(21.) See Plaintiff's Summary Exhibit #38 (See Request Form 11/8/99)
(22.) See Plaintiff's Summary Exhibit #39 (See Request Form 11/8/99)
(23.) See Plaintiff's Summary Exhibit #40 (See Request Form 11/10/99)
(24.) See Plaintiff's Summary Exhibit #41 (See Request Form 11/11/99)

25. On 11/11/99, later in the day, Deputy Wilcox came to the 8th Floor and took papers from the Plaintiff and inmate PERRY ARCHIBALD 50999349, to have copies made for them. The Plaintiff's paperwork contained a hand written copy of the pleadings in·this action, grievances, requests, and letters & legal work that was to go to the Plaintiff's attorney. All documents taken by Deputy Wilcox were promised to be copied and returned with the mail later that day.

26. On 11/11/99 later during Charlie Shift, during when mail was being handed out, inmate PERRY ARCHIBALD 50999349 received all his papers with copies made. Plaintiff asked the Deputy about the papers that belonged to him and that his should be in the mail as well, but the Deputy told the Plaintiff that there was nothing in the mail for him.

27. The Plaintiff immediately contacted his family, and in a short period of time, learned, that his papers were confiscated and in Defendant Superintendent/Captain William Hitchcock's possession. It should be noted that William Hitchcock was listed as a Defendant in the hand written copy of the pleadings that the Plaintiff requested to have copies made of by Deputy Wilcox, that were now in William Hitchcock's possession.

28. On 11/12/99 the Plaintiff submitted a grievance on the fact that he was being denied access to the law library, and that it was all do to acts of reprisal for attempting to file suit for violations of the Plaintiff's rights against the Defendants.

29. On 11/18/99 the Plaintiff submitted a request to Deputy Wilcox asking where and why he has not had his legal papers returned to him, so forth etc.

30. On 11/19/99 the Plaintiff submitted a request to Defendant Superintendent/Captain William Hitchcock asking why that he had the Plaintiff's legal work and papers, and requesting them to be returned A.S.A.P.

---

(25.) See Plaintiff's Summary Exhibit #42 (See Inmates signed statement)

(25.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidavits)

(26.) See Plaintiff's Summary Exhibit #26.3 (Plaintiff's & Other Affidavits)

(27.) See Plaintiff's Summary Exhibit #26,34 (Plaintiff's & Family Affidavit

(28.) See Plaintiff's Summary Exhibit #43 (See Grievance Form 11/12/99)

(29.) See Plaintiff's Summary Exhibit #44 (See Request Form 11/18/99)

(30.) See Plaintiff's Summary Exhibit #45 (See Request Form 11/19/99)

31. Then finally on 11/23/99 the Plaintiff received a INMATE CORRESPONDENCE from Deputy J. McManus,Report Coordinator, Administrative Aid to Captain Hitchcock. The Subject of this letter was the file that Deputy Wilcox had taken from the Plaintiff on 11/11/99. The Correspondence read as follows:

> The file Dep. Wilcox had taken from you contained Grievances, Inmate Request Forms, Commissary Ledgers. One of the Commissary Ledgers was altered. We noticed that on September 10, 1999 there was a deposit of $165 put into your account. On the same day it was disbursed back out. From talking with your family member on November 22, 1999, you received money for a claim for some lost property. Why you would change this ledger we do not know. I will turn the file back to you today, the way we received it.

32. When the Plaintiff received his file back it had the following missing, handwritten pleadings on this action, requests, grievances, letters & papers to Plaintiff's attorney .

33. Then on 11/24/99 the Plaintiff received a INMATE CORRESPONDENCE from the Defendant in this action Superintendent/Captain William Hitchccock, on the subject of access to law library. And that correspondence read as follows:

> Your complaint about access to the Law Library was sent to our Legal Department. They have informed me that they would provide an answer on December 3, 1999.

34. On 11/24/99 the Plaintiff submitted a grievance on the fact that the file that was returned to the Plaintiff that belonged to the Plaintiff was missing criminal paperwork, letters to attorney, questions, etc. and to please have them returned.

---

(31.) See Plaintiff's Summary Exhibit #46 (See Inmate Correspondence 11/23/99

(32. ) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's, Other Affidavits)

(33.) See Plaintiff's Summary Exhibit #47 (See Inmate Correspondence 11/24/99

(34.) See Plaintiff's Summary Exhibit #48 (See Grievance Form 11/24/99)

35. Then on December 3, 1999 the Plaintiff in this action received a INMATE CORRESPONDENCE
    from the Defendant in this action Superintendent/Captain William Hitchcock, on the
    subject of law library, and such read as follows:

    **I have consulted with our legal division regarding your court order requesting additional
    Law Library time. E. Williams, P.A. verified that the court order states that we are
    'requested' to allow you to attend the Law Library 'according to our policy and
    procedures'. Our policy is to schedule law library time for the entire population on an
    equal basis with the exception of inmates who are pro se (who have no assigned attorney of
    record).**

    **We feel that inmates who are pro se, obviously require additional law library time. We
    also feel that inmates who have attorneys of record are provided ample scheduled time for
    their legal needs. Any further infringement on the Law Library schedule would lessen the
    time for other regularly scheduled inmates and valid pro se cases. As you have an attorney
    of record and are not pro se, we are no longer inclined to provide you with any additional
    Law Library time.**

    **You also asked why you could not have more than 20 copies of a particular set of
    documents. Our long standing rule, which was promulgated years ago according to F.S.S.
    33-8 detention facility codes (see attached), limited copies to the number fifteen. We feel
    that 20 copies are a proper number of copies to allow for total access to the courts and all
    other entities that would require a copy. If you deem you still require more copies, I
    request a written list of all entities that you feel require a copy for your purposes. The
    copies will be allowed if the list is followed with proper justification for need of copies being
    made for those areas.**

36. Then on 12/15/99 the Plaintiff submitted a grievance on the fact that the Plaintiff's
    grievance he filed on 11/24/99 was never reponded to, and that the Plaintiff was
    still missing criminal paperwork, letters, noted discovery, pleadings in this
    action, etc. And the response that the Plaintiff received was that " Deputy Wilcox
    stated she had taken the file gave it to Captain Hitchcock, then I returned it to
    you." Signed by Deputy J. McManus.

    ---

    (35.) See Plaintiff's Summary Exhibit #49 (See Inmate Correspondence 12/3/99)
    (36.) See Plaintiff's Summary Exhibit #50 (See Inmate Grievance 12/15/99)

37. On 11/25/99 after the Plaintiff's family getting involved in the fact that the Plaintiff was housed on the 8th floor, and having outside intervention involved, the Plaintiff was transferred to unit 7/D/2-6-1-

38. Then on 12/17/99 while the Plaintiff was then housed in open population unit (7/C/2), the Plaintiff submitted a request to the law library requesting for the law library to place him on the list for all available times. The response that the Plaintiff received was as follows. "I was told you cannot come down with court orders."

39. Then in January 2000 the Plaintiff once again was able to redo the pleadings in this action, and filed such with the U.S.DISTRICT COURT, and such was received on 1/4/00.

---

(37.) See Plaintiff's Summary Exhibit #51 (See I.S.M.A.S.R.F.)

(37.) See Plaintiff's Summary Exhibit #26,34 (Plaintiff & Family Affidavits)

(38.) See Plaintiff's Summary Exhibit #52 (See Request Form 12/17/99)

(39.) See Plaintiff's Summary Exhibit #53 (See CIVIL DOCKET CASE# 00-CV-6009)

## MATERIAL FACTS IN DISPUTE

Wherefore the Plaintiff has shown that there are material facts in dispute. And such require a trial by jury. The Plaintiff in this action has verified that material issues and facts are in dispute by documents, affidavits, etc. that are attached and incorporated into this response to Defendant's Motion For Summary Judgement, and such are listed as Plaintiff's Summary Exhibits.

## MEMORANDUM OF LAW

I. The Plaintiff has a First Amendment right to receive publications through
the mail from publisher's, bookstores, and distributors, a right which the Defend-
ant's have violated.

### A. Applicable Law

The Supreme Court cases addressing inmate's rights to receive publications
through the mail, Bell v. Wolfish, 441 U.S. 520 (1979) and Thornburgh v.
Abbott, 490 U.S. 401 (1989), both contemplate the First Amendment right of
prisoner's (convicted and pretrial detainee) to receive publications through
the mail, subject to reasonable penological interests. The Court stated in
Bell that "our cases have held that sentenced prisoner's enjoy freedom of
speech and religion under the First and Fourteenth Amendments" Bell at 545.
Analyzing the restriction imposed upon pretrial detainee's in that case—
one which limited inmates to receiving hardbound books from publisher's
only—the Court in finding that restriction reasonable, looked at three (3)
factors: 1) Whether there was evidence that the jail officials had exager-
ated their response to the legitimate security problem; 2) Whether the reg-
ulation operated in a neutral fashion; and 3) Whether there were alternative
means of obtaining reading material that have not been shown to be burdensome
or insufficient. Bell at 551. The Court found that 1) The jail officials
had not exaggerated their response to the security problem; 2) That the
rule was content-neutral; and 3) That alternative means of obtaining read-
ing material in the jail did exist, and were not burdensome or insufficient.
The Court noted that the alternative means of obtaining reading material in-
cluded: 1) The availability of softcover publications through the mail from
publisher's and bookstores; 2) A "relatively large" reading library consist-
ing of 3000 hardbacks, 5000 paperbacks, and collections of donated books in
the various housing units. Bell at 552. The Court also underscored the fact
that inmates in that detention center were only housed for sixty (60) days or
less. Since the detention center allowed its inmates to obtain softcover books
and magazines through the mail from publisher's and bookstores, and provided
them with a large reading library, the Court found no evidence of any "exager-
ratéd response". Similarly, in Thornburgh v. Abbott, The Supreme Court upheld
a rule permitting censorship of individual publications where such were found

to be detrimental to the security, good order, or discipline of the institution, but disallowed censorship where publications were banned because of the philosophical, religious, political, sound or sexual content of the publication. Thornburgh at 414-419. In evaluating the prison's publications policy. The Court noted that the inmates possessed sufficient alternative means of obtaining reading materials because the prisons policy permitted "a broad range of publications to be sent, received, and read." Thornburgh at 417-418. The Court also mentioned that "any attempt to achieve greater consistency by broader exclusions might itself run afoul of the second Turner factor (whether there are alternative means of exercising the First Amendment right) Id. at 417, n.15. "Under Thornburgh v. Abbott" wrote a recent federal circuit court, "inmates have a clearly established right to receive publications that are not prohibited by reasonable penological interests". Turner v. Stewart, 188 F.3d 515 (4th Cir. 1999).

In addition, federal circuit and federal district courts interpreting the decisions in Bell and Thornburgh have struck down jail and prison policies that have enacted wholesale bans on books, magazines, or newspapers. Thomas v. Leslie, 176 F.3d 489 (10th Cir. 1999) (ban on newspapers unconstitutional); Jackson v. Elrod, 881 F.2d 441, (7th Cir. 1989) (wholesale ban on hardbound publications violates Bell standards); Martin v. Tyson, 845 F.2d 1451 (7th Cir. 1988) (global ban on newspapers unconstitutional); Green v. Ferrell, 801 F.2d 787 (5th Cir. 1986) (ban on newspaper subscriptions unconstitutional); Pepperling v. Crist, 678 F.2d 787 (9th Cir. 1982) ("blanket prohibition against receipt of publications by any prisoner comes a heavy presumption of unconstitutionality"); Kincaid v. Rusk, 670 F.2d 737 (7th Cir. 1982) ("maintenance of security and discipline do not justify the wholesale prohibition of pictorial magazines, hardbound books, or newspapers"); Parnell v. Waldrip, 511 F.Supp 764 (W.D.N.C. 1981) (ban on receipt of paperback books, magazines and newspapers violates Bell standards). Both Bell and Thornburgh, canterplate the right to receive publications through the mail, subject only to the limitations on the source (publishers and bookstores if hardbound, per Bell) or content (impermissable if detrimental to the security, order, or discipline of the insttution, per Thornburgh). As the federal court stated in Brodes v. Seiter, 779 F. 2d 1181 (6th Cir. 1985) "we note that other courts of appeal have held that prisoners possess First Amendment rights to receive printed publications by mail order or subscription" ID. at 1181 (internal citations omitted). Further, as the court in Kincaid v. Rusk, 670 F.2d 737 (7th Cir. 1982) held. "pretrial detainees, regardless of the

length of detention, suffer substantial deprivation of their First Amendment rights
when access to newspapers, books, and magazines is arbitrarily circumscribed" Id.,
at 745.

B. Application of the law to the facts

The defendant's have clearly infringed upon the plaintiff's First Amendment rights
by enacting and enforcing a wholesale ban on all non-religious publications ordered
through the mail. As the foregoing discussion of applicable legal standards in Bell,
Thornburgh and their progeny has shown, broad, wholesale ban on publications violate
clearly established constitutional First Amendment law in the prison context. The
defendant's ban is an "exaggerated response" to the alleged security problem because
it prohibits the plaintiff from ordering any non-religious book through the mail--
the sort of over exclusive prohibition which Bell and Thornburgh considered to be
excessive. In addition, the fact that defendant's allow inmates to receive religious
publications through the mail contradicts the alleged security and order rationale
defendant's pro-offer as their reason for their ban on non-religious books. The de-
fendant's fail to offer any evidence to show that religious publications are any dif-
ferent than non-religious publications, and pose any less a security and order threat
yhan non-religious publications. Further, the defendant's do not present any actual
evidence to show that publications received from publishers or bookstores have in
fact constituted a security risk because of actual instances of contraband being dis-
covered in said publications. The defendant's merely make speculative assertions (see
Hitchcock Affidavit, page two) without presenting any concrete evidence. Such spec-
ulative assertions, without evidentiary basis, have been found to be nothing but "the
piling of conjecture upon conjecture", Lyon v. Grossheim, 803 F.Supp 1538,1554 (S.D.
Iowa 1992) ("prison officials relied soley on subjective conjecture and speculative
concerns totally lacking a factual basis in this record"). Moreover, assuming, ar-
guendo, that the defendant's publication ban is not "an exaggerated reponse" (which
it is) to the alleged security and order problem, the defendant's still fail to sat-
isfy the third factor in Bell requiring access to an alternative source of reading
material that is not burdensome or insufficient. As the plaintiff has shown in his
affidavits and complaint, the jail's leisure library is both burdensome and insuffi-
cient; it contains a repeatedly inadequate number of books that are worn, dated, and
of no interest to the plaintiff, and is frequently unavailable to the plaintiff and
other inmates (see Plaintiff's affidavits). And unlike inmates in Bell, plaintiff
and other inmates at the Main Jail have no access to softcover publications avail-
able through the mail to remedy the unavailability of reading material on the jail's

bookcart. Accordingly, the Jail's "alternative"—the leisure library bookcart—
fails to meet the reasonable available alternative standard of Bell, and thus vio-
lates the plaintiff's First Amendment rights.

The defendant's in their Motion for Summary Judgement refer to the Florida Admin-
istrative Code §33-501.401 and Florida Statue §944.11. These references are unappro-
priate in the present context. They have to do with the State's Department of Correc-
tions, not municipal jails; they affect convicted prisoner's in state prisons, not
pretrial detainees in county jails. Furthermore, the State's Department of Correc-
tions, unlike the Broward County Main Jail, conforms to the standards of Bell and
Thornburgh; it allows convicted prisoner's to receive softcover publications from
publisher's and bookstores through the mail. See Florida Administrative Code §33-
3.012. The Broward County Main Jail, on the other hand, prohibits inmates from re-
ceiving any non-religious book through the mail, thereby violating the standards in
Bell and Thornburgh.

In receiving the applicable constitutional standards and applying them to the facts
of the instant case, it is more than evident that the Jail's publications ban and lei-
sure library alternative fail to measure up to the constitutional requirements of Bell
and Thornburgh. The defendant's alleged security and order rationale is speculative,
without any substantive factual basis, and is plainly vitiated by its policy on relig-
ious publications. Accordingly, the defendant's have violated the plaintiff's First
Amendment rights.

II. The defendant's are not entitled to qualified immunity as a matter of law.

A. Applicable Law:

A state official is entitled to qualified immunity to the extent that his conduct
"does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800,818 (1982).
That is, it must be "obvious to all reasonable government actors in the defendant's
place that 'what he is doing' violates federal law. Lassiter v. Alabama A&M Uni-
versity, 28 F.3d 1146,1149 (11th Cir. 1994) (en banc) "Clearly established law" in the
11th Circuit includes decisions by the United States Supreme Court, the Eleventh Cir-
cuit Court of Appeals, or the highest court of the state where the case arose". Jen-
kins v. Talladega City Board of Education, 115 F.3d 821,826-27, n.4 (11th Cir. 1997)

(en banc). The question the Court in the instant case must ask is: Whether a reasonable jail official in the same circumstances as the defendant's could have concluded that his actions—enacting, imposing, and enforcing a wholesale ban on all non-religious publications sent and received through the mail—violated clearly established constitutional law at that time.

B. Application of the law to the facts:

The review of applicable case law in section I.A., above demonstrates that at the time the defendant's were enacting and enforcing their publication's ban against the plaintiff, they were violating clearly established First Amendment rights of the plaintiff's as enunciated in Bell and Thornburgh. Both cases were decided by the U.S. Supreme Court and were controlling in the Eleventh Circuit at the time the defendant's were enacting and enforcing their publications ban against the plaintiff. While there are no federal appellate cases involving publication bans in the Eleventh Circuit, other federal courts have held publications bans, similar to the one in the present case to be unconstitutional and have denied jail officials qualified immunity because these bans violated clearly established rights as established by Bell and Thornburgh. See Jackson v. Elrod, 881 F.2d 441,444-445 (7th Cir. 1989), Broulette v. Starns, 88 F.3d 512 (9th Cir. 1999), Turner v. Stewart, 188 F.3d 515, (9th Cir. 1999), and Thomas v. Leslie, 176 F.3d 489 (10th Cir. 1999). Defendant's contention in their Motion for Summary Judgement that plaintiff has failed to show that the defendant's have violated clearly established federal law is without merit. The defendant's by enacting and enforcing their publications ban against the plaintiff, clearly violated the law set forth in Bell and Thornburgh prohibiting such broad, over exclusive bans.

