UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6009-CIV-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,

    Plaintiff,

v.

KEN JENNE, WILLIAM
HITCHCOCK, BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,

    Defendants.

_____/

**NIGHT BOX**
**FILED**

DEC – 4 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FT.L

## <u>DEFENDANTS', JENNE, HITCHCOCK AND BROWARD COUNTY'S, MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL WITNESS LIST</u>

The Defendants, KEN JENNE, WILLIAM HITCHCOCK and BROWARD

COUNTY DEPARTMENT OF CORRECTIONS AND REHABILITATION, by and

through their undersigned counsel, files their Motion to Strike Plaintiff's

Supplemental Witness List, and in support thereof states:

    1.    On May 1, 2000, this Court entered an Order Scheduling Pretrial

Proceedings when Plaintiff is Pro Se.

    2.    Said Order stated that Plaintiff was to file a Pretrial Statement on or

before August 25, 2000.



3.      Said Statement was to include the names of all witnesses who were expected to testify at trial.

4.      On August 23, 2000, Plaintiff filed said Statement which included the witnesses he expected to testify at trial.

5.      On September 1, 2000, this Court entered an Order allowing the parties until November 15, 2000 to amend their pretrial statements.

6.      Plaintiff filed a Supplemental Witness List with a certificate of service date of November 15, 2000.

7.      Said Supplemental Witness List was not received by the Court until November 29, 2000.[1]

8.      Said Supplemental Witness List was not received by the undersigned until November 30, 2000.[2]

9.      Said Supplemental Witness List was received the same day as Plaintiff's Response to Defendants' Motion for Summary Judgment which has a certificate of service date of November 26, 2000.[3]

---

[1]See Exhibit "A" attached hereto.

[2]See Exhibit "B" attached hereto.

[3]See Exhibit "C" attached hereto.

10.    As both documents were received by the undersigned the same day, it appears that Plaintiff backdated his Supplemental Witness List in an effort for it to comply with this Court's Order dated September 1, 2000.[4]

11.    Additionally, Plaintiff's Supplemental Witness List does not comply with paragraph 4(f) of this Court's Order entered May 1, 2000.

12.    If the Court were to deny the instant motion, Defendants' would suffer prejudice as the supplemented witnesses are not subject to cross examinaation as discovery has been completed.

13.    For the above stated reasons, Plaintiff's Supplemental Witness List should be striken accordingly.

## MEMORANDUM OF LAW

In this Court's Order dated May 1, 2000, is specifically states in paragraph 4(f) that Plaintiff is to provide a summary of the testimony that each of his listed witness will give. The following Order, entered on September 1, 2000 states in paragraph three that "the parties shall comply with the requirements set out in the "ORDER SCHEDULING PRETRIAL PROCEEDINGS', with the exception that the deadline

---

[4]Another document entitled "Plaintiff's Response in Opposition to Summary Judgment Being Considered Without Oral Hearing", bearing a certificate of service date of November 15, 2000 was also received by the undersigned on November 30, 2000.

for filing motions to dismiss or for summary judgment is extended. Accordingly,
Plaintiff must still comply with paragraph 4(f) of this Court's May 1, 2000 Order.

Plaintiff's supplemental witness list does not comply with paragraph 4(f) in
that he fails to state what each witness will testify about. Plaintiff merely includes a
blanket statement that "all witnesses will testify to all personal knowledge concerning
all matters to do with this action and the Plaintiff's claims". This blanket statement
does not summarize the testimony of each and what each witness personally knows
about this action and Plaintiff's claims.

Moreover, it appears that Plaintiff backdated his Supplemental Witness List so
that it would bear the certificate of service dated of November 15, 2000, which
coincidentally was the last day permitted by this Court to file amendments to pretrial
statements. The undersigned received three documents from Plaintiff on November
30, 2000: (1) Plaintiff's Supplemental Witness List with a certificate of service date
of November 15, 2000; (2) Plaintiff's Response in Opposition to Summary Judgment
Being Considered Without Oral Hearing with a certificate of service date of
November 15, 2000; and (3) Plaintiff's Response to Defendants' Motion for
Summary Judgment with a certificate of service date of November 26, 2000 (this

document could not have been sent via U.S. Mail on the 26th as it was a Sunday, tending to prove that Plaintiff is fraudulently dating his documents).[5]

It appears highly unlikely that the undersigned would receive mail from the Plaintiff dated November 15, 2000 and November 26, 2000 on the same day.[6]

As Plaintiff submitted affidavits from witnesses in support of his Response to Defendants' Motion for Summary Judgment, and said witnesses were not listed on his Witness List, Plaintiff was forced to backdate a Supplemental Witness List to include these names.

As Plaintiff failed to comply with paragraph 4(f) of this Court's Order dated May 1, 2000 and backdated his Supplemental Witness List, his Supplemental Witness List should be striken.

**WHEREFORE**, for the above state reasons, Plaintiff's Supplemental Witness List should be striken.

---

[5] Please note that on the two documents dated November 15, 2000, Plaintiff states in the certificate of service that the undersigned was sent a copy via in-house mail. The undersigned law firm does not receive in-house mail from any entity outside the firm including jails.

[6] Unfortunately, the envelope which said mail was received in was discarded and is not available to show that all three documents arrived in the same envelope.

*Lawson v. Jenne, et al*
USDC Case No.: 00-6009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via

U.S. Mail this 4th day of _____, 2000 to: **ROSS JAY LAWSON**, Pro Se

Plaintiff, FL 97-9905, Post Office Box 9356, Fort Lauderdale, Florida 33310.

ADORNO & ZEDER, P.A.
Counsel for Jenne & Hitchcock
888 Southeast Third Avenue
The Legal Center, Suite 500
Fort Lauderdale, Florida 33335-9002
(954) 523-5885
(954) 760-9531 (Fax)

ROBERT H. SCHWARTZ
Fla. Bar No.: 301167

TAMATHA S. ALVAREZ
Fla. Bar No.: 0151467

ADORNO & ZEDER, P.A.
888 SOUTHEAST 3RD AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33335-9002 • TELEPHONE (954)523-5885 • TELEFAX (954) 760-9531

9/28/00  29    SUPPLEMENTAL Witness list by Ross Jay Lawson (ss)
               [Entry date 09/29/00]

10/24/00 30    MOTION with memorandum in support by Broward Sheriff's,
               William Hitchock, Broward Corrections for summary
               judgment (ss) [Entry date 10/25/00]

10/26/00 31    ORDER Instructing Pro Se Plaintiff Concerning Response to
               Motion for Summary Judgment; Response to motion reset to
               11/27/00 for [30-1] motion for summary judgment (Signed by
               Magistrate Judge Charlene H. Sorrentino on 10/25/00) CCAP
               [EOD Date: 10/27/00] (ea) [Entry date 10/27/00]

11/29/00 32    SUPPLEMENTAL Witness list of inmate and other witnesses for
               trial by Ross Jay Lawson (ss) [Entry date 11/30/00]

11/29/00 33    RESPONSE by Ross Jay Lawson in opposition to [30-1] motion
               for summary judgment being considered without oral hearing
               (ss) [Entry date 11/30/00]

---

Case Flags:
MAGREF
CHS

---

END OF DOCKET: 0:00cv6009

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/01/2000 11:21:04 | | | |
| **PACER Login:** | az0004 | **Client Code:** | 014157.0003 |
| **Description:** | docket report | **Search Criteria:** | 0:00cv06009 |
| **Billable Pages:** | 4 | **Cost:** | 0.28 |



DEFENDANT'S
EXHIBIT

A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROSS JAY LAWSON,

Plaintiff,

V.