Accordingly the defendant's are not entitled to qualified immunity with respect to their violations of plaintiff's First Amendment rights.

C. Application of the law to the facts: the Plaintiff's retaliation claim.

The First Amendment prohibits state officials from retaliating against prisoners for exercising the right of free speech. Thomas v. Evans, 880 F.2d 1235 (11th Cir. 1989), Wright v. Newsome, 795 F.2d 964 (11th Cir. 1986). To state First Amendment claim for retaliation, the inmate need not allege violation of a separate and distinct constitutional right. Thomas at 1242. Rather, the focus is on the act of

retaliation itself, not some alleged violation of a constitutional right. **Thomas** at 1242. Acts of retaliation in cases in the 11th Circuit include being transfered Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985), and having one's legal materials confiscated, Thomas v. Evans, at 1242. In the later case, where a prisoner's legal materials have been confiscated, a denial of access to the courts violation may also arise. Id., at 1242.

In the instant case, the defendant's violated clearly established Eleventh Circuit federal law by retaliating against the plaintiff for his exercise of free speech. The plaintiff filed grievances and letters of complaint against the defendant's. In retaliation, the defendant's transferred plaintiff numerous times, denied him access to the law library, and confiscated his legal materials. In doing so, the they violated the clearly established law in Thomas v. Evans and the other above mentioned cases. Accordingly, defendant's are not entitled to qualified immunity as a matter of law.

## CONCLUSION

Based on the Plaintiff's Memorandum of Law, Plaintiff's Response to Defendant's Concise Statement of Material Facts, Concise Statement of Material Facts in Chronological Order Concerning the Plaintiff being place in a High Custody Cell, Being Denied Access to the Jail's Law Library, Having Legal Documents Confiscated and Destroyed, Plaintiff's Summary Exhibits 1 thru 53. The Plaintiff in this action prays that this Honorable Court will rule that there are material facts in dispute and grant a trial by jury. That this Honorable Court deny the Defendant's Qualified Immunity Protection in this matter. That this Honorable Court deny in its entirety the Defendant's, JENNE, HITCHCOCK AND BROWARD COUNTY'S, MOTION FOR SUMMARY JUDGEMENT AND INCORPORATED MEMORANDUM OF LAW.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct and complete copy of the foregoing was sent via U.S Mail this 26th day of November, 2000 to ADORNO & ZEDER, P.A. Counsel for Defendants 888 S. E. 3rd AVE. SUITE 500 Fort Lauderdale, FL. 33335-9002.

BY _Ross Jay Lawson_

ROSS JAY LAWSON FL-97-9905
P.O. BOX 9356
Fort Lauderdale, FL. 33310

| | | | | |
|---|---|---|---|---|
| CIS No: 979905 | Control No: | Master Jacket No: X3N9004 | Date Admitted: | |
| Last Name: | First: | Middle: | | SSN: 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 |
| Address: AT LARGE | City: | State: | Zip: 00000 | |
| OBTS: 9499921 | AFIS: 500259000410 | FDLE: | Phone: (954) 467-5416 | |

| | |
|---|---|
| | Arresting Officer Name: SHOTWELL, M |
| NCIC Fingerprint Class: 21171717052213161509 | Badge No: FL1139 |
| Date Prints Worked: 07/18/1997 | Agency: |
| Security Threat Group: | Arrest Location: 2606 SW 15 ST FTLD |
| Comments: 29/54-7834 WC-7906 | Arrest Date/Time: |
| Offense Number: FL97115980 | Arrest No: 979905 |

**Resident**

| | | | |
|---|---|---|---|
| Broward County: 25 | Eye: BLUE | DOB: 03/10/1972 | Education: UNKNOWN |
| Sex: MALE | Hair: BRN | Age: | Marital: SINGLE |
| Race: WHITE | Complexion: MEDIUM | POB (City): FORT LAUDER | Employed: ● Yes   No |
| Religion: OTHER | Height: 6 | POB (S/C): FLORIDA | Driver's License No: |
| Language Spoken: ENGLISH | Weight: 180 | | State: FLORIDA |

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**STANDARD OPERATING PROCEDURES**

**03/20/97**                                                                                                      **5.4.1**

## 5.4.1 INMATE MAIL PROCEDURES (REVISED)

The following revised SOP will become effective immediately.

### POLICY:

It is the policy of the Department of Corrections and Rehabilitation not to place limits on the volume of lawful mail an inmate may send or receive, or on length, language, content or source of mail. Limitations may be imposed only when clear and convincing evidence exists to justify such limitations for reasons of public safety or facility order and security. Guidelines for inmate correspondence shall adhere to existing laws and rules governing the management of inmate mail.

### AUTHORITY:
Florida Model Jail Standards 9.03, ACA 3D-16 and 5D-01 -5D-08

### Forms:
Detainee Property Inventory and Transfer Form - **BSO DB#21**
Rejected Mail Notification Form - **BSO DJ#15**
Event Report - **BSO RP#1**

### Definitions:

**Privileged Mail:** Mail addressed to or received from attorneys, the courts, public officials, and the media.

**Rejected Mail:** Correspondence or material that is sexually explicit, poses a threat to the security, good order or discipline of the facility and/or facilitates criminal activity.

**Indigent Inmate:** An inmate with one dollar ($1.00) or less in their commissary account.

### PROCEDURE:

### A. General Guidelines

1. Written policy and procedures govern inmate correspondence; they are available to all staff and inmates reviewed annually and updated as needed.

2. During the orientation process, inmates are informed of mail procedures. This information is made available to each inmate through the Inmate Handbook.

3. Inmates in special management housing units can send and receive letters on the same basis as inmates in the general population.

4. Unless there is reasonable belief that some limitation is needed to protect public safety or the security and orderly operation of the facility, there will be no limit on the volume of mail an inmate can send or receive or on the length, language, content or source of mail an inmate may receive or send, as long as the inmate can afford the postage.

5. Incoming and outgoing mail will not be held for more than 24 hours and packages will not be held for more than 48 hours, excluding weekends and holidays.

LWSON 0000131

6. Inmate Correspondence privileges will not be withdrawn as punishment. Mail can be stopped by court order.

7. Both incoming and outgoing mail may be opened and inspected for contraband. Mail is read, censored, or rejected when based on legitimate facility interest of order and security. Inmates are notified when incoming or outgoing letters are withheld in part or full.

8. Mail received for persons not in custody will be returned to the Post Office.

9. Mail Clerks maintain a Daily Log of all mail that is to be returned to sender.

## B. Volume of Mail

1. The will be no limitation on the volume of correspondence an inmate can send or receive, or on the length, language content, except where there is reasonable belief that limitation is necessary to protect public safety or facility order and security, as listed in section H2 of this procedure.

## C. Limits on Inmate Correspondence

1. Inmates will not correspond with other inmates housed in a Broward County DCR Facility or inmates housed in any other state or local correctional facility without prior approval of the facility superintendent.

2. Inmates such as married couples and immediate family members incarcerated within a Broward County DCR facility may request to correspond with each other, via letter, with approval of the facility superintendent(s).

3. Should approval be granted, it will be the responsibility of the facility superintendent(s) to set specific guidelines, if any, for the correspondence.

4. When correspondence between inmates housed in Broward County DCR facilities has been denied or approved the inmate(s) will be notified in writing.

## D. Indigent Inmates

1. Indigent inmates will be supplied with writing materials and postage to correspond with attorneys and the court. In addition, inmates without funds will be supplied writing materials and postage to correspond with their immediate family at reasonable intervals.

## E. Privileged Mail

1. Inmates are permitted to send sealed letters to a specified class of persons and organizations, including but not limited to the following: courts, officials of the confining authority; state and local chief executive officers; administrators of grievance systems; and members of the paroling authority. Mail to inmates from this specified class of persons and organizations **may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing.**

2. Staff will not open or inspect privileged mail unless there is a reasonable suspicion of a prohibited act listed in section H2 of this procedure. Mailroom staff will stamp all privileged mail, **"Legal Mail".**

3. Staff will deliver privileged mail to inmates (Mon. - Fri.) and open it in the inmate's presence in order to intercept checks, money orders or other contraband only.

4. An Event Report will be written if contraband found in privileged mail is illegal to possess. The sender will be notified by the Superintendent or designee that the contraband has been seized. If the contraband found is illegal and needed for a criminal investigation or prosecution the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. Chain of custody will be maintained.

LWSON 0000132

5. Contraband found in mail that may be legally possessed outside the detention facility will be returned to sender. Perishable items will be disposed of.

6. Outgoing privileged mail will not be opened, but may be held for a reasonable time not to exceed seventy-two hours pending verification that it is properly addressed to a person or agency.

## F. Outgoing Mail Procedures

1. Inmates of the Broward County DCR are permitted unlimited and uncensored correspondence with whomever they wish. Outgoing mail will not be limited unless such mail violates this Standard Operating Procedure, or federal or state law or if done so by a court order.

2. Inmates are permitted to send sealed letters to a specified class of persons and organizations, including but not limited to the following: courts, officials of the confining authority; state and local chief executive officers; administrators of grievance systems; and members of the paroling authority.

3. Outgoing mail may be opened and inspected to determine if:

   a. The letter contained threats of physical harm against a person or threats of criminal activity;
   b. The letter threatens blackmail or extortion;
   c. The letter contains plans to escape;
   d. The letter contains plans for activities in violation of detention facility rules;
   e. The letter is in code;
   f. The letter contains information which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

4. Outgoing mail suspected of containing security threats will be inspected by the Superintendent or his designee. If the inspection proves contraband is present, the Superintendent will initiate a formal investigation into the matter.

5. Outgoing mail will be collected once a day by staff. Mail is collected by the U.S. Postal Service every day except Saturdays, Sundays, and holidays.

## G. Incoming Mail

1. Incoming mail will not be held for more than 24 hours, excluding weekends and holidays.

2. Incoming mail may be monitored to ascertain any attempts at escape, security violations or conspiracy to introduce contraband.

3. Incoming mail may be inspected to intercept cash, checks, money orders or physical contraband. Cash, money orders and cashier's checks will be verified and a money receipt completed with a copy placed in the letter for the inmate. The original receipt and legal tender is taken to Inmate Banking and deposited in the inmate's account and a copy is maintained in the Mail Unit.

4. All incoming mail will be researched to determine the presence and location of the inmate in the jail system. Inmates no longer in the system will have their correspondence marked "Return to Sender" and returned to the Postal Service. Inmates in the system will have their housing locations noted on the front of the correspondence.

5. Certified or registered mail is picked up at the Post Office by the Mail Clerks or signed for by a Mail Clerk when it is delivered to a facility by a Postal employee. Certified or registered mail is processed in the same manner as all other incoming mail.

LWSON 0000133

6. An Event Report **(BSO RP#1)** will be written if contraband found in mail is illegal to possess. The perimeter deputy will complete Event Reports documenting contraband seized by mailroom staff. The sender will be notified by the Superintendent or designee that the contraband has been seized. If the contraband found is illegal and needed for a criminal investigation or prosection the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. Chain of custody will be maintained.

7. Contraband found in mail that may be legally possessed outside the detention facility will be returned to sender. Perishable items will be disposed of.

## H. Rejection of Mail

1. Inmates will be notified when incoming or outgoing letters are rejected by the completion of the Rejected Mail Notification Form **BSO DJ#15.**

2. Reasons for rejection of mail may include, but not limited to:

   a. The letter contained threats of physical harm against a person or threats of criminal activity;
   b. The letter threatens blackmail or extortion;
   c. The letter contains plans to escape;
   d. The letter contains plans for activities in violation of detention facility rules;
   e. The letter is in code;
   f. The letter contains information which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

## I. Returned Mail Procedures

1. Inmate mail returned to the DCR by the United States Postal System due to insufficient postage or an incorrect address, will be returned to the inmate who originally sent the letter.

2. If the sender's name does not appear on the envelope, then the letter may be opened to ascertain the sender's name, and returned to the sender immediately.

3. Mail received for inmates no longer in custody will be returned to the sender.

## J. Publications

1. Books, magazines, and newspapers for inmates will not be accepted through the mail.

2. A variety of outside publications for inmates will be ordered by each facility and made available to inmates through the Inmate Leisure Library.

3. Each inmate may retain a total of four (4) articles of reading materials in their cell; e.g., two (2) magazines and two (2) books. Note: Dictionary, Religious text approved by the Chaplain and other prior approved program books are not included in this total.

4. Inmates will not be permitted to accumulate printed material so as to pose a fire hazard in their housing area.

## K. Packages

1. Inmates are **only** permitted to receive packages containing clothing to be worn at court appearances.

2. Packages containing anything except court clothes will be returned to sender. If the package does not have a return address it will be returned to the US Postal Service.

LWSON 0000134

3. The Mail Clerk will verify if the inmate is in custody, document the receipt of the package in the Daily Log and forward the package to the scanner deputy for inspection. Facilities not having a scanner will transport packages to the nearest facility to have the packages scanned.

4. Mail Clerks will search scanned packages for contraband. Perishable items will be disposed of. If contraband is found that may be legally possessed outside the detention facility, the entire package will be returned to the sender. If the contraband found is illegal and needed for a criminal investigation or prosecution the seizing deputy will promptly deliver it to the Watch Commander for determination of appropriate action. The perimeter deputy will complete Event Reports documenting contraband seized by Mail Clerks.

5. Mail Clerks will forward inmate court clothing, received in packages, to visitation staff for inspection and placement in the inmate's property.

LWSON 0000135

5 of 5

## AFFIDAVIT OF JEFFERY S. GOTTMAN

The undersigned affiant, Jeffery S. Gottman, after being duly sworn, deposes and states the following:

1.      My name is Jeffery S. Gottman, and I am over the age of (18) and otherwise sui juris.

2.      I make this Affidavit based on my personal knowledge of the contents hereof.

3.      On November 11, 1999 I was housed on the 8th floor with inmate ROSS LAWSON.

4.      On November 11, 1999 I watched inmate ROSS LAWSON give a file/folder containing a law suit for the Broward County Jail banning inmates from getting publications, grievances & requests on not being allowed to get publications in the Broward County Jail, letters and legal work to do with his criminal case, and other documents to Deputy Wilcox so that she could make copies for him as he requested, because ROSS LAWSON wanted to file the law suit that he had completed on the Broward County Jail not letting inmates get books/publications.

5.      I also witnessed inmate PERRY ARCHIBALD give Deputy Wilcox a file to make copies for him as well. Although I do not know what was in ARCHIBALD'S file because he did not talk about or show what was in it.

6.      I heard Deputy Wilcox promise both ROSS LAWSON and PERRY ARCHIBALD that they would both get back their papers and copies of such that day.

7.      That night 11/11/99 PERRY ARCHIBALD got back his papers and copies of such, but inmate ROSS LAWSON did not. And ROSS LAWSON inquired to the Deputy why, and was told that he did not have anything for him.

8.      I also heard classification officers speak with inmate ROSS LAWSON about why he was on the 8th floor. And they told him it was not them or in their hands why he is on the 8th floor, and that administration was the ones that had LAWSON on the 8th floor, and there was nothing they could do to move LAWSON.

9.     I heard Deputies tell LAWSON that he could not have access to the law library, per Superintendent Hitchcock.

10.     I was also there when LAWSON got the file back that he had given to Deputy Wilcox. The cells were closed but I could hear Deputy McManus speaking with LAWSON. Almost approx. two weeks after LAWSON gave the file to Wilcox, Deputy McManus came to the 8th floor and handed LAWSON his file why LAWSON and we were in our cells. I heard LAWSON tell Deputy McManus that many of his papers were missing. Including I heard LAWSON say that the law suit that he worked on so hard was gone, and he requested to know where his documents and law suit was. Deputy McManus told LAWSON that she only got what she gave him, and he would have to take it up with Mr. Hitchcock.

11.     I have overheard Deputies say that they are going to get LAWSON one way or the other for all the problems he is causing Mr. Hitchcock. And the Sheriff.

RESPECTFULLY SUBMITTED,

Jeffery S. Gottman 5098-22444
P./O. BOX 9356
Fort Lauderdale, FL. 33310

## OATH

BEFORE ME THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED Jeffery S. Gottman, WHO WAS SWORN AND SAYS THAT THE FOLLOWING STATEMENT OF AFFIANT IS TRUE AND CORRECT.

SWORN TO ON THIS $22^{th}$ DAY OF November, 2000.

PERSONALLY KNOWN   ( )
I.D. PROVIDED     (✓)

TYPE OF I.D. _Man Jr./ Movement Card_

Austin Williams
MY COMMISSION # CC756132 EXPIRES
July 5, 2002
BONDED THRU TROY FAIN INSURANCE INC.

**NOTARY REPUBLIC**

**AFFIDAVIT OF TERRELL L. SESSIONS**

The undersigned affiant, TERRELL L. SESSIONS, after being duly sworn, deposes and states the following:

1.  My name is TERRELL L. SESSION, and I am over the age of (18) and otherwise sui juris.

2.  I make this Affidavit based on my personal knowledge of the contents hereof.

3.  I was arrested on July 11, 1998, and booked into the Broward County Jail on the same day.

4.  Since my date of arrest the Broward County Jail has had a policy that bans inmates from receiving publications from outside sources.

5.  From My date of arrest until on or about March of 1999 Christian literature and Christian publications were the only ones allowed into the jail for inmates. This was an unwritten law that allowed only Christian literature into the jail for inmates.

6.  After March of 1999 the jail allowed religious publications for inmates but only religious publication, all others were still banned.