KEN JENNE, WILLIAM HITCHCOCK,
BROWARD COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB., ET AL,
_____/

Case No.: 00-6009-CIV-DIMITROULEAS
Magistrate Judge SORRENTINO

**PLAINTYIFF'S SUPPLEMENTAL**

**WITNESS LIST OF INMATE AND,**

**OTHER WITNESSES FOR TRIAL**

1. Sharon Lawson  5765 N.E. 6th Place Ocala, FL. 34470

2. Michael Consiglio 5000-25970 Broward County Main Jail

3. Michael Soles 19990482          "       "          "      "

4. John Judd  51980234             "       "          "      "

5. Steaven Marino  509724666       "       "          "      "

6. Lisa Gemmette 5740 N.E. 6th Place, Ocala, FL. 34470

7. ALL WITNESSES WILL TESTIFY TO ALL PERSONAL KNOWLEDGE concerning all matters to do
   with this action, and the Plaintiff's claims.

I hereby certify that a true and correct copy of the above was sent via in-house
mail to Attorneys for Defendants at ROBERT HUNT SCHWARTZ, ESQ. ADORNO AND ZEDER, P.A.
888 S.E. 3rd AVE. suite 500 Fort, Lauderdale, FL. 33335-9002 on this 15th day of
November, 2000

BY    Ross Jay Lawson

ROSS JAY LAWSON F197-9905
P.O. BOX 9356
Fort Lauderdale, FL. 33310



DEFENDANT'S
EXHIBIT
B

SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6009-CIV-DIMITROULEAS

MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,      /
(Plaintiff)

VS.

KEN JENNE, WILLIAM
HITCHCOCK,BROWARD
COUNTY DEPARTMENT OF
CORRECTIONS AND REHAB.,/
(Defendant)

## PLAINTIFF, ROSS JAY LAWSON'S RESPONSE TO
## DEFENDANT JENNE, HITCHCOCK, AND BROWARD
## COUNTY'S MOTION FOR SUMMARY JUDGEMENT
## AND INCORPORATED MEMORANDUM OF LAW

Comes Now the Plaintiff, ROSS JAY LAWSON pro,se and responds to the Defendant's
Motion For Summary Judgement And Incorporated Memorandum Of Law, and requests this Honorable
Court to enter an Order denying the Defendant's Motion For Summary Judgement. Grounds for
this Plaintiff's request are as follows:

### PLAINTIFF'S RESPONSE TO DEFENDANT'S SECTION TITLED
### INTRODUCTION

The Defendants in their section INTRODUCTION state;

This is a 42 U.S.C. §1983 action for an alleged violation of Plaintiff's First

Amendment Right to receive publications through the United States Mail as a pre-

trial detainee in Broward County's Main Jail. Plaintiff alleges that Defendants,

without justification, violated his First Amendment Right by not permitting him to

receive publications through the United States Mail during his incarceration at the

jail. Plaintiff further alleges that he has been punished for filing grievances on his

alleged First Amendment violations by: (1) being denied access to the jail's law

library; (2) being placed in a high custody cell; and (3) having his legal documents

confiscated and destroyed. Plaintiff further alleges that Defendants do not apply the

ban on publications equally to all housed at the jail.

DEFENDANT'S EXHIBIT

Although the Defendants are true/partially accurate in some of their facts contained
.t their section titled INTRODUCTION, they do not, however, cover/show the entire picture.
Therefore the Plaintiff states the following in reguards to the Defendant's section titled
INTRODUCTION:

This is a 42 U.S.C. §1983 action. But not only for violations of the Plaintiff's
1ST amendment rights by the Defendants named in this action, but also for violations of
the Plaintiff's 5TH and 14TH amendment rights by the Defendants named in this action. Not
only does the Plaintiff claim that he was denied publications through the UNITED STATES MAIL
as a pretrial detainee, but the Plaintiff also claims that he was denied publications of
any type from being dropped off/delivered to him from any outside source. Such outside
sources include but not limited to, Publishers, Newspapers, Colleges, Universities, Family,
Technical Training Centers, Law Centers, Libraries, Book Stores, Government, Religious
Sources, etc. etc. It is true that the Plaintiff was and still is a pretrial detainee
awaiting trial, and has not been convicted, and does still fall under Due Process and not
Cruel And Unusual Punishment. As this Honorable Court is well aware, Due Process of course
prohibits any type of punishment prior to conviction, not merely Cruel And Unusual Punishment.
Plaintiff as well, does, claim that the Defendants named in this action were without justif-
-ication in instituting or upholding the policy that bands publications of any type from
coming into the Jail for inmates. And that the Plaintiff's rights were violated when the
Defendants named in this action would not change the policy, or allow the Plaintiff to
receive publications through the UNITED STATES MAIL or dropped off/delivered to the Plaintiff
by any outside source. The Plaintiff further claims that he was punished and acts of reprisal
were committed against him, not only for filing Requests and Grievances that explained that
his CONSTITUTIONAL & CIVIL RIGHTS were being violated, but that the Plaintiff was also
punished and acts of reprisal committed against him for attempting to have copies made of
the original copy of this action, so as he could file such to the Federal Courts and initiate
this action that is now pending before this Honorable Court. Some of the punishment/acts of
reprisal by the Defendants named in this action, in which the Plaintiff was forced to endure
are, but are not limited to: (1) being placed in a high custody level cell; and (2) being
denied access to the jail's law library; and (3) having legal documents confiscated and
destroyed. The Plaintiff has/does further allege that Defendants did not apply the ban on
publications equally to all housed at the jail from the period of time that the ban on
publications was enacted or the date of the Plaintiff's incarceration (7/17/97), until
S.O.P. 5.4.1. (J) (1) was enacted on 3/5/99, which allowed the following: Books, magazines,
and newspapers for inmates will not be accepted through the mail. The only exception is:
religious publications (soft cover) may be ordered directly from the publisher or provided
by outside religious groups.

~~~endants claim;   1.    On March 20, 1997, the Broward Sheriff's Office revised its Standard

Operating Procedure (SOP) 5.4.1 entitled Inmate Mail Procedures.[1]

Plaintiff's response to (1), The Plaintiff agrees that the Broward Sheriff's Office revised
                         its Standard Operating Procedure (S.O.P.) 5.4.1. entitled
                         Inmate Mail Procedure, on March 20, 1997.

Defendants claim;   2.    SOP 5.4.1 J.1 states that "Books, magazines, and newspapers for

inmates will not be accepted through the mail."[2]

Plaintiff's response to (2), The Plaintiff agrees that S.O.P. 5.4.1. (J),(1) states that
                         "Books, magazines, and newspapers for inmates will not be
                         accepted through the mail."

Defendants claim;   3.    This SOP, as well as all the others, are applied equally to everyone

housed at the jail whether their status is that of an inmate or a pre-trial detainee.[3]

Plaintiff's response to (3), The Plaintiff disagrees! And claims the following in opposition;

    The Plaintiff ROSS JAY LAWSON was arrested on 7/17/97, and booked into the Broward
County Jail on the same day. The ban on publications was in affect and upheld by the
Defendants at that time. This is verified by S.O.P. 5.4.1 (INMATE MAIL PROCEDURE) dated
3/20/97 section (J) Publications, and such section read as follows, "Books, magazines,
and newspapers for inmates will not be accepted through the mail." Although it was the
policy to ban/prohibit all publications from entering the jail in any fashion, the
Defendants allowed Christian materials, Christian Correspondence Courses, and all types
of Christian publications, to be admitted to the jail and inmates in several fashions.
Such fashions were as follows, U.S. MAIL, Christian visitors hand delivering them, and
dropped off at the jail for inmates. This Christian material/publications was the
Defendant's only exception to the rule banning all publications, and this exception
was an un-written law that was upheld by the Defendants named in this action. Then on

ɔ/99 the Defendants revised the S.O.P. section 5.4.1. (J) Publications: which then allowed and read as follows, "**Books, magazines, and newspapers for inmates will not be accepted through the mail. The only exception is: religious publications (soft covered) may be ordered directly from the publisher or provided by outside religious groups.**" Therefore the Defendants allowed one religious group/type of inmates to receive religious publications, while denying all other types the same. This went on from 7/17/97 until 3/5/99. And by the Defendants instituting S.O.P. 5.4.1 dated 3/5/99 they show that they knew the well established law concerning publications and inmates rights to such. The inmate affidavits that are incorporated in this response to Defendants request for summary judgement shall prove beyond a doubt that the Defendants in this action did in fact apply the ban on publications unequally to inmates of their choosing housed in the Broward County Jail. It should also be noted that the Plaintiff in this action is Jewish by birth, and not Christian, and therefore the Christian publications that were allowed in to the jail from 7/17/97 until 3/5/99 were of no use or desire to the Plaintiff in this action.

Defendants claim;    4.    The purpose of SOP 5.4.1 is to maintain order and security within the jail.[4]

Plaintiff's response to (4), The Plaintiff disagrees! And Claims the following in opposition;

The Plaintiff claims that the purpose of S.O.P. 5.4.1. was not to maintain order and security within the jail. But that S.O.P. 5.4.1. entitled "INMATE MAIL,ACCESS TO PUBLICATIONS AND INSPECTION OF LETTERS AND PACKAGES" was revised and put into effect by Sheriff Ron Cochran & SUSAN W. McCampbell on August 23, 1996. And that S.O.P. 5.4.1. was inacted to ban all publications from the Broward County Department Of Corrections and Rehabilitation in order to cut costs, and save money, while at the same time prohibit all inmates, convicted, non-convicted, sentenced, or non-sentenced, from exercising their First Amendment Rights to receive publications of their choice, practice and study religion of their choice, and learn subjects of their choice, through receiving publications of their choosing. The Plaintiff also claims that it was no coincidence that 42 USCS §1997e. "Suits by prisoners" was enacted and only months prior to Cochran & Campbell revising and putting into effect S.O.P. 5.4.1. not to mention that Chapter 33 governing county jails was abolished in the end of 1996 and county jails only had to develop a minimum of the Florida Model Jail Standards. With these two main laws/factors in play Cochran & Campbell were under the assumption that they could deny inmates their First Amendment Rights by revising S.O.P. 5.4.1. and save them both time and money as well. The Defendants named in

,tion inforced and upheld S.O.P. 5.4.1. even when it was brought to their attention

, S.O.P. 5.4.1. violated the Plaintiff's in this action rights. The Defendants in this
,ction refused to change such policy. Showing that the Defendants in this action totally
disregarded the Plaintiff's Rights. This done after numerous requests, grievances, and
letters, informing the Defendants that S.O.P. 5.4.1. violates the Plaintiff's Rights.
To further the Plaintiff's position on this issue Defendant Hitchcock claims in his
affidavit that, and I quote, " S.O.P.5.4.1. is also in place to ensure order within the
jail whereas if inmates were permitted to receive these materials, deputies would be
required to search and inspect each item entering the jail. This would encompass an
inordinate amount of time and preclude the deputies from focusing on the inmate population