7.  I have seen and heard Deputies and jail staff harass inmate ROSS LAWSON about lawson standing up for his rights.

8.  I am also willing to testify how the jail's staff takes revenge upon all inmates who stand up for their rights.

9.  I have had publications sent to me and they were denied entrance do to the jail's policy.

10.  I have been a non-convicted pretrial detainee during my stay in the Broward County Jail.

11.    I have written to the jail's administration explaining to them that the
ban on publications violates my rights, and they have only denied to make any change.

RESPECTFULLY SUBMITTED,

TERRELL L. SESSIONS
P.O. BOX 9356
Fort Lauderdale, FL. 33310

#### UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY (28 USCS §1746)

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2000

BY _____

### AFFIDAVIT OF JOHN J. JUDD

The undersigned affiant, JOHN J. JUDD, after being duly sworn, deposes and states the following:

1.    My name is JOHN J. JUDD, and I am over the age of (18) and otherwise sui juris.

2.    I make this Affidavit based on my personal knowledge of the contents hereof.

3.    I was arrested on May 3, 1998.

4.    Since my arrest I have been housed as a pretrial detainee in the custody of the BROWARD COUNTY DEPARTMENT OF CORRECTIONS AND REHABILITATION.

5.    The Broward County Sheriff's Office runs the B.C.D.O.C.A.R.

6.    From my date of arrest until 3/99 the B.C.D.O.C.A.R. did not allow inmates to receive publications of any kind from any outside source.

7.    The only exception that I witnessed on the ban on publications from my date of arrest until 3/99, was that Christian publications, Christian literature, and other Christian materials were coming into the jail. This was not a written S.O.P. but an unwritten law, that allowed inmates to get Christian publications while at the same time denying all other inmate to receive reading material of their choice unless it was Christian material/publications.

8.    In 3/99 B.C.D.O.C.A.R. revised it's S.O.P. and allowed inmates to receive only religious publications through the mail, all other publications were still banned from inmates receiving such from any outside source.

9.    I have had publications of several types sent to me and rejected because of the ban on publications.

10. After 3/99 I was allowed, and did have religious publication sent to me.
Although I would if the Jail would permit love to have other publications of my
choice sent to me so that I could make positive of my time, non-religious publications.

11. I have seen and heard Deputies harass and make fun of ROSS LAWSON for attemping
to sue over the ban on publications. Deputies have said numerous times that no Court
is going to Order the Jail allow books to low life inmates.

RESPECTFULLY SUBMITTED,

JOHN J. JUDD
P.O. BOX 9356
Fort Lauderdale, FL. 33310

**OATH**

BEFORE ME THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED ~~Jeffery S. Gottman~~ *John J. Judd*, WHO WAS
SWORN AND SAYS THAT THE FOLLOWING STATEMENT OF AFFIANT IS TRUE AND CORRECT.

SWORN TO ON THIS _____20_____ DAY OF November, 2000.

PERSONALLY KNOWN   ( )
I.D. PROVIDED       (✓)

TYPE OF I.D. _Main Jp, / Contact Card_

NOTARY REPUBLIC

Austin Williams
MY COMMISSION # CC756132 EXPIRES
July 5, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

**AFFIDAVIT OF MICHAEL CONSIGLIO**

The undersigned affiant, MICHAEL CONSIGLIO, after being duly sworn, deposes and states the following:

1.      My name is MICHAEL CONSIGLIO, and I am over the age of (18) and otherwise sui juris.

2.      I make this Affidavit based on my personal knowledge of the contents hereof.

3.      I was arrested in March of 1997, and housed in the custody of the Broward County Jail until June of 1999.

4.      From my date of arrest untill on or about March 1999 the Broward County Jail system had a ban on publication that prohibited inmates from getting publications in through an outside source. From my date of arrest untill approx. 3/99 the only exception to this ban was an unwritten policy that allowed Christian material to be admitted to inmates who chose to read Christian literature. No other publications of any kind were allowed to enter the jail unless they were Christian, and this went on from my date of arrest untill on or around March of 1999.

5.      In March of 1999 the Broward County Jail started to allow inmates to receive religious publications of their choosing through the mail, but only religious publications, all other publications were still prohibited to inmates untill I left in June of 1999.

6.      From my date of arrest untill March of 1999 I received several Christian publications in the mail, including but not limited to, Christian correspondence course, study guides, and other Christian literature and publications.

7.      I am also aware of, and willing to testify to the jail's employees and the way that they take revenge on inmates who stand up for their rights. I am a witness to some of the acts that were committed against ROSS LAWSON in the form of revenge.

8.      I am now a convicted prisoner and I am assigned to the custody of the D.O.C. And the D.O.C. allows inmates to receive books/publications through the mail.

9.    I have also had non-religious publications sent to me while I was housed in the Broward County Jail, and those publications were denied to me.

RESPECTFULLY SUBMITTED,

MICHAEL CONSIGLIO
P.O. BOX 9356
Fort Lauderdale, FL. 33310

**UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY (28 USCS §1746)**

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2000

BY

Print or type inmate's name (last name, first name)  Arrest Number

_6 A 3_

Print or type inmate's location (Facility/Housing Area/Cell Number)    _10/97_
Date

Correspondence addressed to you was received on _10/97_    and did not comply with Department

Corrections and Rehabilitation correspondence guidelines. Correspondence was rejected and:

☑ Returned to Sender

☐ Other: _UA Book (Non-Religious)_

BSO DJ#15 (New 7/95)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION

---

## REJECTED MAIL NOTIFICATION

_Lawson, Ross_    _57979905_

Print or type inmate's name (last name, first name)    Arrest Number

_B7_    _10·29_

Print or type inmate's location (Facility/Housing Area/Cell Number)    Date

Correspondence addressed to you was received on _10 29_    and did not comply with Department
Date

Corrections and Rehabilitation correspondence guidelines. Correspondence was rejected and:

☑ Returned to Sender

☐ Other: _UA EMail_

BSO DJ#15 (New 7/95)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION

---

## REJECTED MAIL NOTIFICATION

_Lawson, Ross_    _57979905_

Print or type inmate's name (last name, first name)    Arrest Number

_7C3_    _9/10/99_

Print or type inmate's location (Facility/Housing Area/Cell Number)    Date

Correspondence addressed to you was received on _9/10/99_    and did not comply with Department
Date

Corrections and Rehabilitation correspondence guidelines. Correspondence was rejected and

☐ Returned to Sender

☐ Other. _UA Catalog_

BSO DJ#15 (New 7/95).

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION    _Dept. Mail Rm—_

Date:

Name: Ross Lewis
(Alias, if u...)

Arrest #: _____ Location: 6/13 DOB: ___

To: Library Coordinator

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☐ |

Nature of Request: This to request approval and a set of instructions on
how to get books that are unavailable to me on the cart but
are in the library through the inter library loan program.
I am referring to SOP 5.5.1 AS I would like self
help in legal actions book(s) (legal) and many others.
Soft cover would be fine and reading ones as well.
(Fantasy) (History)

Inmate's Signature: Ross Lewis          Date Signed: 10/25/97

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

This rule is no longer in effect. All inmates
are unauthorized to receive any publications in any
way other than the inmate library card. Law
newspaper and magazines. Handed out by deputies
on a weekly basis.

Completed By: Taylor     CCN: _____     Date: 10/8/97     Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information          ☐ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ/24 (Rev. ...)

...can't solve the ...until ...ly to solve this problem, do so ...

**TO BE COMPLETED BY INMATE**

te of Request: 10/28/97          Inmate's Name: ROSS, LAWSON
                                  (NAME, IF NEED)

rest #: FL97-9805               Location: 6/1/3   DOB: 3/10/72

To:

Program Specialist ☐        Mailroom ☐        Commissary ☐
Classification ☐            Food Service ☐    Other ☑

ture of Request: How can I get approval for books magazi

or a correspondence course. I would like to have

them sent to me in the mail at my cost from

the publisher. Or any other way you will

approve. I had one sent but it was denied and

sent back!

mate's Signature  Ross Lawson                    Date Signed 10/28/97

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

---

**DO NOT WRITE BELOW THIS LINE:**
**ACTION TAKEN/RESPONSE**

We do not allow books or magazines
from the publisher or through the mail for that matter
It was denied for that reason

mpleted By: Williams          CCN          Date: 11/97     Time:

ll requests will be handled by the responding deputy in one of the following ways:

· ☐  Written Information                    ☐ Personal Interview

ll grievances will be responded to, in writing, by the Office of Information and Review.

O DT#24 (Rev. 4/93)

te of Request: 11/5/97          Inmate's Name: Ross Lawson

rest #: A 97-9905          Location: 6/A/3          DOB: 31072

To: ( Informal Grievance ) Superintendent

Program Specialist ☐          Mailroom ☐          Commissary ☐
Classification ☐          Food Service ☐          Other ☑

iture of Request: The Rule for me on getting books straig
from the publisher is unconstitutional and must be fixed
Change it and/or allow me to get them at my
cost straight from the publisher.

Ross Lawson
mate's Signature          Date Signed

EN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
OX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Denied

mpleted By: Williams          CCN          Date: 11/97          Time:

ll requests will be handled by the responding deputy in one of the following ways:

☐ Written Information          ☐ Personal Interview

ll grievances will be responded to, in writing, by the Office of Information and Review.

O D7#24 (Rev. 4/93)

██/A/3

ROSS JAY ████████                                    11/10/97  B.C.M.J.        11/10/97

I was informed th██ ████ .o.p. ██ ██ ██ ██ █r available to inmates, I requested

on a DJ#24 requ██t. ██o have b████ █ll ████zines and a possible correspondence corse

sent to me or ord██ █ from the inter/library loan program. And I got no response. I got

Dept. Wilson to call down to find out if this rule allowing me to get this stuff was still

in effect. After the dept. told me that the mail room, property, and administration all

said that inmates could no longer get inter library loans and that rule was no longer valid.

_Ross Lawson_                                           11/10/97
Inmate's Signature                                    Date Signed
        WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
   RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

═══════════════════════════════════════════════════════════════════

        TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
                        PART B - RESPONSE

_____

_____

_____

_____

_____


Reviewing Deputy's Signature/CCN                        Date


Supervisor's Signature/CCN                              Date

═══════════════════════════════════════════════════════════════════

        TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I _____, wish to appeal the response.


Inmate's Signature                                    Date Signed
        WHEN COMPLETED, KEEP THE TOP OF THE FORM.
   RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

═══════════════════════════════════════════════════════════════════

                DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_____


Director's Signature                                    Date
BSO DJ#51 (Revised 4/93)

BCMJ   4 20 97

in nuttin why

you feel this is [...] for me to be denied

[...] in the [...] the freedom to

recd what they choose. Freedom of speach freedom of religon

and so on. Fix this crazyness Please

_____

Ross Leuson                          11 20 97
**Inmate's Signature**                **Date Signed**

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

══════════════════════════════════════════════════

TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B - RESPONSE

_____

_____

_____

_____

_____

**Reviewing Deputy's Signature/CCN**                **Date**

**Supervisor's Signature/CCN**                **Date**

══════════════════════════════════════════════════

TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I _____, wish to appeal the response.

**Inmate's Signature**                **Date Signed**

WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

══════════════════════════════════════════════════

DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

**Director's Signature**                **Date**
BSO DJ#51 (Revised 4/93)

BROWARD SHERIFF'S OFFICE
REHABILITATION

Date: _____ /98

Inmate's Name: Ross Lawson
(Alias, if used)

Arrest #: _____

Location: 7/B/2
02-7-B-2-1

DOB: 3/10/72

To: Chaplin

Program Specialist □    Mailroom □    Commissary □
Classification □    Food Service □    Other □

Nature of Request: This is on the subject of me wanting to get religious books, and other religious material, sent to me by the publisher, at my own cost of course. Please help me in this matter, so as I may help myself to change. And grow closer to the person I want to be. Thank you for your time in this matter! G-D BLESS

_Ross Lawson_
Inmate's Signature

11/17/98
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

The acceptance of mail of any kind is a jail procedure. We do not have the authority to change a procedure

Completed By: _Chaplain's Office_ CCN _____ Date: 11-18-98 Time: _____

All requests will be handled by the responding deputy in one of the following ways:

□ Written Information    □ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

Date of Request: _____     Inmate's Name: Ross Lawson
                                                     (Alias, if any)

Arrest #: __FL97-_____     Location: 7/B/2          DOB: 3/10/72

To: Superintendent Hitchcock

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☐ |

Nature of Request: This is on the subject of me wanting to get school books, reading books,

religious books, and more, sent to me by the publisher. At my own cost of course. Please

help me in this matter, and approve this as I may start to change my life for the better.

Thank you for your time in this matter!

_____
_____Ross Lawson_____              11/17/98
Inmate's Signature                 Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

_____Books, magazines + newspaper_____
_____are not permitted by this facility._____

Completed By: _____ 0896524 Date: 11-20 Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐  Written Information                    ☐  Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review

BSO DJ#24 (Rev. 4/93)

TO BE COMPLETED BY INMATE

Date of Request: 11/17/98

Inmate's Name: Ross Lawson
(Alias, if any)

Arrest #: FL97-9905

Location: 7/B/2          DOB: 3/

To: Superintendent Hitchcock.

Program Specialist ☐          Mailroom ☐          Commissary
Classification ☐          Food Service ☐          Other

Nature of Request: This is on the subject of me wanting to get school books, reading bo

religious books, and more, sent to me by the publisher. At my own cost of course. Plea

help me in this matter, and approve this as I may start to change my life for the bett

Thank you for your time in this matter!

_____
Inmate's Signature

11/17/98
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQ
BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Your request has been forwarded
to Commissary, and property

Completed By: _____ GEN          Date: 11/18/98          Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐  Written Information                    ☐  Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Re

BSO DJ#24 (Rev. 4/93)

If you
this

COMPLETED BY ...

Date of Request: ...0/98

Inmate's Name: Ross ...
(Al..., if used)

Arrest #: FL...5

Location: 7/B/2

DOB: 3/10/7?

To: Mail ...

| Program Specialist | ☐ | Mailroom | ☒ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☐ |

Nature of Request: This is on the matter of reading and religious material. I would like
to know the proper procedure I must follow to allow me to get reading and religious
material from the publisher, at my cost of course. Or any other way possible for
me to get this litterature. Thank you for your time in this matter!

_____
Inmate's Signature

11/20/98
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Book, magazines + newspaper
are unauthorized — Leisure Libia
has reading material.

Completed By: _____ ...CO...74 _____ Date: 11-23 _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information ☐ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

Date

Arr: Fl

Location: 7/B/2
02-7-B-2-11

To: Chaplin

| Program Specialist Classification | ☐ ☐ | Mailroom Food Service | ☐ ☐ | Commissary Other | ☐ |

Nature of Request: This is on the matter of receiving religious material straight from the publisher at my cost. Am I to understand that this is being denied to all inmates in the broward county jail, or just me! And I would like a copy sent to me of this rule Please assist me in this matter, and at least help me to get a copy of the jails rul on this matter. Thank you for your time in this matter! G-D BLESS

Inmate's Signature

11/20/98
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Since you are requesting a jail procedure, we are forwarding your request to the Superintendent

11-23-98 Chaplain's Office

Completed By: _____ CCN _____ Date: _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information          ☐ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review

BSO DJ#24 (Rev. 4/93)

Date of Req. _____ Inmate's Name: _____

Arrest #: _____ Location: 7/B/2 DOB: _____

To: Superintendent Hitchcock

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☐ |

Nature of Request: This is on the matter of mail being sent to me by the publisher. The

religious material I need is not provided to me by the jail. I am JEWISH and must be

allowed to have the publisher send me the material I need at my cost of course. The

magazines and material that the jail orders for inmates is not on the subjects I

____ to ____ the quality I choose to read or study on. Plus I would very much like

____ ____ courses through the mail but are unable to if I can not receive

the ____ ____ rules. Please help me in this matter.

_____                    11/25/98
Inmate's Signature                                   Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

_____

_____

_____

_____

_____

Completed By: _____ OCN _____ Date: _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information                    ☐ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

# INTEROFFICE
## MEMORANDUM

**to:** Inmate Ross Lawson #F197-9905 cell 7-B-2

**from:** William Hitchcock, Superintendent
Main Jail Southern Operations / Department of Detention

**subject:** Inmate Publications - reference your request dated 11/20/1998

**date:** 11-23-1998

Attached Please find the revision of SOP 5.4.1 which governs inmate mail and Publications as signed by Director S. McCampbell on August 23, 1996.

These SOP's are available to you in the inmate Law Library.

cc-    file

RON COCHRAN
SHERIFF
BROWARD COUNTY
P.O. BOX 9507
FORT LAUDERDALE, FLORIDA  33310

**SPECIAL ORDER 96-33**

**Date:**    August 3, 1996

**To:**    ALL PERSONNEL
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**From:**    Susan W. McCampbell, Director
Department of Corrections and Rehabilitation

**Subject:**    REVISES SECTION J. OF STANDARD OPERATIONAL POLICY 5.4.1
ENTITLED, "INMATE MAIL, ACCESS TO PUBLICATIONS AND INSPECTION
OF LETTERS AND PACKAGES"

The following changes will become effective, October 1, 1996.

**J. Publications/ Printed Material:**

1. **As of October 1, 1996**, books and magazines for inmates will no longer be accepted through the mail.

2. A variety of outside publications for inmates will be ordered by each facility and made available to inmates through the Inmate Leisure Library.

3. Each inmate may retain a total of four (4) articles of reading materials in their cell; e.g., two (2) magazines and two (2) books.  Note: Dictionary and Bible are not included in this total.

4. Any excess books and magazines in the Property Unit or in the possession of inmates can be vouchered out or shipped (if Commissary funds are available).

5. **After October 1, 1996**, any excess books or magazines found in-cell or remaining in the Property Unit will be considered contraband and donated to the Inmate Leisure Library if suitable.

6. Storage of books and magazines by the Property Unit will be governed by the existing storage restrictions. (Refer to S.O.P. 4.1.5 Retention of Inmate Property)

7. Inmates will not be permitted to accumulate printed material to such a degree as to pose a fire hazard in their housing area.