of the jail". This shows that time and money are one of the main factors in Defendant
Hitchcock's reasons for upholding a ban on publications that violates the Plaintiff's
First Amendment Rights.

Defendants claim;    5.    Plaintiff has been in custody at the Broward County Main Jail since July

18, 1997. (support)

Plaintiff's response to (5), The Plaintiff states that he was booked into the Broward County
                    Main Jail on July 17, 1997, not July 18, 1997.

Defendants claim;  6.    Currently, Plaintiff has approximately 35 charges against him which are

pending trial. Until said charges are determined, Plaintiff will remain at the jail as a

pre-trial detainee. (support)

Plaintiff's response to (6), The Plaintiff agrees that he has numerous charges against him,
                    and that he will remain at the jail as he is now, as a pretrial
                    detainee, non-convicted, awaiting trial.

Defendants claim;    7.    On or about October 28, 1997, Plaintiff made his first inquiry as to how

he was to go about receiving books and/or magazines through the mail.[5]

Plaintiff's response to (7), The Plaintiff states that he made his first inquiry as to how
                    he was to go about receiving publications within the first
                    couple of weeks from the date he arrived at B.C.M.J. 7/17/97.

books and magazines from the publisher were not permitted into the jail and that is

why his request was denied.[6]

Plaintiff's response to (8), The Plaintiff agrees that in November 1997, the Plaintiff
received a response informing him that books and magazines
Gere not permitted into the jail and that is why his request
was denied.

Defendants claim; 9. On November 20, 1998, Plaintiff requested a copy of the rules which

govern the receipt of religious materials through the mail.[7]

Plaintiff's response to (9), Plaintiff filed two requests on November 20, 1998, one was
to the Mail Room & the other was to the Chaplain these two
requests are Plaintiff's Summary Exhibit #13 & #14.

Defendants claim; 10. On November 23, 1998, Superintendent William Hitchcock responded

to Plaintiff's request via memorandum and provided him a copy of the revision to

SOP 5.4.1. Hitchcock further informed Plaintiff that the remaining SOP's were

available to him in the law library.[8]

Plaintiff's response to (10), The Plaintiff agrees that on November 23, 1998
Superintendent William Hitchcock responded to one of
the Plaintiff's requests on the subject of publications.
Defendant Hitchcock's response is Plaintiff's Summary
Exhibit #16.

Defendants claim; 11. Plaintiff has been permitted to receive religious publications through the

mail while a pre-trial detainee at the Broward County Main Jail.[9]

Plaintiff's response to (11), See Plaintiff's response to (3), the Plaintiff from
7/17/97 until 3/5/99 was not allowed to receive religious
publications through the mail.

ıdants claim;      12.      On April 11, 1998, while Plaintiff was in his cell, he was observed

setting a fire while in possession of an unauthorized material.[10]  Plaintiff was

disciplined for said incident by receiving three (3) days in lockdown.[11],[12]

Plaintiff's response to (12), the incident that took place on April 11, 1998 has
                          no bearing on this action. This is do to the fact that
                          the classification points that were assessed for this incident
                          were removed after 90 days by classification. Inmates
                          classification points are increased by 4 points when
                          given a D.R. and every 90 days 7 points are deducted from
                          all inmates classification points upon being reviewed. The
                          Plaintiff will present this evidence/impeachment material
                          during trial, thus showing that the incident that was alleged
                          to have taken place on April 11, 1998 has no bearing on this
                          action, nor the Plaintiff's claims.

Defendants claim;      13.      On August 8, 1998, Plaintiff was relocated to the 8th floor of the jail

due to violent acts.[13]

Plaintiff's response to (13), Plaintiff admits that on August 8, 1998 he was relocated
                          to the 8th floor for a D.R. But on August 11, 1998 the
                          Plaintiff was released from the 8th floor to to the D.R.
                          he was given being dismissed by a Deputy that personally
                          witnessed the incident, and testified to the Plaintiff's
                          innocents. This incident has no bearing on the Plaintiff's
                          allegations in this action.

Defendants claim;      14.      On February 16, 1999, Plaintiff was relocated to the 8th floor of the jail

due to violent/disruptive behavior.[14]

Plaintiff's response to (14), The Plaintiff denies that on February 16, 1999 Plaintiff was
                          relocated to the 8th floor of the jail due to violent/disruptive
                          behavior.

trying to cook some food while in possession of an unauthorized object (metal

stinger).[15] Plaintiff was disciplined for said incident by receiving thirty (30) days in

lockdown. (support)

Plaintiff's response to (15), Plaintiff agrees with Defendant claim (15.) and states that
      he was placed in a non-violent lockdown for 28 days.

Defendants claim;   16.   On November 23, 1999, Deputy Wilcox obtained a file from Plaintiff

containing grievances, inmate request forms and commissary ledgers.[16]

Plaintiff's response to (16), The Plaintiff denies that on November 23, 1999 Deputy Wilcox
      obtained a file from Plaintiff containing grievances, inmate
      request forms and commissary ledgers. The Plaintiff states
      that on November 11, 1999 Deputy Wilcox received a file folder
      containing a law suit (this action), grievances, request forms,
      letters & legal work on Plaintiff's criminal cases, etc.

Defendants claim;   17.   Said file was obtained to investigate an alteration on the commissary

ledgers.[17]

Plaintiff's response to (17), The Plaintiff denies that said file was obtained to investigate
      an alteration on the commissary ledgers. The Plaintiff states
      that the file obtained by Deputy Wilcox from the Plaintiff on
      November 11, 1999, was obtained in order for Deputy Wilcox to
      make copies for the Plaintiff and return such same day.

DEfendants claim;   18.   After said investigation, Deputy McManus returned the file to Plaintiff

the same way it was received.[18]

Plaintiff's response to (18), Plaintiff denies Defendant's (18.) claim. The Plaintiff states
      that on or about November 23, 1999 Deputy McManus returned
      the file that the Plaintiff had given to Deputy Wilcox to make

copies for him. But said file that was returned to Plaintiff
by Deputy McManus was missing law suit (this action),
letters and legal work (defendant's criminal cases),
grievances, requests, letters, etc. And that Plaintiff in
this action informed Deputy McManus of such.

Defendants claim;    19.    As of June 8, 1998, Plaintiff's access to the law library has been as

follows:

> Monday from 7:30 am-11:45 am
> Tuesday from 7:30 am-11:45 am and 12:30 pm-2:30 pm
> Wednesday from 12:30 pm-2:30 pm
> Thursday from 7:30 am-11:45 am and 12:30 pm-2:30 pm

for a total of approximately 18 hours per week.[19],[20]

Plaintiff's response to (19), The Plaintiff denies Defendant's (19.) claim. The Plaintiff
states that on January 23, 1998 the Honorable Judge SUSAN
LEBOW signed an Order recommending that the Plaintiff in
this action be given a minimum of 17 hours per week in the
jails law library. Judge LEBOW'S Order was followed by the
jail and it's staff untill on or about 6/99. At that time
the Plaintiff received a inmate correspondence from Defendant
HITCHCOCK dated July 2, 1999, said correspondence granted the
PLaintiff in this action once again 17 hours per week in the
jail's law library, and was addressed to both acting
Lieutenants W. McPherson & Bechard compelling them to ensure
that the Plaintiff in this action receive 17 hours access per
week law library time as Ordered by the Honorable Judge LEBOW.
The Plaintiff then got 17 hours access to the law library
untill jail Deputies learned of this action the Plaintiff
was planning to file naming Defendant Hitchcoch as a Def.
Then on November 24, 1999 (the next day that Plaintiff had
file returned missing pleadings from this action, etc.) The
Plaintiff received a inmate correspondence from Defendant