The rest of the Standard Operational Policy remains the same.

December 4, 1998

To; Superintendant William Hitchcock/ and The Sheriff of Broward County.

RE: THE TOTAL BAN ON ALL PUBLICATIONS

To Mr. Hitchcock,

Sir. I ask that you please discuss this issue with the Sheriff himself, I will also
be mailing him a copy of this letter. This letter is on the fact that you responded to
me on 11/23/98, and stated that 5.4.1. of the S.O.P., THAT all inmates can not have books
magazines, or any type of anything sent to them or dropped of at the jail. This rule is a
direct violation of my constitutional rights, freedom of speach and freedom of the press,
I meen come on Mr. Hitchcock I am innocent and have not even beeen convicted if anything,
yet you and this jail who is run by the Sheriff are taking away everything from me. This
issue about books and magazines, plus my need for a correspondence course is a direct
violation of my rights and must be looked into. You simply can not ban me from learning
or reading what I choose. Plus the fact that this would be sensoring, which is you are
choosing what the inmates can and can not read. this is not germany it is the U.S.A.
Please look into this matter A.S.A.P. AND YOU WILL SEE HOW WRONG THIS TRUELY IS, THEN YOU
CAN FIX IT! THANK YOU FOR YOUR TIME IN THIS MATTER!

PS I have gone through the request and grievances
all to no avail, what else can I do to make you        ROSS LAWSON FL97-9905
see how wrong this is!                                 P.O. BOX 9356
                                                       FtLaud, Fla. 33310


CC sheriff Ken Jenne

SEP 07 1999

_____ Lawson _____ F-197-9995 _713 BCMJ _9/3/99_
                        Arrest      Cell  Facility   Date

**PART A - INMATE'S GRIEVANCE**

I would like to have a corospondans course sent at my
cost to me, Plus books to read so I can
improve myself for the better while I await trial
Please approve this it should be a constitutional
right for the, publisher to send this to me
                Thank you for your time.

_Ross Lawson_                                    _9/3/99_
Inmate's Signature                              Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B - RESPONSE**

Put this on a Request Form to the
mail Room.

_DcGmcManus /0/6/_
Reviewing Deputy's Signature/CCN                    Date

_____
Supervisor's Signature/CCN                          Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
I _Ross Lawson_____, wish to appeal the response.

_Ross Lawson_                                    _9/11/99_
Inmate's Signature                              Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

APPROVE

_____
Director's Signature                                Date
DCC D7#51 (Revised 4/97)

SHERIFF'S OFFICE
AND REHABILITATION
INMATE REQUEST FORM

If you haven't asked the deputy on this duty to solve this problem, do so before completing this request.

**COMPLETED BY INMATE**

Date of Request: **9/9/99**

Inmate's Name: **Ross Lawson**
(Alias, if used)

Arrest #: **FL97-9905**

Location: **7/C/3**          DOB: **3/10/73**

To:

| Program Specialist | ☐ | Mailroom | ✓ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☐ |

Nature of Request: I would like to have a correspondence course sent to me at my cost Plus books to read so I can improve myself for the better while I await trial. Plus some Legal books so I can learn about the law all soft cover. These will be sent to me by the publisher straight to me. Please, approve for all or just some. I will pay you need not. Thanks

Russ Fowler

Inmate's Signature          Date Signed  **9/9/99**

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

----

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Completed By:_____ CCN_____ Date:_____ Time:_____

All requests will be handled by the responding deputy in one of the following ways:

Written Information                    Personal Interview

All grievances will be responded to, in writing, by the Office of Information

BSO DJ#24 (Rev. 4/93)

nce as is intered to me I have removed this
scribbling. Please allow me to have books
He publidon and/or corespondence copies as well.

_____
Date Signed    10/8/99

...ED THE ...IGINAL (WHITE) FORM.
... TO THE GRIEVANCE BOX LOCATED IN EACH POD.

TO ... BY THE OFFICE OF INFORMATION AND ...
PART B - RESPONSE

See attached

_____
Reviewing Deputy's Signature/CCN                    Date

_____
Supervisor's Signature/CCN                          Date

TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I   Ross Lawson                      , wish to appeal the response.

Inmate's Signature   attached was the Inmate Handbook   10/12/99
                                                         Date Signed
WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

DIRECTOR'S RESPONSE TO APPEAL

# BROWARD SHERIFF'S OFFICE

# DEPARTMENT OF CORRECTIONS
# &
# REHABILITATION



# INMATE HANDBOOK



Please See Pgs 2 & 8.

**September 01, 1997**

of Corrections and Rehabilitation. Our staff is responsible for your care and safety during the time you are in jail. To assist the staff and yourself, please read this **Inmate Handbook** and follow the rules and regulations. By reading the Handbook you will understand what you can expect, and what is expected of you. All your rights and responsibilities are explained in the Handbook.

This Handbook **must remain** in your possession during the time you are in jail. If you do not understand the information in this Handbook, ask our staff for help. Your safety depends on you following all the rules and obeying the staff.

This Handbook, also has information about programs and services available to you while in jail. If you have any questions about medical issues, attending any of the programs, subsistence fees, or charges/issues that brought you to jail, ask your Housing Deputy, or Correctional Counselor.

**GENERAL INFORMATION :** When you were booked into this Facility, an arrest number was assigned to you. This number will identify you for as long as you are in jail. It is your responsibility to learn your arrest number. It will help us and you identify and locate your personal property and any charges/issues that are of importance to you.

You will remain in one of our facilities until you post bond, your case is disposed of by the judge, or your sentence is completed.

Misdemeanor and traffic cases are heard in County Court, felony cases are heard in Circuit Court, and if you are here on a civil hold. that case will be heard by a Civil Court Judge.

If you are sentenced to serve one year or less, you will serve your sentence in one of our jail facilities. If your sentence is more than one year, you will be transferred to the State Department of Corrections.

**MAIL:** Incoming mail must **have your** name under which you were arrested, arrest number, housing location and the address of the facility in which you are housed. The addresses of each Facility are listed below. All mail **(except legal mail)** will be opened and inspected for contraband before it is delivered to you. Legal mail will not be opened until you are present. Mail containing obscene pictures/material will be returned to the sender. ~~████████████████~~. Each inmate may retain a total of four **(4)** articles of reading material in their cell. (Dictionary, religious text approved by the Chaplain and other prior approved program books are not included in this total.) Court clothes and specific items such as eye glasses, hearing aides. etc. may be accepted by mail if prior approval is obtained through the **Property Unit**. Mail to be sent out is to be addressed on a stamped envelope. Mail cannot be sent to another correctional facility.

The locations and mailing addresses of our corrections facilities are listed below.

| **ACTUAL LOCATION:** | **MAILING ADDRESS:** |
|---|---|
| Main Jail Bureau | Main Jail Bureau |
| 555 SE 1st Ave. | P.O. Box 9356 |
| Ft. Lauderdale, Florida 33301 | Fort Lauderdale, Florida  33310 |
| | |
| Division of Community Corrections | Division. of Community Corrections |
| 5400 NW 9th Ave | P.O. Box 407065 |
| Fort Lauderdale, Florida  33309 | Ft. Lauderdale, FL 33340 |
| | |
| North Broward Bureau | North Broward Bureau |
| 1550 North Blount Road | P.O. Box 407037 |
| Pompano Beach Florida  33069 | Ft. Lauderdale, Florida 33340 |

2

**SUBSISTENCE FEES:** Inmates booked into the Broward County jail system will be charged a $10.00 fee to cover the cost of processing. Inmates will also be assessed a $2.00 a day subsistence fee. This fee will be automatically deducted each day from your commissary account.

If an inmate is **indigent** at the time the fees are to be deducted ($10.00 one-time per incarceration and $2.00 daily), the account will be debited for the amount due. The fees will be collected as money is deposited into the inmates escrow account.

**TELEPHONE PRIVILEGES:** Each unit has telephones available for your use. At the time of booking, telephone calls are free except for long distance calls which are collect. In each housing area/unit, **all** telephone calls will be **limited to thirty (30) minutes** or less per session as determined by the Facility Administrator and will be made as collect calls. Telephones will be turned off during facility lockdown, headcounts, cleaning times, and during meal times. Public Defenders' telephone numbers and some other service numbers are free calls. The telephone is a privilege offered to the inmates while in jail, and if this privilege is abused, it will be restricted.

## FREE PHONE NUMBERS:

| | |
|---|---|
| **Public Defender** | 831-8650 |
| Juvenile Division | 831-8557 |
| | 831-6773 |
| | 831-6774 |
| **Complaint Division** | 831-6768 |
| **Misdemeanor Division** | 831-8690 |
| | 831-8691 |
| | 831-8693 |
| Intake Division (Call this number if you have not been assigned a Public Defender) | 831-8831 |
| **Chris Cloney (Class Attorney)** | 523-5993 |
| **Clerk's Office** | |
| Felony | 831-5519 |
| **BARC (Alcohol/Drug Treatment )** | 765-4200 |
| **Crime Stoppers (TIPS)** | 493-8477 |
| **Crisis Line/Substance Abuse Hotline** | 467-6333 |
| **Spectrum (TASC)** | 563-6413 |
| **Support Enforcement** | 765-5000 |
| **Probation (Misdemeanor and Traffic)** | |
| Central | 765-5021 |
| North | 831-1280 |
| South (Not available from North Broward) | 831-0490 |
| West | 831-2300 |

**BULLETIN BOARD INFORMATION:** Each housing unit/area has a bulletin board displaying the activities scheduled for that housing area/unit.

**COMMISSARY & MONEY:** If you had money in your possession when you were booked, an account was started for your use. You were given a receipt for the funds deposited into your account. All other money to be deposited into your account must come through the mail as a **money order** addressed to you with your full name and arrest number. Money orders will be deposited into your account and you will receive a receipt. You will be allowed to use this money to pay for purchases at the commissary on a weekly basis. Tell your friends and relatives not to send cash or checks by mail. Please refer to the activities schedule to see which day your orders must be collected and which day your order will be delivered. Commissary is a privilege and if this **privilege is abused**, it will be restricted. You may also use the money in your account to bond yourself out of jail or you may voucher it out to anyone you choose. You can get vouchers from the housing deputy.

**CONTRABAND AND SEARCHES:** You and your housing area/unit are subject to search at **any time** for security and sanitation reasons. Items **not issued** by the jail, excessive amount of items, purchased through commissary, or listed as in-cell allowable are considered contraband and will be confiscated. If contraband is found in your possession or in your cell, criminal charges and/or in-house disciplinary action may be taken against you.

**CODE OF CONDUCT:** The following rules and regulations govern inmate conduct and discipline while in BSO corrections facilities. Failure to abide by these rules can result in disciplinary measures.

**Any violations in the "A" category listed below may result in up to thirty (30) days of disciplinary segregation, up to thirty (30) days of room restriction, and/or loss of partial or all earned gain time if you are found guilty.**

- A-1.   Assault or battery or attempted Assault or battery with a deadly weapon.
- A-2.   Fighting with another person.
- A-3.   Threatening another with bodily harm, spoken or written, any offense against their person or their property.
- A-4.   Refusing to obey an order of any staff member.
- A-5.   Conduct which disrupts or interferes with the security or orderly running of the institution.
- A-6.   Extortion, blackmail, protection, demanding or receiving money or anything of value in return for protection against others to avoid bodily harm, or under threat of informing.
- A-7.   Engaging in sexual acts with others, sexual battery or attempted sexual battery.
- A-8.   Failing to stand count or interfering with the taking of count.
- A-9.   Escape, attempting, planning escape or possession of escape paraphernalia.
- A-10.  Wearing a disguise or mask for the purpose of evading detection or escape.
- A-11.  Setting a fire or attempting to set a fire.
- A-12.  Destroying, altering or damaging government property or the property of another person valued at over $300.00 dollars.
- A-13.  Tampering with or blocking any locking device or any security device (e.g., cameras, windows, etc.).
- A-14.  Purposeful contamination of any food or drink.
- A-15.  Possession or introduction of any explosive, ammunition, firearm or weapon.
- A-16.  Possession of any unauthorized articles that pose a serious threat to the security of the institution (e.g. intoxicating beverages, drugs, firearms/weapons, poisons, caustic or toxic materials, inhalants).
- A-17.  Use, possession, manufacture, or sale of drugs, narcotics, or medication not prescribed by facility personnel or of intoxicants; use or possession of authorized medication contrary to prescriptions; being under the influence of any intoxicant.
- A-18.  Participation in or encouraging others to riot, strike, commit a mutinous act or major disturbance whether in writing or orally.
- A-19.  Engaging in, or encouraging a group demonstration.
- A-20.  Encouraging others to refuse to work or participation in work stoppage.
- A-21.  Counterfeiting, forging, or unauthorized reproduction of any document, article, or identification, money, security, or official paper.
- A-22.  Unauthorized use of mail or telephone for the purpose of engaging in criminal activity as defined in state statutes.
- A-23.  Giving or offering any official or staff member a bribe, or anything of value.
- A-24.  Extorting money or anything of value, or accepting money or anything of value from, or on behalf of, another inmate, a member of their family, a friend or an associate.

**Any violations in the "B" category listed below may result in up to fourteen (14) days of disciplinary segregation, up to fourteen (14) days of room restriction &/or loss of up to 30 days gain time if you are found guilty.**

- B-1.   Making sexual proposals or threats toward another.
- B-2.   Obscene act (indecent exposure). Obscene act either by gesture, written or oral.
- B-3.   Destroying, altering or damaging government property or the property of another person valued under $299.00 dollars.
- B-4.   Stealing (theft).
- B-5.   Possession of article(s) prohibited when excessive or altered (e.g., excess or altered clothing, linen, money, etc.).

4

B-6. Loaning of property or anything of value to an inmate not issued through regular institutional channels.

B-7. Mutilating or altering issued clothing, bedding, linen or mattresses or other issued articles.

B-8. Refusing to work.

B-9. Unexcused absence from work, or any assignment.

B-10. Failing to perform work as instructed by a supervisor.

B-11. Participating in an unauthorized meeting or gathering.

B-12. Being in an unauthorized area.

B-13. Failure to follow safety or sanitation regulations.

B-14. Smoking or possession or use of any tobacco products where prohibited.

B-15. Using abusive or obscene language towards another person.

B-16. Gambling, preparing or conducting a gambling pool, possession of gambling paraphernalia.

B-17. Being unsanitary or untidy, failing to keep one's quarters in accordance with posted standards.

B-18. Tattooing self or others.

B-19. Self mutilation.

B-20. Unauthorized contacts with the public or with individuals on behalf of another inmate.

B-21. Disobeying facility regulations.

**DISCIPLINARY APPEAL PROCESS:** Once your disciplinary hearing is over you will be told if you have been found guilty or not guilty. If guilty, you will be given the reason for the finding. If you are found guilty, the committee chairperson will advise you of the right to appeal by using the **Inmate Request Form**. You **must** submit the Form within fifteen **(15)** days of the hearing to the Facility Administrator's office. The Facility Administrator, or designee, will approve, disapprove or modify downward the decision of the Disciplinary Committee. You will be informed of the Facility Administrator's decision in writing within five **(5)** days of receiving your appeal.

**GRIEVANCES:** Should you have a complaint concerning a facility operations, procedure, or staff, you should follow this procedure for resolution.

1. Speak first with your Housing Deputy or Correctional Counselor. If they **can not** resolve the complaint,

2. Verbally ask to talk with the Unit Sergeant, or the Officer-in-Charge (OIC).

3. If the Unit Sergeant, or OIC, is unable to resolve your complaint, you may file an **Inmate Grievance Form**, by requesting the Form.

4. Fill out the **Inmate Grievance Form**, tear off the top sheet **(white copy)** and keep it as your record. Place the rest of the Form in the special mail box provided.

5. The **Inmate Grievance Form** is forwarded to the Facility Administrator's office where your complaint will be investigated. You will receive a response in writing within twenty **(20)** business days from the date the Facility Administrator's office receives your complaint.

6. If you are not satisfied with the response, you may appeal to the Administrator by filling out the appropriate section of the Form, and placing it in the special mail box. You will receive a final response within twenty **(20)** business days. If the Administrator is unable to satisfactorily answer your grievance within the twenty **(20)** business days. a reason why will be given in writing to you within the twenty **(20)** business days. The Administrator will respond within thirty **(30)** business days from the Administrator's receipt of the grievance. Remember, no one always gets the answer that they want all the time. Problems cannot always be resolved immediately nor can staff respond instantly when an issue occurs.

7 The following matters are **not grievable** - classification status, disciplinary action, and housing assignments. If you have concerns regarding these issues you must go through the appeals process by submitting an **Inmate Request Form. [SEE DISCIPLINARY APPEAL PROCESS and CLASSIFICATION sections]**

8 When an inmate is released and has a grievance issue that is in progress, he/she can contact the Facility Administrator's office of the respective facility for resolution.

**CLASSIFICATION:** During your stay you may be moved several times to various housing locations that benefit you or our jail system. There are no guarantees - your housing assignment (unit/area) may change and when you are advised to move by the Deputy you must comply with their order. To refuse to follow a Deputy's order may result in a Disciplinary Report. If you have a problem with your move, you can submit an **Inmate Request Form** to Classification after you have arrived at your new location. The request will be responded to in a timely fashion. Your classification status is **not** a grievable issue.

## VISITATION:

1. The visiting schedule is posted on the bulletin board in your housing area/unit, telling you what day and times you can have visitors.

2. You will be given an opportunity for two **(2)** hours of visitation per week. You will be allowed a maximum of two (2) visitors during your two **(2)** hours visitation.

3. It is your responsible to notify your family and friends to coordinate their visits. You will be allowed to visit **only** one time, so make sure that your visitors arrive here at the same time. Anyone who arrives after the visit has started will not be admitted.

4. Your children must be accompanied by an adult and be able to **prove** that they are their parent.

5. You will **only** be taken from the housing area/unit one time for visitation. If you violate any visitation rules, your visitation may be stopped.