Hitchcock, informing the Plaintiff that the matter of law
library would be sent to their legal department and that the
Plaintiff in this action would receive a response on Dec. 3,
1999. On or about Dec. 3, 1999 the Plaintiff received a
response dated Dec. 3, 1999, and such response came from
Defendant Hitchcock denying Plaintiff law library time.

**CONCISE STATEMENT OF MATERIAL FACTS, IN CHRONOLOGICAL ORDER, CONCERNING THE PLAINTIFF BEING PLACED IN A HIGH CUSTODY CELL, BEING DENIED ACCESS TO THE JAIL'S LAW LIBRARY, AND HAVING LEGAL DOCUMENTS CONFISCATED AND DESTROYED.**

1. Plaintiff has been in custody in the Broward County Jail as a pretrial detainee since July 17, 1997.

2. Upon the Plaintiff entering the Broward County Jail on July 17, 1997 the Broward County Department Of Corrections and Reh. had a ban on publications that was in effect and enforced and read as follows: 3/20/97 S.O.P. 5.4.1. (J)(1) Books, magazines, and news papers for inmates will not be accepted through the mail.

3. S.O.P. 5.4.1. (J)(1) dated 3/20/97 was enforced on all publication other then Christian religious publications which were allowed to be admitted both by mail and dropped of for inmates that wanted such. It should be noted that the Plaintiff in this action is Jewish by birth not Christian. And Jewish publications were denied at that time.

4. In October of 1997 the Plaintiff in this action received a REJECTED MAIL NOTIFICATION from the BROWARD SHERIFF'S OFFICE DEPARTMENT OF CORRECTIONS AND REHABILITATION for a U.A. BOOK (Non-Religious) in which the rejected mail notification informed the Plaintiff that his book (non-religious) was returned to sender. Other REJECTED MAIL NOTIFICATIONS were received by the Plaintiff on 10/29/????, and 9/10/99, denying Plaintiff other publications as well.

5. From 10/25/97 until 11/25/99 the Plaintiff in this action filed 12 requests, 6 grievances, and several letters concerning publications and receiving such at the Broward County Jail, all of which were denied. There were other requests, grievances, and letters written as well that were taken by Deputy Wilcox and never returned to the Plaintiff in this action, and those are not included in this number.

---

(1.) See Plaintiff's Summary Exhibit #1 (Jail's Computer Booking Printout)

(2.) See Plaintiff's Summary Exhibit #2 (S.O.P. Dated 3/20/97)

(3.) See Plaintiff's Summary Exhibit #3 (See attached affidavits)

(4.) See Plaintiff's Summary Exhibit #4 (See attached REJECTED MAIL NOTIFICAT)

(5.) See Plaintiff's Summary Exhibit #5-23 (Grievances,Requests, Letters, Etc)

6. On January 23, 1998 the Honorable Judge Susan Lebow signed an Order granting the
   Plaintiff in this action 17 hours per week access to the law library in the Broward
   County Jail. Shortly after the Plaintiff in this action received a Law Library Schedule
   giving/granting the Plaintiff 18 hours per week access to the jail's law-library.

7. The schedule was followed by the jail and the Plaintiff took every opportunity he
   was given to attend the law library untill approx. June of 1999 the Plaintiff was
   denied the scheduled access to the law library that he was granted for 18 hours, this
   due to shifts and personel changing positions in the jail.

8. Because of the changes in positions in the jail, and the Plaintiff in this action not
   getting his 17 hours per week in the law library as Court Ordered, the Plaintiff on
   6/24/99 sent a letter to Sgt. ADAMS and Deputy Wilcox, with copies to Director PATRICK
   TIGHE, and one of the Defendants in this action Superintendent/Captain WILLIAM HITCHCOCK,
   and the Plaintiff in such letter requested to have his Court Order and law library
   schedule honored so as the Plaintiff would have access of 17 hours per week in the
   jail's law library.

9. On July 2, 1999 one of the Defendants in this action Superindenent/Captain WILLIAM
   HITCHCOCK responded to the letter written by the Plaintiff dated 6/24/99. In WILLIAM
   HITCHCOCKS response titled INMATE CORRESPONDENCE dated July 2, 1999 HITCHCOK stated:

   The Subject inmate has a Court Order (see attached) that grants him access to the Law Library on
   a 17 hour a week basis. He currently has a total of 46 charges against him according to the
   Classification Staff who researched his files. Only a very few have been concluded in any form.
   See that Inmate Lawson receives the weekly 17 hour Law Library access as ordered by Judge
   Lebow on January 23, 1998. If you have time constraints you can not deal with, work with the
   Charlie shift to get him more access. Let me know if there are any other problems.

   CC:    Inmate Ross Lawson , 7-C-3
          File

---

(6.) See Plaintiff's Summary Exhibit #24 (Court Order Granting Law Library time)

(6.) See Plaintiff's Summary Exhibit #25 (B.C.M.J.'s law library schedule)

(7.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(8.) See Plaintiff's Summary Exhibit #27 (See Letter to Sgt. ADAMS & WILCOX)

(9.) See Plaintiff's Summary Exhibit #28 (See Def. HITCHCOCK'S Inm. CORRESP.)

10. The Plaintiff in this action was then given his 17 hours access to the Broward County Jail'S law library every week. The Inmate Correspondence written by Defendant HITCHCOCK was complied with even if some of the 17 hours per week needed to be made up by taking the Plaintiff to the law library on Charlie shift because Bravo shift did not have all the hours open to allow the Plaintiff to attend the law library on Bravo shift. This went on untill 10/5/99.

11. On 10/5/99 the Plaintiff in this action was given a D.R. for <u>non-violent</u> violations of the jail's rules and regulations.

12. On 10/5/99 after getting a D.R. for non-violent violations of the jail's rules and regulations the Plaintiff was then moved to non-violent lockdown unit 7/B/209 which housed inmates for non-violent D.R.s where as inmates that get D.R.s for violent rule violations go to the 8th floor lockdown (one man per room) lockdown.

13. The Deputy's that wrote the D.R. promised the Plaintiff in this action that he would not receive more then 15 days in lockdown for the D.R. that the Plaintiff received on 10/5/99, but the Plaintiff infact did get 30 days lockdown and served 28 of those thirty days in non-violent lockdown, getting out two days early for completing extra duty.

14. On 11/4/99 the Plaintiff was released two days early from his 30 day lockdown sentence and moved/transferred to 6/C/1-6-2, 6/C/1 is a lower custody level floor then the 7th floor, Plaintiff was moved to 6/C/1 due to classification's 45 day review and finding the Plaintiff at max custody level, not closed custody level, but max custody level as Plaintiff was assessed at 29 points.

---

(10.) See Plaintiff's Summary Exhibit #29 (See Comp. Print. Inm. Movement)

(11.) See Plaintiff's Summary Exhibit #30 (See Inmate Posting Sheet)

(11.) See Plaintiff's Summary Exhibit #31 (See Inmate Relocation Request Form)

(12.) See Plaintiff's Summary Exhibit #30 (See Inmate Posting Sheet)

(12.) See Plaintiff's Summary Exhibit #31 (See Inmate Relocation Request Form)

(12.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's & Inmates affidavits)

(13.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card 10/5/99)

(14.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card 11/4/99

(14.) See Plaintiff's Summary Exhibit #33 (See Inmate Relocation Request Form)

15. Prior to entering unit 6/C/1 Deputies searched the Plaintiff's property. Upon the Deputies **searching** Plaintiff's property, the Deputies found the original hand written/ruff draft of this action. Deputies made comments to the fact that Mr. Hitchcock (one of Defendants in ruff draft) will be told of the matter. And that even the Courts can't tell the jail what to do, officers run the jail, not the Courts!

16. Upon the Plaintiff being housed in unit 6/C/1, he was harassed by staff/ Deputies about the amount of legal work, and documents pertaining to legal matters. Do to this the Plaintiff contacted his family, and in turn the Plaintiff's family contacted the Broward County Jail's Classification department. The Classification Department then agreed/promised the Plaintiff's family that they were going to relocate the Plaintiff to a cell that he had previously was housed in so as his adjustment to inmate open population would be as smooth as possible, and so that he the Plaintiff would not be harassed any more concerning his legal work or issues surrounding such.

17. On 11/6/99 the Plaintiff in this action was relocated to his previous cell 7/C/3-9-1 per Classification. This done after a complete review was conducted on the Plaintiff and his Classification file.