**RULES FOR VISITORS:** Please notify your visitors of the following rules:
- The facility will not accept responsibility for personal property belonging to any visitor.
- Visitors must have proper/current photo identification. **(NO IDENTIFICATION - NO VISIT)**
- Visitors must arrive together and during the official facility visitation schedule.
- Visitors must dress conservatively. Shoulder to waist **must be** covered with non-transparent clothing. Short shorts, mini skirts or short dresses **are not** acceptable attire.
- Visitors may be searched.
- Children must be accompanied by an adult and supervised at all times.
- Visitors cannot be on parole, probation or work release without the written permission of the Facility Administrator.
- Visitors can only visit one person per day.
- Obscene actions or gestures will terminate the visit.
- Visitors are **NOT** permitted to pass/give any items to an inmate. **(Subject to arrest)**

Please notify your visitors that transportation is available by county buses, downtown trollies, or taxies. They should contact the bus stations for route information.

**PERSONAL PROPERTY:** (In-Cell Allowable): Personal items you may keep in your cell are listed in the In-Cell Allowable List posted in your housing area. Failure to obey In-Cell Allowable List guidelines may result in disciplinary action.

**PERSONAL CLOTHING:** Court Clothes will be accepted before your Jury Trial. You must submit an **Inmate Request Form** to the Property Unit (Court Clothes) when you are scheduled for trial. Inmates who are scheduled for a jury trial may have court clothes brought in from outside the facility after receiving prior approval from the Property Unit. No more than two sets of court clothes are allowed on the premises at one time. Sneakers will **not** be accepted. During Alpha Shift on the morning of your court appearance the Housing Deputy should be notified that court clothes will be required for that day. Clothing can not be borrowed or exchanged. Personal clothing cannot be worn accept for the time you are in court for a jury trial. Violation of this rule may result in disciplinary action.

**LAUNDRY SERVICES:** You are supplied with a clean bed roll and uniform **once** you are assigned a housing location. (Bed roll - sheets, pillow case, towels, a blanket, uniform - long pants, shirt, and when applicable, county issued underwear) Once **(1)** each week your linen is collected and a clean bed roll will be issued. Uniforms and issued underwear will be laundered two **(2)** times a week. Personal clothing items will be laundered once **(1)** each week. Other county issued items will be laundered according to the Facility Administrator's schedule. The times and days are noted on the bulletin board in your area/unit. You **may not** keep extra linen or uniforms in your living quarters.

V-060 HEALTHCARE SERVICES No inmate will be denied medical, mental health and dental care while in custody. Pa
Qualified health care professionals are available to provide medical care, mental health care and dental care in all BSO
facilities.

You will be medically screened by a nurse during the intake process. It is in your best interest to cooperate with the nurse by giving complete and accurate information regarding your medical history.

Within the first two (2) weeks of incarceration, you will be brought to the clinic for a routine health assessment. Again, it is in your best interest to cooperate with the nurse by giving complete and accurate information regarding your initial medical screening or the routine health assessment.

You may access health care services any day by submitting an **Inmate Medical Request Form** to the nurse. These are available from the nurse who makes daily medication rounds in all housing areas/units.

There is a fee schedule for various services posted in your housing area/unit. If you have money in your account, the cost will be deducted from your account. If you have less than $1.00 the fee will be charged to your account and will be deducted later when funds become available in your account. You will receive medical, mental health and dental care whether or not you can pay.

Your initial medical/dental screening assessments are free as well as certain other situations which are described and posted in your housing area/unit. Over the counter medication, including pain relievers, are available through commissary.

Upon your release, if you are taking medication, your medication, as determined by the Medical Care Provider will be given to you upon your release.

**AIDS/HIV:** Information is available, upon your request, from medical personnel or your Corrections Counselor.

**PERSONAL CLEANLINESS (Care of Living Quarters):** You must bathe at least twice per week and practice good grooming and hygiene habits. You must keep your area/unit clean and share in the cleaning assignments of your housing area/unit.

**BARBER SERVICES:** Hair care services are available to all inmates. The hair care services will be conducted in accordance with the schedule. You can receive your first haircut thirty **(30)** days after your initial incarceration and approximately every thirty **(30)** days thereafter. The thirty **(30)** day rule may be waived for medical reasons, hygiene reasons, or for inmates scheduled to appear in court. If needed, haircuts for inmates appearing as a **defendant** will be given a haircut within three **(3)** days of their appearance. You are responsible for signing up for hair care services according to the schedule.

**RELIGIOUS SERVICES:** Religious services are offered more than once a week for most housing areas/unit. Refer to your schedule to see when they are available to you. Most services are non-denominational. Items such as radios, playing cards or books are **not permitted** at the services. If you want a religious book to be brought into the jail, submit an **Inmate Request Form** to the Chaplain.

**RECREATION:** The schedule for indoor recreation and outdoor recreation **(weather permitting)** is posted on the bulletin board in your housing area/unit. Sign up for recreation on the sign up sheets provided. You will not be permitted to attend recreation unless you sign up for it. You need to be **quiet and orderly** as you are escorted to the recreation areas.

**CORRECTIONAL COUNSELORS:** Correctional counselors answer questions about the legal status of your case. They will also help you with visitation, mail, property, drug programs and life skills programs. They visit the areas/units on a daily basis, but can also be reached by using an **Inmate Request Form**.

**N.A./A.A./C.A. AND VETERANS PROGRAMS:** These voluntary services are **provided in most** areas/units of the jail. Please refer to the schedule posted on the bulletin board in your housing area/unit. Submit an **Inmate Request Form** to the Correctional Counselors office in order to attend any of these services. Recreational items such as radios, playing cards or leisure books are not permitted at these services.

**SCHOOL PROGRAMS:** School teachers are available to most housing areas/units for inmates who desire to work on their A.B.A. or G.E.D. If you wish to be tested and/or attend classes, fill out an **Inmate Request Form** and forward it to the school teachers office requesting these programs. To be placed into a school housing area/unit, you will be required to follow additional rules that do not apply to inmates in general population. The School Program also offers Art/Computer and Life Skills classes to those inmates that qualify. Use the **Inmate Request Form** and forward it to the school teachers office to ask to be included in one of these special classes.

**LAW LIBRARY**:  The Law Library is available for your use as shown on the schedule posted in your housing area/unit. Space is limited in the law library, so only go there if you need to do legal research, typing or copying. Recreational items such as radio's, cards, or leisure books are not allowed in the law library. Sign up on the day that the law library is scheduled. Material in the Law Library can be copied, but all copied material must remain in the Law Library.

A reading library containing general reading material is available to all inmates by way of a cart of books brought to your housing area/unit on a regular basis.

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

### DIRECTORY OF SERVICES AVAILABLE UPON RELEASE:

#### Shelter:

**Covenant House**
Emergency/temporary shelter & crisis intervention for people under 21, with or without infants;
24-hour intake. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 561-5559
733 Breakers Avenue, Fort Lauderdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 561-5559
**Faith Farm**
Live-in alcohol/drug rehabilitation and work program for men over 17 years of age; 24-hour intake, minimum 90-day program
1980 NW 9th Avenue, Fort Lauderdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 763-7787
**The Lippman Family Center**
Emergency/temporary shelter for youth under 18 years of age; 24-hour intake.
221 NW 43 Court, Oakland Park . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 568-2801
**Salvation Army**
Emergency/temporary shelter for men, women, families
1445 West Broward Boulevard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 463-4572
**Women in Distress**
Emergency shelter for women and children; 24-hour intake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 761-1133

#### Substance Abuse Services :

**Alcoholics Anonymous** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 462-0265
12 Step Club House/12 Pasos Club
205 SW 23rd Street, Fort Lauderdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 523-4984
101 CLUB
720 SW 10th Street, Pompano Beach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 941-9896
**Broward County Alcohol & Drug Abuse**
24-hour intake for inpatient/outpatient alcohol/drug abuse treatment/counseling
1011 SW 2nd Court, Fort Lauderdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 765-4200
**Crisis Line (24 hours)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 467-6333
**Narcotics Anonymous** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 476-9297
**Nar-Anon Help Line** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 584-6578
**Substance Abuse Hotline** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 467-6333



£

**Broward County Primary Health**
Medical and dental care, medications, referrals
900 NW 31st Avenue, Fort Lauderdale ................................................................ 327-2100
**Center One (HIV/AIDS)**
2518 W. Oakland Park Blvd., Suite 111, Fort Lauderdale .................................... 537-4111
**Henderson Mental Health Center**
Mental health counseling and treatment
330 SW 27th Avenue, Fort Lauderdale ............................................................... 791-4300
**Nova Mental Health Center**
Mental health counseling and treatment
3111 University Drive, #307, Coral Springs ......................................................... 753-7020
3301 College Avenue, Davie ............................................................................ 262-5730
4800 North State Road 7, Suite F, Lauderdale Lakes ......................................... 486-3663

## Food:

**St. Lawrence Chapel**
101 NE 1st Street, Pompano Beach, Fl. 33060 .................................................... 785-8510
**South Beach Park**
One (1) block north of the Yankee Clipper Hotel on A1A in Fort Lauderdale
**Calvary Church of God in Christ**
744 NW 12th Avenue, Fort Lauderdale
**Lutheran Co-op Feeding Program**
1405 West Broward Boulevard ........................................................................ 764-8073
**St. John's Episcopal Church**
1704 Buchanan Street, Hollywood (10 am to 1 pm except Tues., Sat., & Sun.) ................... 927-9161

## Veterans:

**Multi-Purpose Center**
1532 NE 4th Avenue, Fort Lauderdale ............................................................... 771-1092
**Vet Center**
315 NE 3rd Avenue, Fort Lauderdale ................................................................ 356-7926

## Jobs:

**Broward Employment & Training Administration**
330 N. Andrews Avenue, Fort Lauderdale ........................................................... 765-4505
**Department of Labor**
2600 Oakland Park Boulevard, Fort Lauderdale .................................................. 730-2600
1301 W. Copans Road, Building D, Pompano ..................................................... 969-3541
4205 Hollywood Boulevard, Hollywood ............................................................. 985-4750

**Vo-Tech Programs:** BETA has a program called the **Offender's Program**. You can take courses at a Vo- Tech school at no cost. It is fully funded through the BETA Program grant money. Upon release, report to a BETA office at one of the Vo-Tech schools.
**Atlantic Vocational Center**
Fill out an application for acceptance and admittance.
4700 Coconut Creek Parkway, Coconut Creek. ................................................. 977-2000
**Sheridan Vocational Technical Center**
5400 Sheridan Street, Hollywood ..................................................................... 985-3220



Able Bail Bonds

Action Bail Bonds

All American, All Florida Bonding

All Hour Bail Bonds, Inc.

Ammediate Bail Bonds

Atlas Bail Bonds

A-1-A Bonding

A-1 Bonding ........................................................................... 467-____

........................................................................... 467-____

Begal Bail Bonds ...........................................................................

Bill Daily Bonding ........................................................................... 764-4636

Bill Sheppard Bail Bonds ........................................................................... 922-3600

Brandy Bail Bonds ........................................................................... 463-6666

B & S Bail Bonds ........................................................................... 463-4333

........................................................................... 522-7779

Dave Stern Bail Bonds ...........................................................................

Dick's Bail Bonds ........................................................................... 961-2334

Dolphin Bail Bonds ........................................................................... 946-3535

........................................................................... 523-4559

Easy Out Bail Bonds ........................................................................... 966-4000

Franklin Bail Bonds ........................................................................... 581-2915

Gilbert Bail Bonds ........................................................................... 462-3331

Johnson Bail Bonds ........................................................................... 922-5047

Mincey Bonding ........................................................................... 462-3641

O'Connell Bail Bonds ........................................................................... 467-1505

If you haven't asked the housing unit deputy to solve this problem, do so before completing
this request.

## TO BE COMPLETED BY INMATE

Date of Request: __10/13/99__   Inmate's Name: __Ross Lawson__
(Alias, if used)

Arrest #: __FL97-9905__   Location: __7/B/2__   DOB: __3/10/72__

To: Library Coordinator

| Program Specialist ☐ | Mailroom ☐ | Commissary ☐ |
| Classification ☐ | Food Service ☐ | Other ☑ |

Nature of Request: _According to 5.5.1(Comprehensive library services)(5) I_
_must request on this form to have magazines, Books, or periodicals sent_
_to me that are unavailable in the inmate(Leisure Library). I am requesting_
_to have approval at my cost or yours to have these brought or_
_sent in to me (publisher) or other from an outside source. Please_
_approve so I may have books, magazines. eclect. soon of my choice._

__Ross Lawson__                           __10/13/99__
Inmate's Signature                          Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.
----------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Completed By:_____ CC:_____ Date:_____ Time_____

All requests will be handled by the responding deputy in one of the following ways.

Written Information                    Personal Interview

All grievances will be responded to in writing within the time frame format.

BSO DJ#24 (Rev. 1.9)

DEPARTMENT OF CORRECTIONS A
INMATE REQUEST

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

TO BE COMPLETED BY INMATE

Date of Request: 10/13/99          Inmate's Name: Ross Lawson
                                                  (Alias, if used)

Arrest #: FL97-9905               Location: 9C-2-4 DOB: 3/10/72

To: Library Coordinator

Program Specialist ☐     Mailroom ☐          Commissary ☐
Classification ☐          Food Service ☐      Other ☑

Nature of Request: According to 5.5.1 (Comprehensive library services)(5) I must request on this form to have magazines, Books, or periodicals sent to me that are unavailable in the inmate (Leisure Library). I am requesting to have approval at my cost or yours to have these brought or sent in to me (publisher) or other from an outside source. Please approve so I may have books, magazines, ect ect soon of my choice

_Ross Lawson_                              10/13/99
Inmate's Signature                         Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

This rule is no longer valid. No books, magazines, or periodicals, of any kind. The only reading material allowed, must be found on the inmate library cart. (See inmate handbook.)

Completed By: _Johnson_     CCN_____     Date: 11-8-99     Time:

All requests will be handled by the responding deputy in one of the following ways

        Written Information                    Personal Interview

All grievances will be responded

FSO DJ#24 (Rev 3 9)

On 10/1... ...Mail Notification) informing me of (...E...
E mail is... a letter typed from one computer to another
and can b... ...on normal paper. This was a letter to a
friend of mine sent to me (violating my constitutional right
by not allowing me to have it and sending it back to sender)
Why is this being done, correct this problem ASAP and exp.

Ross Laura

_____
Inmate's Signature

10/29/99
Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B - RESPONSE**

_____
Reviewing Deputy's Signature/CCN

Date

_____
Supervisor's Signature/CCN

Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
wish to appeal the response

_____
Inmate's Signature

Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD**

**DIRECTOR'S RESPONSE TO APPEAL**

_____
Director's Signature
BSO ... Revised 4 9

17th Judicial Circuit in and for Broward County
In the County Court in and for Broward County

DIVISION:
[X] CRIMINAL
[ ] TRAFFIC
[ ] OTHER

**ORDER**

THE STATE OF FLORIDA VS. _Ross Lawson_

PLAINTIFF                    DEFENDANT

CASE NUMBER

_97-1390TC_

CHARGE _Burglary (Dwelling / Battery)_
_Carjacking_
_all other cases_

The court hereby recommends that
the defendant, Ross Lawson, be given
access to the law library at the
Broward County Jail for a minimum of
seventeen (17) hours per week.

DONE AND ORDERED THIS ___23___ DAY OF ___Jan___, 19 _98_

BROWARD COUNTY, FLORIDA

cc: Class
Case work
1st Flr. Sgt.

JUDGE

COPIES:    BSO  -  SAO

FORM #CC-252
REVISED 10/90

Law Library Schedule:

Lawson, Ross
FL97-9905

| | | | |
|---|---|---|---|
| MONDAY | 0730-1145 | | Four (4) Hours |
| TUESDAY | 0730-1145 AND 1230-1430 | | Six (6) Hours |
| WEDNESDAY | 1230-1430 | | Two (2) Hours |
| THURSDAY | 0730-1145 AND 1230-1430 | | Six (6) Hours |

TOTAL    (18) HRS

cc: Supt. W. Roberts
    Asst. Supt. W. Robinson
    Lt. McPherson
    Lt. Garrison
    Sgt. Bellavance
    6TH Floor Sgt.
    Program Deputy

LWSON 0000077

## AFFIDAVIT OF ROSS JAY LAWSON

The undersigned affiant, ROSS JAY LAWSON, after being duly sworn, deposes and states the following:

1.     My name is ROSS JAY LAWSON, and I am over the age of (18) and otherwise sui juris

2.     I make this Affidavit based on my personal knowledge of the contents hereof.

3.     I was arrested on July 17, 1997, and booked into the Broward County Jail on the same day.

4.     To date I have been housed in the custody of the Broward County Department Of Corrections And Rehabilitation, and I have been a non-convicted pretrial detainee throughout my stay at such.

5.     The Broward County Sheriffs Office runs and operates the B.C.D.O.C.A.R.

6.     I have been punished and acts of reprisal committed against me for filing/attempting to file this action.

7.     Some of the punishments/acts of reprisal in which I had to endure by the Defendants are but are not limited to: (1) being place in a high custody level cell; (2) being denied access to the jail's law library; and (3) having my legal papers, documents, pleadings for this action, etc. confiscated and not returned/destroyed.

8.     The Defendants named in this action did not apply the ban on publications equally to all housed at the jail from my date of arrest until 3/20/99.

9.     Since my stay at the Broward County Jail, there has been a ban on publications which denied inmates and myself from receiving publication from outside sources.