18. On 11/6/99 after the Plaintiff had settled in to unit 7/C/3 with no problems, the shifts changed and do to acts of reprisal for no reason or truthful justification the Plaintiff was moved to the most secure/high risk/lockdown unit in the jail, unit 8/C/2-04.

---

(15.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(16.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

(16.) See Plaintiff's Summary Exhibit #34 (See Plaintiff's Family's Affidavit

(17.) See Plaintiff's Summary Exhibit #35 (See Inmate Posting Sheet)

(17.) See PLaintiff's Summary Exhibit #36 (See Classification Review Form)

(17.) See Plaintiff's Summary Exhibit #37 (See Inm. Relocation Request Form)

(18.) See Plaintiff's Summary Exhibit #32 (See Detainee Contact Card )

(18.) See Plaintiff's Summary Exhibit #26 (See Plaintiff's Affidavit)

19. Unit 8/C/2-04 does not allow inmated housed in it's unit to have access to the jail's
    law library, nor any movement unless chained and shackled and handcuffed to any where
    that inmate must go, such as Court and Medical etc. the 8th floor is the highest
    custody level floor in the Broward County's Jail System, and houses only the most
    violent dangerous inmates who violate the jail's rules and regulations with violent
    rule violations.

20. It should also be noted that the Broward County Main Jail's law library does not
    have a paralegal to assist or help inmates in any way, nor does it have an employee
    to do so.

21. On 11/6/99 upon the Plaintiff being placed in unit 8/C/2 the Plaintiff discovered
    that he would be denied access to the jail's law library and so forth. So the
    Plaintiff submitted a request to have access to the law library as designated by
    the Defendant Superintendent/Captain William Hitchcock on July 2, 1999. The request
    that the Plaintiff submitted was dated 11/8/99

22. Also on 11/8/99 the Plaintiff submitted a request asking for copies to be made.

23. On 11/10/99 again the Plaintiff submitted a request form begging to allow him access
    to the jail's law library so he could make copies, research, etc, etc,.

24. On 11/11/99 early in the morning the Plaintiff once again requested to have copies
    made.

---

(19.) See Plaintiff's Summary Exhibit #38 (S.O.P. 7.30-Adm.Segregation)

(19.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidavits)

(20.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidivits)

(21.) See Plaintiff's Summary Exhibit #38 (See Request Form 11/8/99)

(22.) See Plaintiff's Summary Exhibit #39 (See Request Form 11/8/99)

(23.) See Plaintiff's Summary Exhibit #40 (See Request Form 11/10/99)

(24.) See Plaintiff's Summary Exhibit #41 (See Request Form 11/11/99)

25. On 11/11/99, later in the day, Deputy Wilcox came to the 8th Floor and took papers
from the Plaintiff and inmate PERRY ARCHIBALD 50999349, to have copies made for them.
The Plaintiff's paperwork contained a hand written copy of the pleadings in this
action, grievances, requests, and letters & legal work that was to go to the
Plaintiff's attorney. All documents taken by Deputy Wilcox were promised to be copied
and returned with the mail later that day.

26. On 11/11/99 later during Charlie Shift, during when mail was being handed out, inmate
PERRY ARCHIBALD 50999349 received all his papers with copies made. Plaintiff asked the
Deputy about the papers that belonged to him and that his should be in the mail as
well, but the Deputy told the Plaintiff that there was nothing in the mail for him.

27. The Plaintiff immediately contacted his family, and in a short period of time, learned,
that his papers were confiscated and in Defendant Superintendent/Captain William
Hitchcock's possession. It should be noted that William Hitchcock was listed as a
Defendant in the hand written copy of the pleadings that the Plaintiff requested to
have copies made of by Deputy Wilcox, that were now in William Hitchcock's possession.

28. On 11/12/99 the Plaintiff submitted a grievance on the fact that he was being denied
access to the law library, and that it was all do to acts of reprisal for attempting
to file suit for violations of the Plaintiff's rights against the Defendants.

29. On 11/18/99 the Plaintiff submitted a request to Deputy Wilcox asking where and why
he has not had his legal papers returned to him, so forth etc.

30. On 11/19/99 the Plaintiff submitted a request to Defendant Superintendent/Captain
William Hitchcock asking why that he had the Plaintiff's legal work and papers, and
requesting them to be returned A.S.A.P.

---

(25.) See Plaintiff's Summary Exhibit #42 (See Inmates signed statement)

(25.) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's & Other Affidavits)

(26.) See Plaintiff's Summary Exhibit #26.3 (Plaintiff's & Other Affidavits)

(27.) See Plaintiff's Summary Exhibit #26,34 (Plaintiff's & Family Affidavit

(28.) See Plaintiff's Summary Exhibit #43 (See Grievance Form 11/12/99)

(29.) See Plaintiff's Summary Exhibit #44 (See Request Form 11/18/99)

(30.) See Plaintiff's Summary Exhibit #45 (See Request Form 11/19/99)

**31,** Then finally on 11/23/99 the Plaintiff received a INMATE CORRESPONDENCE from Deputy
J. McManus,Report Coordinator, Administrative Aid to Captain Hitchcock.·The Subject
of this letter was the file that Deputy Wilcox had taken from the Plaintiff on
11/11/99. The Correspondence read as follows:

> **The file Dep. Wilcox had taken from you contained Grievances, Inmate
> Request Forms, Commissary Ledgers. One of the Commissary Ledgers was
> altered. We noticed that on September 10, 1999 there was a deposit of $165
> put into your account. On the same day it was disbursed back out. From
> talking with your family member on November 22, 1999, you received money
> for a claim for some lost property. Why you would change this ledger we do
> not know. I will turn the file back to you today, the way we received it.**

32. When the Plaintiff received his file back it had the following missing, handwritten
pleadings on this action, requests, grievances, letters & papers to Plaintiff's
attorney .

33. Then on 11/24/99 the Plaintiff received a INMATE CORRESPONDENCE from the Defendant in
this action Superintendent/Captain William Hitchccock, on the subject of access to
law library. And that correspondence read as follows:

> **Your complaint about access to the Law Library was sent to our Legal
> Department. They have informed me that they would provide an answer on
> December 3, 1999.**

34. On 11/24/99 the Plaintiff submitted a grievance on the fact that the file that was
returned to the Plaintiff that belonged to the Plaintiff was missing criminal
paperwork, letters to attorney, questions, etc. and to please have them returned.

---

(31.) See Plaintiff's Summary Exhibit #46 (See Inmate Correspondence 11/23/99

(32. ) See Plaintiff's Summary Exhibit #26,3 (Plaintiff's, Other Affidavits)

(33.) See Plaintiff's Summary Exhibit #47 (See Inmate Correspondence 11/24/99

(34.) See Plaintiff's Summary Exhibit #48 (See Grievance Form 11/24/99)

35. Then on December 3, 1999 the Plaintiff in this action received a INMATE CORRESPONDENCE from the Defendant in this action Superintendent/Captain William Hitchcock, on the subject of law library, and such read as follows:

**I have consulted with our legal division regarding your court order requesting additional Law Library time. E. Williams, P.A. verified that the court order states that we are 'requested' to allow you to attend the Law Library 'according to our policy and procedures'. Our policy is to schedule law library time for the entire population on an equal basis with the exception of inmates who are pro se (who have no assigned attorney of record).**

**We feel that inmates who are pro se, obviously require additional law library time. We also feel that inmates who have attorneys of record are provided ample scheduled time for their legal needs. Any further infringement on the Law Library schedule would lessen the time for other regularly scheduled inmates and valid pro se cases. As you have an attorney of record and are not pro se, we are no longer inclined to provide you with any additional Law Library time.**

**You also asked why you could not have more than 20 copies of a particular set of documents. Our long standing rule, which was promulgated years ago according to F.S.S. 33-8 detention facility codes (see attached), limited copies to the number fifteen. We feel that 20 copies are a proper number of copies to allow for total access to the courts and all other entities that would require a copy. If you deem you still require more copies, I request a written list of all entities that you feel require a copy for your purposes. The copies will be allowed if the list is followed with proper justification for need of copies being made for those areas.**

36. Then on 12/15/99 the Plaintiff submitted a grievance on the fact that the Plaintiff's grievance he filed on 11/24/99 was never reponded to, and that the Plaintiff was still missing criminal paperwork, letters, noted discovery, pleadings in this action, etc. And the response that the Plaintiff received was that " Deputy Wilcox stated she had taken the file gave it to Captain Hitchcock, then I returned it to you." Signed by Deputy J. McManus.