10.    While housed in the Broward County Jail I have had publications sent to me and denied by the B.C.D.O.C.A.R.

11.    I am Jewish by birth and practice Judiasm, not Christianity.

12.    I have filed this action in good faith, and every aspect of this action in good faith as well.

RESPECTFULLY SUBMITTED,

ROSS JAY LAWSON F1-979905
P.O. BOX 9356
Fort Lauderdale, FL. 33310

**UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY (28 USCS §1746)**

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2000

BY _Ross Jay Lawson_

RE: LETTER TO INFORM OF CONSTITUTIONAL RIGHTS / HOW RIGHTS ARE BEING VIOLATED / THIS LETTER IS TO GIVE YOU NOTICE OF MY CONSTITUTIONAL RIGHTS TO ACCESS TO THE COURTS, ACCESS TO THE LAW LIBRARY TO HAVE ACCESS TO THE COURTS, AND RULES AND REGULATIONS TO THE COURT ARE FOUND IN THE LAW LIBRARY. THIS LETTER IS TO ADVISE YOU THAT YOU ARE VIOLATING MY RIGHTS. YOU WILL NO LONGER BE ABLE TO CLAIM ADMINISTRATIVE IMMUNITY. THIS LETTER IS TO INFORM YOU THAT IF YOU DO NOT UNDERSTAND THIS YOU SHOULD CONTACT YOUR ATTORNEY AND HAVE HIM ADVISE YOU THAT YOU WILL BE LIABLE NOW THAT YOU HAVE BEEN NOTIFIED OF MY RIGHTS, IF YOU CONTINUE TO VIOLATE THESE STATED IN THIS LETTER. NOTE: BOUNDS VS. SMITH 430 US 817, 828 (1977) AND HOOTEN VS. JENNE, 786 F2d 692, 696 (5th Cir 1986).

PLEASE BE ADVISED I have a court order granting me a minimum of 17 hours per week in the law library. This was followed for more then one year, and only after I filed sui against this jail did my law library time and court order become void in your eyes. The reasons I need this access to the law library are as follows,

1)Conflict with lawyer resulting in pro se motions.

2)Brevity of confinement 19 cases probable length of incarceration, already two years at least two more to go in the B.C.M.J.

3)Pending civil suit for civil damages filed pro se.

4)Pending civil rights lawsuit filed pro se.

NOTE YOU ARE VIOLATING MY RIGHTS AND ARE SUBJECT TO BE SUED
PLEASE GET INFORMED AND CORRECT YOUR ERROR AND HONOR MY COURT ORDER
OR I WILL BE FORCED TO FILE SUIT HOLDING YOU RESPONSIBLE FOR YOUR ACTIONS

CC Sgt. Adams
Deputy Wilcox
Director Patrick Tighe
Superintendent Hitchcock

ROSS JAY LAWSON FL97-9905
P.O. BOX 9356
FtLaud, Fla. 33310

74

**INMATE**                                                      **99-198**

**CORRESPONDENCE**

| | |
|---|---|
| **to:** | **Lieutenants W. McPherson and Bechard,** <br> **Main Jail, Bravo Shift** |
| **from:** | **William Hitchcock, Superintendent** <br> **Main Jail Southern Operations / Department of Detention** |
| **subject:** | **Inmate Lawson, Ross F197-9905 (7-C-3)** <br> **Law Library Access** |
| **date:** | **July 2, 1999** |

The Subject inmate has a Court Order (see attached) that grants him access to the Law Library on a 17 hour a week basis. He currently has a total of 46 charges against him according to the Classification Staff who researched his files. Only a very few have been concluded in any form. See that Inmate Lawson receives the weekly 17 hour Law Library access as ordered by Judge Lebow on January 23, 1998. If you have time constraints you can not deal with, work with the Charlie shift to get him more access. Let me know if there are any other problems.

CC:    Inmate Ross Lawson , 7-C-3
       File

v-06009-WPD   Document 34   Entered on FLSD Docket 12/04/2000   Pa

In 17th Judicial Circuit in and for Broward County
[ ] In the County Court in and for Broward County

DIVISION:
[X] CRIMINAL
[ ] TRAFFIC
[ ] OTHER

ORDER

THE STATE OF FLORIDA VS.   Ross Lawson

PLAINTIFF                    DEFENDANT

CASE NUMBER
97-13907C

CHARGE _Burglary (Dwelling / Battery)_
_Carjacking_
_all other cases_

The court hereby recommends that
the defendant, Ross Lawson, be given
access to the law library at the
Broward County Jail for a minimum of
seventeen (17) hours per week.

DONE AND ORDERED THIS ___23___ DAY OF _____, 19 _98_

BROWARD COUNTY, FLORIDA

cc: class
Case wrkr
6th Flr. Sgt.

JUDGE

COPIES:     BSO  -  SAO

FORM #CC-252
REVISED 10/90

RE: LETTER TO INFORM OF CONSTITUTIONAL RIGHTS / HOW RIGHTS ARE BEING VIOLATED / THIS
LETTER IS TO GIVE YOU NOTICE OF MY CONSTITUTIONAL RIGHTS TO ACCESS TO THE COURTS,
ACCESS TO THE LAW LIBRARY TO HAVE ACCESS TO THE COURTS, AND RULES AND REGULATIONS
TO THE COURT ARE FOUND IN THE LAW LIBRARY. THIS LETTER IS TO ADVISE YOU THAT YOU
ARE VIOLATING MY RIGHTS. YOU WILL NO LONGER BE ABLE TO CLAIM ADMINISTRATIVE IMMUNITY.
THIS LETTER IS TO INFORM YOU THAT IF YOU DO NOT UNDERSTAND THIS YOU SHOULD CONTACT
YOUR ATTORNEY AND HAVE HIM ADVISE YOU THAT YOU WILL BE LIABLE NOW THAT YOU HAVE BEEN
NOTIFIED OF MY RIGHTS, IF YOU CONTINUE TO VIOLATE THESE STATED IN THIS LETTER. NOTE:
BOUNDS VS. SMITH 430 US 817, 828 (1977) AND HOOTEN VS. JENNE, 786 F2d 692, 696 (5th
Cir 1986).

PLEASE BE ADVISED I have a court order granting me a minimum of 17 hours per week in
the law library. This was followed for more then one year, and only after I filed suit
against this jail did my law library time and court order become void in your eyes.
The reasons I need this access to the law library are as follows,

1)Conflict with lawyer resulting in pro se motions.

2)Brevity of confinement 19 cases probable length of incarceration, already two years
   at least two more to go in the B.C.M.J.

3)Pending civil suit for civil damages filed pro se.

4)Pending civil rights lawsuit filed pro se.

NOTE YOU ARE VIOLATING MY RIGHTS AND ARE SUBJECT TO BE SUED
PLEASE GET INFORMED AND CORRECT YOUR ERROR AND HONOR MY COURT ORDER
OR I WILL BE FORCED TO FILE SUIT HOLDING YOU RESPONSIBLE FOR YOUR ACTIONS

CC Sgt. Adams
   Deputy Wilcox
   Director Patrick Tighe
   Superintendent Hitchcock

ROSS JAY LAWSON FL97-9905
P.O. BOX 9356
FtLaud, Fla. 33310

**July 22 1999**

Event LIBR-MAIN-4 (1143810) scheduled at 07/22/1999 8:00 - 9:30 occurred at 07/22/1999 8:01 - 07/22/1999 9:37

**July 26 1999**

Event LIBR-MJLL7D (1149824) scheduled at 07/26/1999 9:30 - 10:00 occurred at 07/26/1999 9:59 - 07/26/1999 11:53

**July 28 1999**

Event LIBR-MAIN-4 (1152685) scheduled at 07/28/1999 12:30 - 14:30 occurred at 07/28/1999 12:33 - 07/28/1999 14:34

**July 29 1999**

Event LIBR-MAIN-4 (1152584) scheduled at 07/29/1999 7:30 - 9:30 occurred at 07/29/1999 7:36 - 07/29/1999 9:45

**July 30 1999**

Event VIS-MJ-7C (1154597)   scheduled at 07/30/1999 7:00 - 9:00 occurred at 07/30/1999 8:52 - 07/30/1999 12:22

**August 02 1999**

Event LIBR-MAIN-4 (1160274) scheduled at 08/02/1999 10:00 - 10:30 occurred at 08/02/1999 9:49 - 08/02/1999 11:52

**August 04 1999**

Event LIBR-MAIN-4 (1162698) scheduled at 08/04/1999 11:30 - 12:00 occurred at 08/04/1999 12:38 - 08/04/1999 12:49

**August 11 1999**

Event LIBR-MAIN-4 (1172850) scheduled at 08/11/1999 13:00 - 14:30 occurred at 08/11/1999 12:33 - 08/11/1999 14:30

**August 13 1999**

Unscheduled Event HOUS-UNSCH   occurred at 08/13/1999 10:39 - 08/13/1999 10:40

**August 16 1999**

Event LIBR-MAIN-4 (1176636) scheduled at 08/16/1999 10:00 - 10:30 occurred at 08/16/1999 9:35 - 08/16/1999 11:49

**August 17 1999**

Unscheduled Event LIBR-CT LIB   occurred at 08/17/1999 18:52 - 08/17/1999 22:03

**August 18 1999**

Event LIBR-MJLLCO (1177502) scheduled at 08/18/1999 12:30 - 14:30 occurred at 08/18/1999 12:33 - 08/18/1999 18:20

**August 20 1999**

Event VIS-MJ-7C (1180067)   scheduled at 08/20/1999 7:00 - 8:00 occurred at 08/20/1999 10:05 - 08/20/1999 12:27

**August 23 1999**

Event LIBR-MJLLCO (1178041) scheduled at 08/23/1999 9:30 - 11:30 occurred at 08/23/1999 9:33 - 08/23/1999 10:57

**August 25 1999**

Event LIBR-MJLLCO (1178313) scheduled at 08/25/1999 12:30 - 14:30 occurred at 08/25/1999 12:46 - 08/25/1999 14:22

**August 26 1999**

Event LIBR-MJLL7C (1182382) scheduled at 08/26/1999 7:30 - 9:30 occurred at 08/26/1999 7:39 - 08/26/1999 9:41

**September 01 1999**

Event LIBR-MJLLCO (1184423) scheduled at 09/01/1999 12:30 - 14:30 occurred at 09/01/1999 12:28 - 09/01/1999 14:18

**September 03 1999**

Event LIBR-MJLL7C (1185684) scheduled at 09/03/1999 9:30 - 11:30 occurred at 09/03/1999 9:51 - 09/03/1999 11:44

**September 08 1999**

### September 15 1999

LIBR-MJLLCO (1184364) scheduled at 09/15/1999 12:30 - 14:30 occurred at 09/15/1999 12:34 - 09/15/1999 14:25

### September 29 1999

LIBR-MJLLCO (1184366) scheduled at 09/29/1999 12:30 - 14:30 occurred at 09/29/1999 12:32 - 09/29/1999 14:26

### September 30 1999

LIBR-MAIN-4 (1186313) scheduled at 09/30/1999 7:30 - 9:30 occurred at 09/30/1999 7:38 - 09/30/1999 9:34

### October 01 1999

VIS-MJ-7C (1193469)    scheduled at 10/01/1999 2:30 - 3:00 occurred at 10/01/1999 11:16 --10/01/1999 13:03

### October 05 1999

HOUS-SCHED (1194552)   scheduled at 10/05/1999 21:00 - 22:00 occurred at 10/05/1999 20:29 - 10/05/1999 21:58

## INMATE POSTING SHEET
### REVISED 5-14-1996

INMATE'S NAME: Lawson, Ross     ARREST NUMBER: FL9979905

| DATE | LOCATION | CODE | CCN | DATE | LOCATION | CODE | CCN | DATE | LOCATION | CODE | CCN |
|------|----------|------|-----|------|----------|------|-----|------|----------|------|-----|
| 3-16-99 | 7C-307 | R | 8609 | | | | | | | | |
| 10-5 | 7B2-8-2 | 7 | 7976 | | | | | | | | |
| 1-5 | 6C1-62 | | 5346 | | | | | | | | |
| 11-5 | 7B39-1 | R | 7976 | | | | | | | | |
| 11/6 | 8C2-41 | 4 | 9253 | | | | | | | | |

### SUPPORTING DOCUMENTATION

DATE:     CCN:

| | |
|---|---|
| 5-10-99 | 90 day review, no change next review 8-7-99 |
| 7/24/99 | Responded to I/M request dated 7/1/99 (see attached copy) for debate. |
| | 8098 |
| 10-5 | For non. viol. |
| | 7976 |
| 11-4 | Inmate relocated according to custody level. Forty five day review. Max custody. 31 |
| | 5346 |
| 11-5 | Per higher custody & returning to events location before 4/8, I/M moved to 17B-FL GP. |
| | 7976 |
| 11/6 | I/M now has cust. score of 31 following many DR's for dangerous behavioral/managerial problems including: setting fire, fighting, possession of hazardous items, conducts which disrupts. Relo to Admin. Confinement. |
| | |
| | Corrected reassment & entered in computer - Notified Dep Foster of Relo |
| | 9253 |
| 11/16/99 | Reg. review completed - con to continue in admin. next review 12/23/99. |
| | 7323 |
| 11/18/99 | I/M MGT meeting - I/M has only 3 DR since 97. I/M points need to be adjusted then I/M has had no problem other than wanting to go to law libra. tac. clm. reviewed at next meeting a make a recommendation. |
| | 7713 |

LWSON 0000097

| | | | |
|---|---|---|---|
| LAWSON, ROSS | 57979905 | 10/05/99 | 7C301 |
| Inmate Name | Arrest Number | Today's Date | Present Location |

99 OCT -5  :  :  **8th Floor Disciplinary Movement**

## PLEASE SUBMIT THE DR TO ASSURE INMATE RELOCATION!

___ Inmate DR for Violent/Disruptive behaviors or threatens safety and security of the facility (8th floor B placement)

X Inmate Dr for Non-Violent behaviors or doesn't threaten the safety and security of the facility (8th floor C1 placement)

___ Inmate's DR EXPIRED or was rescinded due to other TECHNICAL VIOLATION

___ Inmate's sentence MITIGATED due to overcrowding - Relocate from DR lockdown

___ TIME SERVED - Relocate to appropriate housing

LIST CURRENT KSF'S:

_____ 10/5/99          _Sgt H Williams 3103_
Deputy Sign/Date                  Sergeant and/or Lieutenant Sign/Date

Classification: _✓_Approved   ___Denied (If Ck'd Document Reasons):

Authorized Signature/Date:___ 7976    10/5/99 _____   New Housing Location:__ 7B 2-8-2 __
===========================================================================
## Programs Inmate Relocation

(Choose One)
Request Entry To ___  OR   Request Relocation From___

___Drug Cell   ___Relapse Prevention   ___School Cell   ___Trusty Status

Reason:   ___Court Ordered   ___Self-Referred or Self-Removed   ___Completed Successfully   ___Failed to Meet Standards

_____   _____   _____
Current location   Requested location   Program Coordinator Sign/Date

Classification Approved___   Classification Denied___ (If Ck'd Document Reasons):

Authorized Signature/Date_____   New Housing Location:_____
===========================================================================
## Other Relocations

___ Medical Relocation (Attach MEDICAL RELEASE authorizing return to inmate housing)

___ Juvenile to Adult Status   ___8th Floor Special Administrative (Fill Out and Attach Segregation Review Form)

Classification Approved___   Classification Denied___ (If Ck'd Document Reasons):

LWSON 0000151

NAME __Lawson, Russ J__

ARREST # __5197 9905__ _____ D.O.B. __3|10|72__ .

H/W __6'0"__ _____ R/S __(W) m__ SMT _____

CHARGES (1) _____

(2) _____

(3) _____

CUSTODY STATUS: __med__ _____ CELL # _____

| DATE | CONTACT MADE WITH DETAINEE ORIENTATION & PLACEMENT BY: | DEPUTY |
|------|---------------------------------------------------------|--------|
| | , uniform was removed. DR for excessive contra band will be written. | LK 569? |
| 10/5/99 | DR was written for violation of A5, A16 and B12. Anyway a 15 days lockdown was garanteed to det lawson after he decided to give me an object that appeared to be a motor + hair clipper in order to reduce his lockdown time. However I told him that his lockdown shall not exceed 15 days. | HJ 6903 |
| 10/5/99 | I/M pkg # 7B209 pee class? and briefed by DEP. Johnson #8017 | JB017 |
| 10/7/99 | DR Comm Tee Found I/M Gui'lTy 30 days Lockdown Lop ReL'11/6/99 | S.L017 |
| 10/31/99 | I/M WORKED OFF (2) DAYS GAIN TIME, NEW RELEASE DATE 11/4/99. | EJ 2568 |
| 11-4-99 | Relo TO 6C 1-6-2 | LV8532 |
| 11-4-99 | Pic + Brieded By Dep Bellinger | CV8047 |
| 11-6-99 | Re Relo. To 7C3-9-1 Per Class | CV8047 |
| 11-6-99 | Relo to 8C204 GO per class | BH 8469 |

LAWSON, Ross _____   FL979905 _____   11/4/99 _____   7820S

_Inmate Name_ _____   _Arrest Number_ _____   _Today's Date_ _____   _Present Loc:_

========================================================================

## 8th Floor Disciplinary Movement and Relocation

___ Inmate DRd for Violent/Disruptive behaviors or threatens safety and security of the facility

___ Inmate DRd for Non-Violent behaviors or doesn't threaten the safety and security of the facility

___ Inmate transfer from North Broward, DOCC or Conti to the Main Jail due to:

Non-Violent DR_____ or Violent DR_____ (All DR paperwork needs to be sent to Main Jail Classifical

Escape Risk:_____ or Other (Give reason):_____

___ Inmate's DR EXPIRED or was rescinded due to other TECHNICAL VIOLATION

___ Inmate's sentence MITIGATED due to overcrowding - Relocate out of DR lockdown and into appropriate housing

_X_ TIME SERVED - Relocate to appropriate housing

LIST ARREST NUMBERS OF CURRENT KSF'S:   FL98 8271   -   FL98 11263   MH 98 0179
FL09727821

L. Leutunc   11-4-99 _____   _____ 11/4/99

_Deputy Sign/Date_ _____   _Sergeant and/or Lieutenant Sign/Date_

Received by Classification Specialist: _____   Date: 11-4-99

New Housing Location:_____
========================================================================

## Inmate Movement and Relocation to Programs

(Choose One)
Request relocation TO a program: ____ OR Request Relocation FROM a program:____

___ Drug Cell   ___ Relapse Prevention   ___ School Cell   ___ Trusty Worker _____
Trusty Coordinator Signature Approval/Da

Reason:   ___ Court Ordered   ___ Self-Referred or Self-Removed   ___ Completed Successfully   ___ Failed to Meet St

_____ to _____
_Current location_ _____   _Requested Program Location_

Received by Classification Specialist:_____ Date_____ New Housing Location:_____
========================================================================

## _"Other" Types of Movements or Relocations_

___ Medical Relocation (Attach MEDICAL RELEASE authorizing return to inmate housing)

___ Juvenile to Adult Status   ___ 8th Floor Special Administrative (Fill Out and Attach Segregation Review Form)

Receiving Classification Specialist: _____ Date _____ New Housing Location _____

LWSON 0000152

**AFFIDAVIT OF SHARON LAWSON**

The undersigned affiant, SHARON LAWSON, after being duly sworn, deposes and states the following:

1.    My name is SHARON LAWSON, and I am over the age of (18), and otherwise sui juris.

2.    I make this affidavit based on my personal knowledge of the contents hereof.

3.    I am the Mother of ROSS JAY LAWSON.

4.    I am aware of, and willing to testify about how the jail's staff has harassed my son, do to my son filing suit on them for violating his rights.