---

(35.) See Plaintiff's Summary Exhibit #49 (See Inmate Correspondence 12/3/99)

(36.) See Plaintiff's Summary Exhibit #50 (See Inmate Grievance 12/15/99)

37. On 11/23/99 after the Plaintiff's family getting involved in the fact that the Plaintiff was housed on the 8th floor, and having outside intervention involved, the Plaintiff was transferred to unit 7/D/2-6-1-

38. Then on 12/17/99 while the Plaintiff was then housed in open population unit (7/C/2), the Plaintiff submitted a request to the law library requesting for the law library to place him on the list for all available times. The response that the Plaintiff received was as follows. "I was told you cannot come down with court orders."

39. Then in January 2000 the Plaintiff once again was able to redo the pleadings in this action, and filed such with the U.S.DISTRICT COURT, and such was received on 1/4/00.

---

(37.) See Plaintiff's Summary Exhibit #51 (See I.S.M.A.S.R.F.)

(37.) See Plaintiff's Summary Exhibit #26,34 (Plaintiff & Family Affidavits)

(38.) See Plaintiff's Summary Exhibit #52 (See Request Form 12/17/99)

(39.) See Plaintiff's Summary Exhibit #53 (See CIVIL DOCKET CASE# 00-CV-6009)

## MATERIAL FACTS IN DISPUTE

Wherefore the Plaintiff has shown that there are material facts in dispute. And such require a trial by jury. The Plaintiff in this action has verified that material issues and facts are in dispute by documents, affidavits, etc. that are attached and incorporated into this response to Defendant's Motion For Summary Judgement, and such are listed as Plaintiff's Summary Exhibits.

<center>MEMORANDUM OF LAW</center>

I. The Plaintiff has a First Amendment right to receive publications through
the mail from publisher's, bookstores, and distributors, a right which the Defend-
ant's have violated.

### A. Applicable Law

The Supreme Court cases addressing inmate's rights to receive publications
through the mail, Bell v. Wolfish, 441 U.S. 520 (1979) and Thornburgh v.
Abbott, 490 U.S. 401 (1989), both contemplate the First Amendment right of
prisoner's (convicted and pretrial detainee) to receive publications through
the mail, subject to reasonable penological interests.  The Court stated in
Bell that "our cases have held that sentenced prisoner's enjoy freedom of
speech and religion under the First and Fourteenth Amendments" Bell at 545.
Analyzing the restriction imposed upon pretrial detainee's in that case—
one which limited inmates to receiving hardbound books from publisher's
only—the Court in finding that restriction reasonable, looked at three (3)
factors: 1) Whether there was evidence that the jail officials had exager-
ated their response to the legitimate security problem; 2) Whether the reg-
ulation operated in a neutral fashion; and 3) Whether there were alternative
means of obtaining reading material that have not been shown to be burdensome
or insufficient.  Bell at 551.  The Court found that 1) The jail officials
had not exaggerated their response to the security problem; 2) That the
rule was content-neutral; and 3) That alternative means of obtaining read-
ing material in the jail did exist, and were not burdensome or insufficient.
The Court noted that the alternative means of obtaining reading material in-
cluded: 1) The availability of softcover publications through the mail from
publisher's and bookstores; 2) A "relatively large" reading library consist-
ing of 3000 hardbacks, 5000 paperbacks, and collections of donated books in
the various housing units.  Bell at 552.  The Court also underscored the fact
that inmates in that detention center were only housed for sixty (60) days or
less.  Since the detention center allowed its inmates to obtain softcover books
and magazines through the mail from publisher's and bookstores, and provided
them with a large reading library, the Court found no evidence of any "exager-
ratéd response".  Similarly, in Thornburgh v. Abbott, The Supreme Court upheld
a rule permitting censorship of individual publications where such were found

to be detrimental to the security, good order, or discipline of the institution,
but disallowed censorship where publications were banned because of the philoso-
phical, religious, political, sound or sexual content of the publication. Thorn-
burgh at 414-419. In evaluating the prison's publications policy. The Court not-
ed that the inmates possessed sufficient alternative means of obtaining reading
materials because the prisons policy permitted "a broad range of publications to
be sent, received, and read." Thornburgh at 417-418. The Court also mentioned
that "any attempt to achieve greater consistency by broader exclusions might it-
self run afoul of the second Turner factor (whether there are alternative means
of exercising the First Amendment right) Id. at 417, n.15. "Under Thornburgh v.
Abbott" wrote a recent federal circuit court, "inmates have a clearly established
right to receive publications that are not prohibited by reasonable penological
interests". Turner v. Stewart, 188 F.3d 515 (4th Cir. 1999).

In addition, federal circuit and federal district courts interpreting the de-
cisions in Bell and Thornburgh have struck down jail and prison policies that have
enacted wholesale bans on books, magazines, or newspapers. Thomas v. Leslie, 176
F.3d 489 (10th Cir. 1999) (ban on newspapers unconstitutional); Jackson v. Elrod,
881 F.2d 441, (7th Cir. 1989) (wholesale ban on hardbound publications violates
Bell standards); Martin v. Tyson, 845 F.2d 1451 (7th Cir. 1988) (global ban on
newspapers unconstitutional); Green v. Ferrell, 801 F.2d 787 (5th Cir. 1986) (ban
on newspaper subscriptions unconstitutional); Pepperling v. Crist, 678 F.2d 787
(9th Cir. 1982) ("blanket prohibition against receipt of publications by any pris-
oner comes a heavy presumption of unconstitutionality"); Kincaid v. Rusk, 670 F.2d
737 (7th Cir. 1982) ("maintenance of security and discipline do not justify the
wholesale prohibition of pictorial magazines, hardbound books, or newspapers");
Parnell v. Waldrip, 511 F.Supp 764 (W.D.N.C. 1981) (ban on receipt of paperback
books, magazines and newspapers violates Bell standards). Both Bell and Thornburgh,
centerplate the right to receive publications through the mail, subject only to the
limitations on the source (publishers and bookstores if hardbound, per Bell) or con-
tent (impermissable if detrimental to the security, order, or discipline of the in-
sttution, per Thornburgh). As the federal court stated in Brodes v. Seiter, 779 F.
2d 1181 (6th Cir. 1985) "we note that other courts of appeal have held that prisoners
possess First Amendment rights to receive printed publications by mail order or sub-
scription" ID. at 1181 (internal citations omitted). Further, as the court in Kincaid
v. Rusk, 670 F.2d 737 (7th Cir. 1982) held. "pretrial detainees, regardless of the

length of detention, suffer substantial deprivation of their First Amendment rights when access to newspapers, books, and magazines is arbitrarily circumscribed" Id., at 745.

B. Application of the law to the facts