5.    I have personally called the jail's staff, classification, administration concerning my son being harassed, and to have my son moved to other units for his well being.

6.    I have first hand had to deal with the jail's acts of revenge and harassment of both me and my son do to my son filing suit against the jail.

7.    I have had sent/and sent publications to my son, and the jail has refused to allow my son to have them.

8.    I have spoken to the jail's administration concerning many issues, many of which were acts of reprisal committed against my son in the fashion of revenge.

9.    On 11/4/99 my son informed me that Deputies had searched his property after leaving confinement and found a set of pleading that he had drafted on the jail's ban on publications, naming Superintendent William Hitchcock as a Defendant. My son was harassed over this and I called classification and spoke with them, as they assured me after reviewing my sons file that he would be moved to the unit he had come from prior to going to confinement so he would not be harassed.

10.     My son was then moved to his old cell, and after he called and told me that they had now took revenge for the law suit he was planning to file, and moved him to the 8th floor. I called and spoke with classification and was told that it was no longer in their hands, administration now decided what they wanted to do with my son.

11.     I am also aware and willing to testify to them confiscating my sons legal work, and copy of his original pleadings in this matter. I called over them taking his work and not returning it, and I am willing to testify to such.

12.     I am willing to testify to my first hand knowledge concerning all matters related to this action, as I have read many/most of the Motions etc. and have personal knowledge of the facts thereof.

RESPECTFULLY SUBMITTED,

~~SHARON LAWSON~~
P.O. BOX 9356
Fort Lauderdale, FL. 33310

**UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY (28 USCS §1746)**
I declare under the penalty of perjury that the foregoing is true and correct.
Executed on November 25, 2000

BY _____

INMATE'S NAME: (Watson) ROSS          ARREST NUMBER: FL9?9905

| DAYS | LOCATION | | | DATE | LOCATION | CODE | CCN | DATE | LOCATION | CODE | CCN |
|------|----------|--|--|------|----------|------|-----|------|----------|------|-----|
| | 9C307 | R | | | | | | | | | |
| 10-5 | 762-8-2 | 7 | 715 | | | | | | | | |
| 11-5 | 9C1.6-? | | 537? | | | | | | | | |
| 11-5 | 7439-1 | L | 790 | | | | | | | | |
| 11/6 | 8C24.1 | 4 | 9253 | | | | | | | | |

## SUPPORTING DOCUMENTATION

| DATE: | | CCN |
|-------|--|-----|
| 5/p?9 | 90day review no change most noivee) 8-7-99 | 9000 |
| 7/2?99 | reported to I/M request dated 7/2/99 (see attached copy | |
| | m detail) | 8088 |
| 10-5 | the nm. viol 4/0 | 7174 |
| 11.4 | Inmate relocated according to custody | |
| | level sixty five day review | 534? |
| | Max custody to Tech 3/ | |
| 11-5 | Per higher custody & returning to enemies | 797? |
| | location before 4/5, 1/M moved to 1773 ft GP. | |
| 11/6 | F/m now has cust score of 31 following many | |
| | DR's for dangerous behavioral/managerial problems | |
| | including setting fire, fighting, possession | |
| | of hazardous items, conducts which disrupts. | |
| | Relo to Admin Confinement. | |
| | corrected reassnmt + entered in computer - Notified Dep Foster of Relo | 925- |
| 11/16/9? | 5g Review completed - um to continue in admin segt revies | 731 |
| | 1/1 23/99. | |
| 11/18/99 | 1m MGT meeting - IM has al 3 ph since 97 but st | 7713 |
| | IM prior veil t be adjusted then 1m has too no proble | |
| | other than want to go to law libra, bu CM2 ruled | |
| | at made a recometst veries is not ruling | |

LWSON 0000097

CLASSIFICATION REVIEW FORM

Inmate Name: Lawson, Ross    Arrest #: F1979905    Review Date: 11-4-99    Next Review Date: 12-20-99

Reason for review:    ✓ 45 day review    ✓ disciplinary    ____other
                       ____ 90 day review    ____ add charge

Present Custody Level: MAX    (min., med, max. override, or max.)

Present Numerical Rating: 25    Comments:

Severity of New Add Charge: 1

**Guilty Verdicts On DRs:**

Add:
    +1 for Minor/No Segregation    ____
    +2 for Minor/Segregation    ____
    +3 for Major/No Segregation    ____
    +4 for Major/Segregation    # DR 10/5/99 →
    +6 for Major/Event Report    +6    (Event Report was written
                                        9-25-3

Subtract:
    -5 for Completed Program    ____
    -7 for 90 Days/No Incident    ____

                    TOTAL:    29    9-25-3
                              31

Custody Level:

    Not Changed ____
    Changed To:    Med Low ____    Med High ____    Max ✗

Custody Housing:

    Not Changed ____
    Changed To:    Med Low ____    Med High ____    Max ____

Program Specialist: _____ 6344    (Revised 12/98)

LWSON 0000146

# INMATE RELOCATION REQUEST FORM

_Lawson, Ross_ _FL979905_ _11/4/99_ _7820S_

| Inmate Name | Arrest Number | Today's Date | Present Loc: |

=====================================================================================

## 8th Floor Disciplinary Movement and Relocation

___ Inmate DRd for Violent/Disruptive behaviors or threatens safety and security of the facility

___ Inmate DRd for Non-Violent behaviors,or doesn't threaten the safety and security of the facility

___ Inmate transfer from North Broward, DOCC or Conti to the Main Jail due to:

Non-Violent DR_____ or Violent DR_____ (All DR paperwork needs to be sent to Main Jail Classifical

Escape Risk:_____ or Other (Give reason):_____

___ Inmate's DR EXPIRED or was rescinded due to other TECHNICAL VIOLATION

___ Inmate's sentence MITIGATED due to overcrowding - Relocate out of DR lockdown and into appropriate housing

_X_ TIME SERVED - Relocate to appropriate housing

LIST ARREST NUMBERS OF CURRENT KSF'S: _FL98E271_  _MH98C179_
_509717E2;_  _FL98 112E3_

L. Leutur 11-4-99 _____    _____ 11/4/95

| Deputy Sign/Date | Sergeant and/or Lieutenant Sign/Date |

Received by Classification Specialist: _____    Date: 11-4-99

New Housing Location:_____
=====================================================================================

## Inmate Movement and Relocation to Programs

(Choose One)
Request relocation TO a program: _____ OR Request Relocation FROM a program:____

___Drug Cell    ___Relapse Prevention    ___School Cell    ___Trusty Worker _____
                                                            Trusty Coordinator Signature Approval/Da

Reason    ___Court Ordered    ___Self-Referred or Self-Removed    ___Completed Successfully    ___Failed to Meet S:

_____ to _____
Current location         Requested Program Location

Received by Classification Specialist:_____ Date_____ New Housing Location:_____
=====================================================================================

## "Other" Types of Movements or Relocations

___ Medical Relocation (Attach MEDICAL RELEASE authorizing return to inmate housing)

___ Juvenile to Adult Status    ___8th Floor Special Administrative (Fill Out and Attach Segregation Review Form

Receiving Classification Specialist _____ Date _____ _____

LAWSON 0000152





## POLICY:

The Division of Detention (DOD) shall establish written procedures to govern the operation and supervision of inmates classified as needing Administrative Segregation.

## AUTHORITY: ACA 3D-01 to 3D-24

## FORMS:
Inmate Check Sheet - BSO DJ#92
Inmate Request Form - BSO DJ#24
Detainee Relocation Request
Inmate Special Housing/Confinement Record Sheet - BSO DJ#3

## DEFINITIONS:

**Administrative Segregation:** A classification resulting in an alternate living assignment for an inmate whose placement in the general population poses a serious threat to the safety of staff or inmates, or life and property.

**Segregation:** The housing of an inmate in a living unit which separates inmates from general population. There are three forms of segregation: administrative, disciplinary, and protective custody.

**Segregation Unit:** An inmate housing unit which provides for physical separation of inmates from the general population to assure the secure and orderly management of the institution.

**Lockdown:** The classification of an inmate to a secure housing location/cell where the inmate is allowed out for one hour per day.

## PROCEDURE:

### A. Admission:

1. The classification of Administrative Segregation will be provided for the non-punitive housing for inmates who need a high degree of supervision due to the inmate's behavior or actual/ or alleged threats to the safety and security of the facility, inmates, staff or self.

2. The Classification staff, Shift Commander, Facility Administrators, Assistant Director or Designee, or the Director of DOD may order immediate segregation of an inmate if needed to protect the inmate, staff or others who might be at risk of harm or injury Each case will be reviewed within three (3) working days by Classification.

3. The Classification Unit may order the reclassification of an inmate to Administrative Segregation, to include the following but not limited to

   a Exhibits documented anti-social or hostile behavior toward staff or inmates or repeated destruction of county property.
   b Is an escape risk.
   c Is sentenced to death
   d Is an informant or a state witness

4 Each reclassification will be reviewed within three (3) working days by Classification

5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ one of the following "keep separate"

    a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ segregation.

    b. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with the same

    c. ▮▮▮▮▮▮▮▮▮▮▮▮ An inmate ▮▮▮▮▮▮▮▮▮▮ from a specific inmate or inmates.

6. When an inmate is designated as a "keep separate", appropriate notification will be made to document the information in the inmate's classification file, Inmate Special Housing/Confinement Record Sheet, inmate's movement card, CMS contact log/card and other documents as required.

7. Any "keep separate" resulting from a Disciplinary Report will be clearly indicated on the Detainee Relocation Form so that the Classification Unit may proceed with appropriate housing and documentation.

## B. General Conditions of Confinement:

1. Inmates placed in Administrative Segregation will be afforded the same basic rights, privileges, services and participation in facility programs as those inmates held in general population unless security and safety requirements dictate otherwise. No Administrative Segregation inmate will be allowed to attend a program with general population inmates while in this classification, unless authorized by the Facility Administrator. The assigned Classification Specialist will make arrangements to deliver the necessary programs to these inmates.

2. Staff members requesting a restriction of any item or activity to an inmate will obtain approval from the Shift Commander prior to implementing the restriction. Clothing and bedding will not be removed from an inmate unless authorized by the Shift Commander and medical staff.

3. A written report will be submitted outlining the reason or basis for restricting an item/activity and will be recorded on the inmate's contact card. The report will be forwarded to the Facility Administrator through the chain of command.

## C. Review of Status:

1. The Classification Unit will review the status of all inmates in Administrative Segregation at least every seven (7) days for the first two months and at least every 30 days thereafter. The Classification Unit will provide the inmate with a written report stating the reasons for their decision to keep the inmate in Administrative Segregation or to change the inmates' classification, as well as a summary of the information considered in making the decision.

2. Each review will include an evaluation of the following inmate information

    a   Original reason for the inmate's segregation and behavior while in segregation.
    b   Disciplinary record;
    c   Past criminal record;
    d   Psychological background.
    e   Adjustment history;
    f   Habitual conduct or language of a type expected to provoke or instigate stressful, perhaps violent situations,
    g   Any pertinent information submitted by staff

3   Inmates who have been held for longer than two (2) months may be referred to the mental health staff for evaluation if deemed necessary by the inmate's behavior. Classification staff will consider any alternatives available and what, if any, assistance could be provided to the inmate to facilitate their return to the general population

4. If Cla____ ____ ____ the inmate should remain classified as Administrative Segregation, the inmate may app___ ____ ___ to the Facility Administrator.

## D. Review Process for Release:

1. Before inmates are released from Administrative Segregation, a full review of the inmate's file and ____ ___ ___ ___ conducted by the Classification Unit to determine if the inmate's reclassification is ___ ___.

2. Should it be determined that the initial reasons for placement in Administrative Segregation no longer exist, the inmate will be returned to general population.

3. The Classification Unit will document all reclassifications from Administrative Segregation including date, reasons for release, and the releasing authority.

## E. Rights and Privileges of Inmates in Administrative Segregation:

1. Meals:

   a. The quality and quantity of meals will be the same as provided the general inmate population and will not be altered or withheld.
   b. The meals must meet basic nutritional requirements.
   c. Alternative meal service will be made available on an individual basis and will be based on health or safety considerations only.
   d. Alternative meal service must be approved in writing by the Shift Commander and responsible health authority.
   e. The type of alternative meal service will be designed to eliminate the hazardous condition and will not be used longer than seven (7) days.

2. Personal Property:

   Inmates classified as Administrative segregation will be provided prescribed medication, clothing that is not degrading and access to basic personal property unless this property poses imminent danger to the inmate or other inmates.

3. Personal Hygiene:

   a. Inmates will be provided with the same hygiene items as provided the general population. Razors will be issued by deputies and retrieved after the inmate has been given a reasonable amount of time to shave.
   b. Inmates will be provided the opportunity to shave and shower daily.
   c. Hair care services will be provided as often as for the general population.

4. Clothing, Bedding and Linen:

   a. Clothing, bedding and linen will be issued and exchanged on the same basis as inmates in the general population.
   b. Clothing and linens will not be removed from an inmate unless authorized by the Shift Commander and medical staff. Exceptions will be justified in writing in the Daily Logbook, on the inmate's ____ ____ applicable CJIS fields, and in the Shift Commander's log.

Inmates will be provided laundry service as often as general population inmates.

6. **Telephone:**

Inmates will be allowed telephone privileges.

7. **Commissary:**

Inmates will be allowed commissary privileges consistent with inmates in general population.

8. **Programs and Services:**

a. Inmates will have the same access to programs and services as those afforded in general population unless safety and security requirements dictate otherwise.
b. Programs and services include, but are not limited to: education, commissary, leisure and law library services, social services, counseling, religious services or guidance, and recreation.
c. Inmates unable to participate in programs outside their cell will be provided programs and services upon request on the Inmate Request Form **(BSO DJ#24)** as follows:

(1.) The Chaplain or designee will visit inmates in their housing unit to provide religious guidance and counseling.
(2.) The school teacher will provide inmates with course outlines and required materials.
(3.) Classification Specialists/Program staff will be permitted to visit inmates in their housing areas.

9. **Correspondence:**

Inmates will be permitted to send and receive correspondence as often as the general inmate population.

10. **Visitation:**

a. Inmates will be afforded visitation privileges which are available to the general inmate population, unless safety and security requirements dictate otherwise.
b. It will be the responsibility of the inmates to inform potential visitors by mail or telephone should they be denied visitation privileges. Staff should inform inmates of this responsibility at the time the restriction becomes effective.

11. **Law Library:**

Inmates classified as Administrative Segregation will have access to legal materials from the law library by completing an Inmate Request Form.

12. **Reading Materials:**

a. Inmates may request reading materials from the leisure library and may possess comparable amounts of general reading materials available to the general inmate population. Reading materials will be delivered to the housing unit.
b. Newspapers will be delivered to the segregation units on the same schedule as for general population as determined by the Facility Administrators

13. **Exercise:**

a. Inmates will be provided with an opportunity to exercise outside their living area. weather permitting a minimum of one (1) hour a day. five (5) days a week subject to security and safety considerations
b. Inmates unable to participate with other inmates or confined to their cell will be allowed out of their cell once a day for one (1) hour to exercise and shower when no other inmates are present

## F. Documentation:

1. An Inmate Special Housing/Confinement Sheet (BSO DJ#3) will be maintained by deputies for all inmates that are in lockdown status. Information to be contained on the confinement sheet will include, but is not limited to, the following:

   a. Name and arrest number of inmate,
   b. Cell location,
   c. Date admitted,
   d. Reason for segregation/lockdown
   e. Actual or anticipated release date,
   f. Special needs or restrictions,
   g. Special medical or psychiatric problems,
   h. The authorizing official.

2. In addition to the requirements for a confinement sheet, staff will maintain frequent observation of inmates in lockdown status. These inmates will also receive regular visits from Supervisors and Health Care staff.

   a. All inmates in lockdown will be observed at intervals not to exceed thirty (30) minutes. All thirty (30) minute observation checks will be documented on the Inmate Check Sheet (BSO DJ#92) and/or the CJIS system.
   b. Inmates classified as Administrative Segregation will receive a daily visit on each shift from the Sergeant and the Shift Commander. Visits from supervisors will be documented on the Inmate Special Housing/Confinement Record Sheet (BSO DJ#3).
   c. Program staff will visit inmates upon receiving a Request Form. All inmate requests received by program staff will be answered in a timely manner.
   d. Health care staff will visit three (3) times a week.

3. Staff will maintain written records of all admissions and releases of inmates from the unit in the Daily Logbook/CJIS System.