The defendant's have clearly infringed upon the plaintiff's First Amendment rights by enacting and enforcing a wholesale ban on all non-religious publications ordered through the mail. As the foregoing discussion of applicable legal standards in Bell, Thornburgh and their progeny has shown, broad, wholesale ban on publications violate clearly established constitutional First Amendment law in the prison context. The defendant's ban is an "exaggerated response" to the alleged security problem because it prohibits the plaintiff from ordering any non-religious book through the mail— the sort of over exclusive prohibition which Bell and Thornburgh considered to be excessive. In addition, the fact that defendant's allow inmates to receive religious publications through the mail contradicts the alleged security and order rationale defendant's pro-offer as their reason for their ban on non-religious books. The defendant's fail to offer any evidence to show that religious publications are any different than non-religious publications, and pose any less a security and order threat yhan non-religious publications. Further, the defendant's do not present any actual evidence to show that publications received from publishers or bookstores have in fact constituted a security risk because of actual instances of contraband being discovered in said publications. The defendant's merely make speculative assertions (see Hitchcock Affidavit, page two) without presenting any concrete evidence. Such speculative assertions, without evidentiary basis, have been found to be nothing but "the piling of conjecture upon conjecture", Lyon v. Grossheim, 803 F.Supp 1538,1554 (S.D. Iowa 1992) ("prison officials relied soley on subjective conjecture and speculative concerns totally lacking a factual basis in this record"). Moreover, assuming, arguendo, that the defendant's publication ban is not "an exaggerated reponse" (which it is) to the alleged security and order problem, the defendant's still fail to satisfy the third factor in Bell requiring access to an alternative source of reading material that is not burdensome or insufficient. As the plaintiff has shown in his affidavits and complaint, the jail's leisure library is both burdensome and insufficient; it contains a repeatedly inadequate number of books that are worn, dated, and of no interest to the plaintiff, and is frequently unavailable to the plaintiff and other inmates (see Plaintiff's affidavits). And unlike inmates in Bell, plaintiff and other inmates at the Main Jail have no access to softcover publications available through the mail to remedy the unavailability of reading material on the jail's

bookcart. Accordingly, the Jail's "alternative"—the leisure library bookcart—
fails to meet the reasonable available alternative standard of Bell, and thus vio-
lates the plaintiff's First Amendment rights.

The defendant's in their Motion for Summary Judgement refer to the Florida Admin-
istrative Code §33-501.401 and Florida Statue §944.11. These references are unappro-
priate in the present context. They have to do with the State's Department of Correc-
tions, not municipal jails; they affect convicted prisoner's in state prisons, not
pretrial detainees in county jails. Furthermore, the State's Department of Correc-
tions, unlike the Broward County Main Jail, conforms to the standards of Bell and
Thornburgh; it allows convicted prisoner's to receive softcover publications from
publisher's and bookstores through the mail. See Florida Administrative Code §33-
3.012. The Broward County Main Jail, on the other hand, prohibits inmates from re-
ceiving any non-religious book through the mail, thereby violating the standards in
Bell and Thornburgh.

In receiving the applicable constitutional standards and applying them to the facts
of the instant case, it is more than evident that the Jail's publications ban and lei-
sure library alternative fail to measure up to the constitutional requirements of Bell
and Thornburgh. The defendant's alleged security and order rationale is speculative,
without any substantive factual basis, and is plainly vitiated by its policy on relig-
ious publications. Accordingly, the defendant's have violated the plaintiff's First
Amendment rights.

II. The defendant's are not entitled to qualified immunity as a matter of law.

A. Applicable Law:

A state official is entitled to qualified immunity to the extent that his conduct
"does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800,818 (1982).
That is, it must be "obvious to all reasonable government actors in the defendant's
place that 'what he is doing' violates federal law. Lassiter v. Alabama A&M Uni-
versity, 28 F.3d 1146,1149 (11th Cir. 1994) (en banc) "Clearly established law" in the
11th Circuit includes decisions by the United States Supreme Court, the Eleventh Cir-
cuit Court of Appeals, or the highest court of the state where the case arose". Jen-
kins v. Talladega City Board of Education, 115 F.3d 821,826-27, n.4 (11th Cir. 1997)

(en banc). The question the Court in the instant case must ask is: Whether a
reasonable jail official in the same circumstances as the defendant's could have
concluded that his actions—enacting, imposing, and enforcing a wholesale ban on
all non-religious publications sent and received through the mail—violated clear-
ly established constitutional law at that time.

B. Application of the law to the facts:

The review of applicable case law in section I.A., above demonstrates that at
the time the defendant's were enacting and enforcing their publication's ban again-
st the plaintiff, they were violating clearly established First Amendment rights
of the plaintiff's as enunciated in Bell and Thornburgh. Both cases were decided
by the U.S. Supreme Court and were controlling in the Eleventh Circuit at the time
the defendant's were enacting and enforcing their publications ban against the plain-
tiff. While there are no federal appellate cases involving publication bans in the
Eleventh Circuit, other federal courts have held publications bans, similar to the
one in the present case to be unconstitutional and have denied jail officials quali-
fied immunity because these bans violated clearly established rights as established
by Bell and Thornburgh. See Jackson v. Elrod, 881 F.2d 441,444-445 (7th Cir. 1989),
Broulette v. Starns, 88 F.3d 512 (9th Cir. 1999), Turner v. Stewart, 188 F.3d 515,
(9th Cir. 1999), and Thomas v. Leslie, 176 F.3d 489 (10th Cir. 1999). Defendant's
contention in their Motion for Summary Judgement that plaintiff has failed to show
that the defendant's have violated clearly established federal law is without merit.
The defendant's by enacting and enforcing their publications ban against the plain-
tiff, clearly violated the law set forth in Bell and Thornburgh prohibiting such
broad, over exclusive bans.

Accordingly the defendant's are not entitled to qualified immunity with respect
to their violations of plaintiff's First Amendment rights.

C. Application of the law to the facts: the Plaintiff's retaliation claim.

The First Amendment prohibits state officials from retaliating against prisoners
for exercising the right of free speech. Thomas v. Evans, 880 F.2d 1235 (11th Cir.
1989), Wright v. Newsome, 795 F.2d 964 (11th Cir. 1986). To state First Amendment
claim for retaliation, the inmate need not allege violation of a separate and dis-
tinct constitutional right. Thomas at 1242. Rather, the focus is on the act of

retaliation itself, not some alleged violation of a constitutional right. __Thomas__
at 1242. Acts of retaliation in cases in the 11th Circuit include being transferred
__Bridges v. Russell,__ 757 F.2d 1155 (11th Cir. 1985),
and having one's legal materials confiscated, __Thomas v. Evans,__ at 1242. In the lat-
er case, where a prisoner's legal materials have been confiscated, a denial of access
to the courts violation may also arise. __Id.,__ at 1242.       :

In the instant case, the defendant's violated clearly established Eleventh Cir-
cuit federal law by retaliating against the plaintiff for his exercise of free
speech. The plaintiff filed grievances and letters of complaint against the defend-
ant's. In retaliation, the defendant's transferred plaintiff numerous times, denied
him access to the law library, and confiscated his legal materials. In doing so,
the they violated the clearly established law in __Thomas v. Evans__ and the other a-
bove mentioned cases. Accordingly, defendant's are not entitled to qualified im-
munity as a matter of law.

## CONCLUSION

Based on the __Plaintiff's Memorandum of Law, Plaintiff's Response to Defendant's__
__Concise Statement of Material Facts, Concise Statement of Material Facts in Chron-__
__ological Order Concerning the Plaintiff being place in a High Custody Cell, Being__
__Denied Access to the Jail's Law Library, Having Legal Documents Confiscated and De-__
__stroyed, Plaintiff's Summary Exhibits 1 thru 53.__ The Plaintiff in this action prays
that this Honorable Court will rule that there are material facts in dispute and
grant a trial by jury. That this Honorable Court deny the Defendant's Qualified
Immunity Protection in this matter. That this Honorable Court deny in its entirety
the Defendant's, JENNE, BITCHCOCK AND BROWARD COUNTY'S, MOTION FOR SUMMARY JUDGEMENT
AND INCORPORATED MEMORANDUM OF LAW.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct and complete copy of the foregoing was sent
via U.S Mail this 26th day of November, 2000 to ADORNO & ZEDER, P.A. Counsel for Defendants
888 S. E. 3rd AVE. SUITE 500 Fort Lauderdale, FL. 33335-9002.

BY _Ross Jay Lawson_
ROSS JAY LAWSON FL-97-9905
P.O. BOX 9356
Fort Lauderdale, Fl 33311

RECEIVED

NOV 3 0 2000

ADORNO & ZEDER