4. Unusual activity or behavior of individual inmates will be recorded in the Daily Logbook, on the Detainee Contact Card (BSO DJ#67) on the Inmate Special Housing/Confinement Sheet, and in the CJIS system.

5. All personnel who visit the Administrative Segregation Unit will sign the Daily Logbook or be entered into the appropriate CJIS log, citing the time, date, and purpose of their visit.

6. All staff and contractors, not officially assigned to the Administrative Segregation Unit, should be discouraged from entering the area for any reason other than to fulfill official responsibilities and duties.

## G. Assigned Staff:

1. The training of all assigned staff will include the types of inmates who are typically classified as Administrative Segregation and instructions on safety and security precautions unique to the Administrative Segregation housing unit

2. Supervisors will evaluate the performance of staff assigned to supervise inmates classified as Administrative Segregation by means of daily observation. Any indication of below-average job performance will be reported promptly to the Facility Administrators. Assigned staff will be removed from the unit immediately if there are continuous reports of unsatisfactory job performance. Depending on the intensity of the assignment, staff may need to be rotated

AUDITS: Audits will be conducted at least annually in accordance with the Internal Audit Schedule

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

TO BE COMPLETED BY INMATE

Date of Request: __11/8/99__    Inmate's Name: __Ross Lawson__
(Alias, if used)

Arrest #: __FL977990S__    Location: __8/C/2__    DOB: __3/10/7:__

To: __Law Library__

Program Specialist ☐    Mailroom ☐    Commissary ☐
Classification ☐    Food Service ☐    Other ☐

Nature of Request: __I am approved by the Super-Intendent__
__Hitchcock to have 17 hours access to the law__
__library per week! Please place me__
__On a list for such time!__
__or get approval!__

__Ross Lawson__
Inmate's Signature

__11/8/99__
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

_Upon ___ in Lockdown  You must Submit_
_a request Slip to obt' hours etc on the_
_Hitchcox._

Completed By: __Qu__    CCN _____    Date: __11/11/99__    Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐    Written Information        ☐    Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE'S REQUEST FORM**

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

### TO BE COMPLETED BY INMATE

Date of Request: **11/8/99**                    Inmate's Name: **Ross Lawson**
                                                                (Alias, if used)

Arrest #: **FL97 9905**                          Location: **8C/2** DOB: **3/10/**
                                                           Law Library

To: **Case Worker**

| | | |
|---|---|---|
| Program Specialist ☐ | Mailroom ☐ | Commissary ☐ |
| Classification ☐ | Food Service ☐ | Other ☑ |

Nature of Request:

I need copies
made of legal work!

_Ross Lawson_                                          **11/8/99**
Inmate's Signature                                    Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

-----------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Completed By:_____ CCN_____ Date:_____ Time:_____

All requests will be handled by the responding deputy in one of the following ways:

☐    Written Information                          Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

========================================================================

TO BE COMPLETED BY INMATE

Date of Request: __11/10/99__          Inmate's Name: __Ross Lewson__
                                                    (Alias, if used)

Arrest #: __FL 97-9905__                Location: __8/C/2·4__   DOB: __3/0/72__

To: __Sgt. 8th Floor__

Program Specialist ☐          Mailroom ☐          Commissary ☐
Classification ☐              Food Service ☐      Other ☑

Nature of Request: __I have a memo by Hitchcock approving__
__me for 17 hours in the law library. I spoke__
__with (Director Patrick Tighe) he informed me__
__I will be allowed to go When will I have access__
__to copies, type writers, leagal research book and Florida__
__law books, or/and access to the law library. I have Deni__

__Ross Lewson__                              __11/10/99__
Inmate's Signature                          Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

------------------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

_As per our conversation today, 11-22-99, you will not_
_be allowed to go to the law library until a memo has been_
_recieved from Capt. Hitchcock authorizing. I am yours going to_
_the law library will be done and if it will be done_
_at all._

------------------------------------------------------------------------

Completed By: __M Sgt Chn__   CCN __260__   Date: __11-22-99__   Time: __0815__

All requests will be handled by the responding deputy in one of the following ways:

    ☐   Written Information              ☐   Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

TO BE COMPLETED BY INMATE

Date of Request: 11/11/99          Inmate's Name: Ross Lawson
                                              (Alias, if used)

Arrest #: F/97-9905               Location: 8/C/2        DOB: 3/10/7.

To: Case Worker (Informal Grievance
Program Specialist    ☐    Mailroom    ☐    Commissary
Classification        ☐    Food Service ☐    Other    ☑

Nature of Request: I have a legal deadline and need copies
made My last request for this was never
answered in the proper time frame If you will
not assist me and continue to deny me access to
the courts because of my denial of copies and supplies
my next step will be a Grievance Then outside intervention

Ross Lawson

Inmate's Signature                            Date Signed  11/11/99

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Copies of legal papers can be
arranged through the law library.
Check with your Deputy

Completed By: /s/          CCN 4341   Date: 11-13-99   Time: _____

All requests will be handled by the responding deputy in one of the following ways:

    Written Information                    Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DT#24 (Rev. 4/93)

On 11-11-99 I watched Ross Lawson give a complete packet
or file folder containing a law suit in grievences to
Dep Wilcox. To have her make 5" copies of each for Ross
the law suit was for the Broward County Jail not
letting us get books in, and letters and legal work to his
attorney.

(Inmate) Robert Williams (57-97-17086)
Perry Archibald 50999349
Lynn J. Brey (57 9815180)
Jeffery S. Gottman (50-98-22444)
Vincent Viter   5097-25613

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
Director Patrick Tighe,    INMATE GRIEVANCE FORM
William H. Ichcock.

**TO BE COMPLETED BY INMATE**

| Inmate's Name | Arrest# | Cell | Facility | Date |
|---|---|---|---|---|
| Ross Lawson | //// | F197-9905 | 8C/2 | BCMJ | 11/12/99 |

**PART A - INMATE'S GRIEVANCE**

On 11/12/99 Sgt Calvin told me I was not proise and my 17 hours access to the Law Library will be denied. Further more all my access to the law library will be denied. I showed him my memio from (Hitchcock) dated July 2, 1999. I am a pro-se litigent in several actions against BCM to Plus as in Tease the defendent is the master of his own defence. I am forced not to be his being done. This is a direct act of reprisal to deter me from sueing for my rights as this tells violation of due process and the USA constitution.

Inmate's Signature  Ross Lawson    Date Signed  11/12/99

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B - RESPONSE**

As I told you earlier, I had Catt and Capt. Utshack check out your problem and it was discovered that you are not pro-se and that Mr. Paley is your attorney. I also personally told you this face to face and it was apparent that you didn't like the finding. after discprovity your claim.

Reviewing Deputy's Signature/CCN    Date

Supervisor's Signature/CCN    Date  11-12-99

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**

I  Ross Lawson    , wish to appeal the response.

Inmate's Signature  Ross Lawson ( I am pro Se )    Date Signed  11/24/99

WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

**DIRECTOR'S RESPONSE TO APPEAL**

Director's Signature    Date

BSO DT461 (Revised 4/98)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing
this request.

TO BE COMPLETED BY INMATE

Date of Request: __11/18/99__          Inmate's Name: __Ross Lawson__
                                                    (Alias, if used)

Arrest #: __FL97-9905__                Location: __8C/2 #4__   DOB: __3/10/72__

To: __Dept Wilcox__

Program Specialist   ☐      Mailroom        ☐      Commissary   ☐
Classification       ☐      Food Service    ☐      Other        ☑

Nature of Request: Ms. Wilcox on 11/11/99 I gave you legal work.
(3 requests) grievances and US 1983 civil suit paper to have copies made for me
because I'm housed in 8C/2 and unable to go to the law Library, thus
I must go through you. Why have I not gotten my legal work back (w/l
copies) You are personaly denying my access to the courts! I want
my copies made and my original sent back to me ASAP please e...

__Ross Lawson__                                    __11/18/99__
Inmate's Signature                                 Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

----------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Capt. H/l/cc d. I's all your papers
said a grievance to file th/c/

Completed By: _____   CCN _____   Date: __11/22__   Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐   Written Information                        Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DT#24 (Rev. 4/93)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

TO BE COMPLETED BY INMATE

Date of Request: _11/19/99_    Inmate's Name: _Ross Lawson_
                                              (Alias, if used)

Arrest #: _FL97-9905_    Location: _8/C/2#4_    DOB: _3/10/7_

To: _Super Intendent; William Hitchcock_

| Program Specialist ☐ | Mailroom | Commissary ☐ |
| Classification ☐ | Food Service | Other ☐ |

Nature of Request: _Mr. Hitchcock I was informed that the legal papers I request to have copies made of some how ended up in your possession. I gave these to Dept. Wilcox of the Law Library to have copies 11/11/99 made. Why do you have them. Why have they not been copied and returned to me. You are violating my access to the courts! Please return my Mtp._

_Ross Lawson_                         _11/19/99_
Inmate's Signature                    Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

----------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

_____

_____

_____

_____

_____

_____

Completed By:_____ CCN_____ Date:_____ Time:_____

All requests will be handled by the responding deputy in one of the following ways:

        Written Information                    Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review

BSO DJ#24 (Rev. 4/93)

**INMATE**                                                                  99-7

**CORRESPONDENCE**

**Date**        November 23, 1999

**To:**         Inmate Lawson, Ross #57979905

**From:**       Deputy J. McManus, Report Coordinator,
                Administrative Aide to Captain Hitchcock,
                Main Jail, South Operations

**Subject:**    The file

> The file Dep. Wilcox had taken from you contained Grievances, Inmate
> Request Forms, Commissary Ledgers. One of the Commissary Ledgers was
> altered. We noticed that on September 10, 1999 there was a deposit of $165
> put into your account. On the same day it was disbursed back out. From
> talking with your family member on November 22, 1999, you received money
> for a claim for some lost property. Why you would change this ledger we do
> not know. I will turn the file back to you today, the way we received it.

Cc. Captain Hitchcock
    File

**INMATE**                                                                99-9

**CORRESPONDENCE**

**Date**        November 24, 1999

To:            Inmate Lawson Ross #57979905

From:          Captain William G. Hitchcock
               Main Jail, South Operations

Subject:       Access to Law Library

               Your complaint about access to the Law Library was sent to our Legal
               Department. They have informed me that they would provide an answer on
               December 3, 1999.

Cc. File

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

**TO BE COMPLETED BY INMATE**

Ross Lawson          FL97-9805  &k2  BCMJ    11/24/99
Inmate's Name                    Arrest#   Cell  Facility    Date

**PART A - INMATE'S GRIEVANCE**

This is to grieve the fact that the file that Dept. Wilcox took from me on 11/11/99 was returned to me today. Yet all my Criminal paper work letters to my attorney, question ect ect ect was missing please send me back my legal papers ASAP. None of these should have been read or taken. This is unconstitutional!

Ross Lawson                              11/24/99
Inmate's Signature                       Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B - RESPONSE**

_____

Reviewing Deputy's Signature/CCN                   Date

Supervisor's Signature/CCN                         Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
I _____, wish to appeal the response.

Inmate's Signature                        Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

_____

Director's Signature                        Date
BSO DT#51 (Revised 1/93)

**INMATE**                                                              99-299

**CORRESPONDENCE**

to:         Inmate Lawson, Ross FL97-9905

from:       Captain William Hitchcock, _[signature]_
            Main Jail Southern Operations / Department of Detention

subject:    Law Library

date:       December 3, 1999


I have consulted with our legal division regarding your court order requesting additional
Law Library time. E. Williams, P.A. verified that the court order states that we are
'requested' to allow you to attend the Law Library 'according to our policy and
procedures'. Our policy is to schedule law library time for the entire population on an
equal basis with the exception of inmates who are pro se (who have no assigned attorney of
record).

We feel that inmates who are pro se, obviously require additional law library time. We
also feel that inmates who have attorneys of record are provided ample scheduled time for
their legal needs. Any further infringement on the Law Library schedule would lessen the
time for other regularly scheduled inmates and valid pro se cases. As you have an attorney
of record and are not pro se, we are no longer inclined to provide you with any additional
Law Library time.

You also asked why you could not have more than 20 copies of a particular set of
documents. Our long standing rule, which was promulgated years ago according to F.S.S.
33-8 detention facility codes (see attached), limited copies to the number fifteen. We feel
that 20 copies are a proper number of copies to allow for total access to the courts and all
other entities that would require a copy.  If you deem you still require more copies, I
request a written list of all entities that you feel require a copy for your purposes.  The
copies will be allowed if the list is followed with proper justification for need of copies being
made for those areas.

cc:    Elijah Williams, P.A.
       X/O Lt. M. Powers
       File

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
2: Dept J McManus → INMATE GRIEVANCE FORM And William Hitchcock

TO BE COMPLETED BY INMATE

DEC 18 1999

Ross Jay Lawson _____ FL97-9905 _ 7/0/2 BCMJ _ 12/15/99
Inmate's Name _____ Arrest# _ Cell _ Facility _ Date

PART A - INMATE'S GRIEVANCE

This is on a grievance I wrote that was never answered concerning my
legal work that was taken by Dept Wilcox of the L.L. The Memo
I got back from you along with a file folder. The filefolder you retur
to me had some of my paperwork. But all my copies of criminal
work, letters, noted discovery, ect. ect. ect. plus my original civil suit agains
publishers are missing. When you dropped my file off I told you my stuff was
missing you have done nothing about it. Please find out where my propers a

Inmate's Signature _ Ross Lawson _____ Date Signed 12/15/99

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B - RESPONSE

Dep Wilcox stated She had taken the
file gave it to Capt Hitchcock - Then I Returne
it to you.

Dep McManus 1/6/
Reviewing Deputy's Signature/CCN _____ Date

Supervisor's Signature/CCN _____ Date

TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I _ Ross Lawson _____, wish to appeal the response .- st plc.
Ross Fa: _____ why was it read in the
Inmate's Signature _ and where is my date signed. mind our
WHEN COMPLETED, KEEP THE TOP OF THE FORM. civil Stut/
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

DIRECTOR'S RESPONSE TO APPEAL

_____
_____
_____
_____
_____

Director's Signature _____ Date

## INMATE SPECIAL MANAGEMENT AND SEGREGATION REVIEW FORM
(Revised 11/15/1999)

_LAWSON, ROSS_
Inmate Name

_57979905_
Arrest Number

_11/25/99_
Today's Date

Initial Custody Score _17_    Current Custody Score _31_    Current Location _8C2- 4_

Special Management Housing Type Recommended: ⊘Close Supervision  ⚪Protective Custody

⚪Adjustment Unit    ⚪Administrative Confinement
9 days.

This review is:    ⚪Initial Review  ⚪24 hrs  ⚪48 hrs  ⚪72 hrs  ⊘7 day  ⚪30 day

Reasons for inmate's initial segregation: _17 serves a custody level of 31 due to_
_3 prior DR'S since 1m was incarcerated. 1M DR's consisted of_
_behavioral problems, fighting, poss of contraband items, fire setting_

**Determination of Management Team:**

⊘Continue Segregation    ⚪Change Segregation Type    ⊘Discontinue Segregation return inmate to G.P.

Explanation: _Above statues were investigated & found to_
_not valid 1M MGT decision was to place 1m in 7D2_
_HIGH RISK AS A STEP DOWN. IF Problems occur 1m will_
_be placed back on 8th floor_

Date begun in Segregation _11/6/99_        Next Review Date: _____

Those Present at Management Team: _SGT. CALVIN, A SCHRADEL, K. Wortha_
_CDA_

Classification Specialist _K Wortha_            Supervisor _[signature]_ 11/25/99

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

you haven't asked the housing unit deputy to solve this problem, do so before completing
is request.

## TO BE COMPLETED BY INMATE

te of Request: __12/17/99__    Inmate's Name: __ROSS Lawson__
(Alias, if used)

rest #: __FL9779905__    Location: __7/D/B__    DOB: __3/10/7?__

To: __Law Library__

Program Specialist ☐    Mailroom ☐    Commissary ☐
Classification ☐    Food Service ☐    Other ☐

ture of Request: __I have a court order please__
__place me for all available__
__times__
__Thank you__

__Ross Lawson__    __12/17/99__
ate's Signature    Date Signed

EN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
X LOCATED IN EACH POD.

-----------------------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

~~I need to see a copy of the
Court Order before we can schedule
You for Court order only Slot.~~

I was told You cannot come down
with Court Orders.

pleted By: __Murphy__    cor __6665__    Date: __12/17/99__    Time: __10:00__

l requests will be handled by the responding deputy in one of the following ways:

☐    Written Information    ☐    Personal Interview

... the office of Information and Review.

Docket as of August 30, 2000 7:27 pm                    Web PACER (v1.2)

## U.S. District Court

## Southern District of Florida (FtLauderdale)

## CIVIL DOCKET FOR CASE #: 00-CV-6009

### Lawson v. Broward Sheriff's, et al

Filed: 01/04/00
Assigned to: Judge William P. Dimitrouleas
Demand: $0,000
Nature of Suit: 550
Lead Docket: None
Jurisdiction: Federal Question
Dkt# in other court: None
Cause: 42:1983 State Prisoner Civil Rights

ROSS JAY LAWSON
    plaintiff

Ross Jay Lawson
[COR LD NTC] [PRO SE]
Broward County Jail
PO Box 9356
Fort Lauderdale, FL 33310

    v.
BROWARD SHERIFF'S OFFICE,
Sheriff Ken Jenne
    defendant

Robert Hunt Schwartz
FTS 760-9531
954-523-5885
[COR LD NTC]
Adorno & Zeder
888 SE 3rd Avenue
Suite 500
Fort Lauderdale, FL 33335-5502
954-523-5885

WILLIAM HITCHCOCK,
Superintendent BCMJ
    defendant
PATRICK TIGBE, Director BCMJ
    defendant
BROWARD COUNTY DEPARTMENT OF
CORRECTIONS
    defendant

Robert Hunt Schwartz
[See above]
[COR LD NTC]

## DOCKET   PROCEEDINGS