UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6009-CIV-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

ROSS JAY LAWSON,                    :

    Plaintiff,                 :

v.                                  :                   REPORT OF
                                              MAGISTRATE JUDGE

KEN JENNE, et al.,                  :

    Defendants.                :

FILED by _____ D.C.
MAG. SEC.

MAY 2 5 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

I. <u>Introduction</u>

In this <u>pro se</u> civil rights action pursuant to 42 U.S.C.
§1983, the plaintiff, Ross Jay Lawson, has filed an amended
complaint (DE# 7), seeking injunctive relief and damages from three
defendants: 1) Ken Jenne, Sheriff of Broward County; 2) Captain
William G. Hitchcock, Superintendent at the Broward County Main
Jail ("BCMJ"); and 3) the Broward County Department of Corrections
and Rehabilitation ("BCDCR"). Jenne and Hitchcock are sued in both
their individual and official capacities (DE# 7, pp. 1 and 2).

The BCDCR is not a person within the meaning of §1983, and
cannot sue or be sued in a §1983 suit for damages. As to the BCDCR,
the amended complaint should be dismissed pursuant to 28 U.S.C.
§1915(e)(2)(B)(ii), for failure to state a claim upon which relief
may be granted.

The gravamen of the amended complaint is plaintiff Lawson's
allegation that at the BCMJ, pursuant to official jail policy,
there is a total ban on receipt through the mail of publications by
him and other inmates, apart from some religious publications.
Lawson alleges that he has been denied the right to receive



"publications sent to him, correspondence courses and self help booklets, novels, etc.," both by mail and hand delivery.

Lawson alleges that the policy regarding receipt of publications through the mail, as applied to him, violates his rights under the First Amendment. In regard to this claim, Lawson further alleges that although an exception to the total ban has been instituted to permit inmates to receive religious materials through the mail, he sought "to have religious books sent to him from the publisher at his own cost because he is Jewish and the Jail does not provide for this," and defendant Hitchcock responded by interoffice memorandum stating that there was a total ban on publications and denied the plaintiff's request.

Plaintiff Lawson also alleges that he was denied access to the law library at the BCMJ, moved to a high security cell, and that legal documents confiscated by Deputy Wilcox, upon instructions from defendant Hitchcock, were destroyed, including a copy of the original complaint in this lawsuit.

In short, the plaintiff's claims are that: 1) at the BCMJ there is a total ban on the receipt of publications through the mail, apart from an exception for religious materials, which the plaintiff alleges has not been applied equally to all inmates because he has been denied the right to receive publisher-mailed materials pertaining to the Jewish faith which is his religion; 2) he has been denied access to the law library, and thereby deprived of access to the Courts; 3) he has been segregated from the general inmate population and confined to a high security cell; and 4) he

2

was denied access to the courts when a file containing documents was taken from him, and was returned with documents missing.

This Cause is before the Court upon a joint motion for summary judgment by the defendants (DE# 30) with supporting exhibits and affidavits attached.

## II. Discussion

### A. The Motion for Summary Judgment (DE# 30), and the Plaintiff's Response (DE#s 33 and 34)

In their motion (DE# 30) the defendants argue that they are entitled to summary disposition of the plaintiff's claims in their favor because: (1) the plaintiff fails to present evidence which contradicts the defendants' showing that the ban on publications except for religious materials is based on concerns for maintenance of security and order in the jail and is applied equally across the board to all inmates; 2) the plaintiff has been denied direct access to the law library only when he is in lock down for disciplinary violations, and that he otherwise is permitted and scheduled for use of the law library for 18 hours per week; 3) the plaintiff has been assigned to a high custody cell on the 8th Floor of the jail based on his violent and/or disruptive behavior; 4) a file containing documents belonging to the plaintiff was temporarily confiscated for inspection and then was returned to the plaintiff unaltered; and 5) they are entitled to qualified immunity.

In opposition to the defendants' motion for summary judgment, the plaintiff has filed a response (DE# 34), to which the defendants have filed a reply (DE# 38). The defendants also filed

3

a motion (DE# 39) to strike four affidavits submitted by the plaintiff in his response to the motion for summary judgment [the affidavits of inmates John Judd, Michael Consigilo, Terrell Sessions, and Jeffrey Gottman] on grounds that the four affidavits are not based on personal knowledge, and that Judd's affidavit contains hearsay. The plaintiff filed a response to the motion to strike (DE# 41), and the defendants filed a reply (DE# 42). A separate Order has been entered in which the motion to strike (DE# 41) is denied, noting that the affidavits by Judd, Consiglio, Sessions, and Gottman were not considered by the undersigned in conjunction with this report and recommendations.

### B. The Law of Summary Judgment, and Notice to the Plaintiff

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a

4

> complete failure of proof concerning an
> essential element of the non-moving
> party's case necessarily renders all
> other facts immaterial. The moving
> party is "entitled to judgment as a
> matter of law" because the non-moving
> party has failed to make a sufficient
> showing on an essential element of her
> case with respect to which she has the
> burden of proof. (Citation omitted).

Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, in this case the plaintiff, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992).

On October 25, 2000, an "Order Instructing Pro Se Plaintiff Concerning Response to Motion for Summary Judgment" (DE# 31) was entered informing the plaintiff of his right to respond to the defendants' motion for summary judgment, and instructing him regarding the requirements under Rule 56 for a response to such a motion.

## C. The Plaintiff's Claims
### 1. The Alleged Ban on Publications

In regard to the claim relating to the alleged ban on receipt of publications at the BCMJ, the defendants' motion for summary judgment should be denied because as to this claim they have not met their initial burden of showing that there is no genuine issue as to material fact.

The Courts have held that inmates do not forfeit all of their First Amendment rights upon their incarceration, but that a prison rule may infringe on the inmate's First Amendment rights if to do so is necessary to protect the governmental interest in security, order or rehabilitation, and if the rule is no greater than necessary to protect those legitimate interests. Procunier v. Marinez, 416 U.S. 396, 413-14 (1974); Pell v. Procunier, 417 U.S. 817, 822-23 (1974). See: Turner v. Safley, 482, U.S. 78, 87 (1987) (the relevant inquiry is whether the prison regulation that burdens a fundamental right is reasonably related to legitimate penological objectives of the corrections system, or whether it represents an exaggerated response to those concerns).

While enforced idleness, alone, has been held in the prison context to not constitute cruel and unusual punishment, see Toussanint v. McCarthy, 801 F.2d 1080, 1107 (9 Cir. 1986), depending upon the circumstances involved, the failure to provide general reading material to inmates may or may not offend the constitution.

It is well settled that the First Amendment to the Constitution protects the right to receive information and ideas, Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 390 (1969); Stanley v. Georgia, 394 U.S. 557, 565 (1969), and that the prohibition of virtually all reading materials has been held to deprive jail inmates of that right, Parnell v. Waldrep, 511 F.Supp. 764, 768 (D.C.N.C. 1981); Payne v. Whitmore, 325 F.Supp. 1191 (N.D.Cal. 1971). Cf. Perry v. Barton, No. C 92-2021 BAC, 1994 WL 374551, at *2 (N.D.Cal. June 29, 1994). See Pippins v. Adams County Jail, 851 F.Supp. 1228, 1233 (C.D.Ill. 1994) (holding, in a case where a pretrial detainee alleged that the jail did not provide him sufficient access to recreational reading materials, that the plaintiff's §1983 complaint did not state a claim that he was exposed to conditions amounting to "sensory deprivation" where plaintiff admitted that the jail provided soft-cover books, although he was dissatisfied with the number of books available, the plaintiff was aware that the jail permitted him to obtain reading materials from the outside, but he never ordered books with his own funds, or asked his family to bring him books of his liking, and additionally the plaintiff was able to watch television and was able to socialize with his fellow inmates as well as with visitors).

Key among the governmental interests which form a legitimate basis for suppression or restriction of inmates' First Amendment rights is the need to maintain institutional order and security. See Bell v. Wolfish, 441 U.S. 520, 550-51 (1979); Pell v. Procunier, 417 U.S. 817, 823 (1974).

The law of this Circuit requires that restrictions barring admission of publications sent through the mail to correctional

institutions must be viewed in light of whether admission of the
materials sought to be introduced by the inmate through the mail
posed a risk to security or order of the institution. <u>See</u> <u>Vodicka</u>
<u>v. Phelps</u>, 624 F.2d 569 (5 Cir. 1980); <u>Guajardo v. Estelle</u>, 580
F.2d 748 (5 Cir. 1978). The Eleventh Circuit, in the en banc
decision of <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir.
1981), adopted as precedent the decisions of the former Fifth
Circuit decided prior to October 1, 1981.

In the <u>Parnell</u> case, <u>supra</u>, the defendant Sheriff, C.L.
Waldrep, in an attempt to justify a ban on reading material, said
that jail inmates used paperback books, magazines, and newspapers
to plug toilets and start fires. The Court found that the Sheriff's
decision to ban such materials was an exaggerated response to those
problems, if they in fact existed, because during the pendency of
the case the policy was relaxed to allow newspapers and magazines
into the cell areas, and the Sheriff later reported that no
incidents of plugging toilets and starting fires had occurred after
he implemented the changes. The absence of incidents affecting the
security and order demonstrated that the original policy was not a
"reasonable 'time, place, and manner' regulation to further a
legitimate governmental interest." <u>Parnell</u>, <u>supra</u> 511 F.Supp. at
768 (quoting <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 115
(1972)). The Court in <u>Parnell</u> further noted that short of banning
receipt of softbound publications in response to concerns regarding
potential problems of plugged toilets and fire hazzards, there are
many possible alternatives to effect institutional control and
security, such as "more vigilant supervision of inmates by jail
deputies to prevent destructive activity," or a system making each

8

inmate accountable for the softbound materials in his possession, such as a "checkout system." Id. at 768.

In this case, the copy of the BCMJ SOP §5.4.1 filed as an exhibit by the defendants shows that there is a ban at the institution on receipt by inmates through the mail of all books, magazines, and newspapers. (Exhibit, DE# 30 at p. 26, SOP, §5.4.1., ¶J.1.). The only exception is that soft covered religious materials may be ordered by the inmate directly from the publisher.

The defendants acknowledge that there exists an exception for receipt of religious materials through the mail, because they state that "the plaintiff has been permitted to receive religious publications through the mail while a pretrial detainee at the Broward County Jail." (DE# 30, p. 4, ¶11). The SOP states that a variety of outside publications for inmates "will be ordered by each facility and made available to inmates through the Inmate Leisure Library." (Id. at ¶J.2.). The SOP limits the amount of reading material that may be retained in the cell to 4 items, but religious materials are excepted from that limit. (Id. at ¶J.3.). The stated reason that inmates may not accumulate printed material in their cells is that it may "pose a fire hazard in their housing area." (Id. at ¶J.4.).

The defendants ignore the plaintiff's claim and allegation that although an exception for receipt of religious materials through the mail exists, he has been denied the right under the exception to order at his own expense materials from publishers relating to the Jewish faith which he practices.

9

The defendants argue that the plaintiff and other inmates have access to reading materials from the leisure library, and further argue that "plaintiff's assertion that the leisure library is burdensome and inefficient...are merely conclusory assertions with no evidence." (DE# 34, p. 4).

Although research reveals no Eleventh Circuit case concerning limitations on jail policies restricting receipt of recreational reading material for inmates, the Supreme Court has held, as noted supra, that the Constitution protects the right to receive information and ideas, Red Lion Broadcasting Co. v. FCC, and Stanley v. Georgia, supra, and that restrictions on receipt of publications by inmates through the mail must be for the purpose of furthering a legitimate governmental interest, such as maintenance of institutional security.

The defendants argue, as supported by the affidavit of defendant Hitchcock (DE# 30, Ex. A), that the reason for the ban on receipt of books, periodicals, and newspapers is (1) that there exists a security risk because weapons or drugs might be smuggled through the mail; and 2) publications pose a threat to the Order of the jail because the deputies would spend hours searching and inspecting every publication that enters the jail and this would take them away from their main purpose, guarding the jail and inmates.

The plaintiff Lawson argues that the BCMJ policy, as applied to him, should be ruled unconstitutional by the Court.

In this case a determination of whether the restrictions alleged by the plaintiff Lawson constitute a burden on the First

10

Amendment rights asserted, without furthering legitimate institutional goals of security, order, or rehabilitation in this case requires further factual development of the record.

In particular, the record requires further factual development concerning whether the existing ban on receipt through the mail of publications by BCMJ inmates including the plaintiff poses a security risk, and if so, how. If Broward County inmates are inclined to import weapons and drugs into the main jail, as asserted by the defendants, it is unclear how the risk of this occurring in non-religious books, magazines, and newspapers from publishers which are banned would be any different from the risk of this occurring with religious publications from publishers which are not banned.

The record also requires further factual development concerning how or to what extent the lifting of the existing ban would threaten institutional order, as asserted by the defendants. They argue that permitting non-religious publications through the mail would burden corrections staff by causing them to "search and inspect each and every item entering the jail." (DE# 30, Affidavit of William Hitchcock at ¶12). It is unclear based on this statement how security or corrections deputies would be prevented from focusing on the inmate population, since SOP 5.4.1 §K.3 indicates that there are mail clerks who process mail, that equipment exists for the scanning of packages, and that there is a "scanner" deputy to perform that function.

Despite the exception allowing inmates to order religious materials from publishers, no such exception is made to accommodate

the plaintiff's or other inmates' interests in non-religious materials which are not otherwise available through the leisure library at the jail.

The plaintiff's allegations and exhibits suggest that he has been denied access to educational and recreational reading materials because he is not allowed to receive them by mail, and he alleges that he has been denied permission to order religious materials pertaining to his religion, the Jewish faith, where no such materials are available to him in the jail, and where other inmates are permitted to order religious materials from publishers, as has been acknowledged by the defendants.

In short, the defendants have not met their initial burden of showing that with respect to the publication ban issue, there is no genuine issue as to any material fact. As to this claim, the defendants' motion for summary judgment should be denied. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The defendants argue that they are entitled to qualified immunity in relation to the individual capacity claims against them.

In regard to the issue of qualified immunity, law binding in the Eleventh Circuit existed at the time of the deprivations alleged, which clearly established that First Amendment rights include the right to receive information and ideas, and that restrictions on receipt of publications by inmates through the mail must further a legitimate governmental interest such as maintenance

12

of security.[1] <u>Red Lion Broadcasting Co.</u>, <u>Stanley</u>, <u>Vodicka</u>, <u>Guajardo</u>, and <u>Bonner</u>, <u>supra</u>.

In regard to the claim concerning the ban on publications it cannot be determined at this juncture whether the defendants Jenne and Hitchcock are entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11 Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11 Cir. 1996). As to these two defendants, that determination can be made only after further factual development of the case. The determination whether the defendants may be entitled to qualified immunity cannot be made based on the current record.

## 2. <u>Access to the Law Library</u>

The plaintiff alleges denial of direct access to the law library at the BCMJ. (Amended Complaint, p. 4, ¶10).

The defendants argue that as this claim they are entitled to summary judgment because the plaintiff has been provided access to the law library at the BCMJ. In their motion (DE# 30, pp. 5-6) they state that the plaintiff has been permitted approximately 18 hours per week in the law library. In his affidavit in support of

---

[1]    The Court of Appeals for the Eleventh Circuit has held that in this Circuit the law can be "clearly established" for qualified immunity purposes, "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." <u>Jenkins v. Talladega City Bd. of Educ.</u>, 115 F.3d 821, 826-27 n. 4 (11 Cir. 1997) (en banc).

the motion for summary judgment, William Hitchcock states that during his stay at the BCMJ the plaintiff has had personal access to the law library for between 18 and 25 hours each week, with exception of the time that he has been in lockdown on the Eighth Floor. Inmates on lockdown are permitted to leave their cell only one hour per day, and while on that status the plaintiff has not been permitted direct library access, but has been permitted to request and receive information from the library through a third person. While in the general inmate population the plaintiff is permitted to visit the law library approximate 25 hours per week. (DE# 30, Ex. A, Affidavit of William Hitchcock at ¶¶13-16).

In his response to the motion for summary judgment the plaintiff argues that on January 23, 1998 Broward Circuit Judge Lebow entered an Order recommending that he be permitted a minimum of 17 hours per week in the law library. He alleges that this has not always been complied with while he is in the general inmate population, that he has been denied direct library access while on lockdown and or disciplinary confinement, and that in late 1999 he was informed that because records showed that he had "an attorney of record" to defend him in state criminal proceedings that his requests for additional law library time, where such requests would prevent use of the facilities by other inmates who were proceeding pro se. He also alleges that the number of copies he could request was limited.

The defendants have shown through their motion and the affidavit of William Hitchcock that when he is not on lockdown or in disciplinary confinement the plaintiff has had access to the law library, and that when he has been on confinement status that he

14

has had indirect access to library resources. The differences in facts argued by the parties are not material. This is because in the amended complaint, and in his arguments and documents in response to the motion for summary judgment, the plaintiff has not alleged or made a showing of facts which satisfy the requirements for establishing a claim of denial of access to the Courts under the landmark Supreme Court cases of <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) and <u>Bounds, Correction Commissioner v. Smith</u>, 430 U.S. 817 (1977).

Although prisoners have a constitutional right to effective access to the courts <u>see</u>: <u>Lewis v. Casey</u>, and <u>Bounds, Correction Commissioner v. Smith</u>, <u>supra</u>, that right is not without limits. It has been held to include reasonable access to a law library or adequate assistance from persons trained in the law. <u>Bounds</u>, <u>supra</u>; <u>Straub v. Monge</u>, 815 F.2d 1467 (11 Cir. 1987); <u>Wainwright v. Davenport</u>, 697 F.2d 992 (11 Cir. 1993). There is no requirement, however, that inmates have direct access to the law library. An inmate can, for example, request the assistance of inmate law clerks if they are available, and/or obtain materials by filing requests to the local institution's law library.

Moreover, to establish a denial of access to the Courts, a plaintiff must show prejudice from the alleged constitutional violation. <u>Lewis v. Casey</u>, <u>supra</u>; <u>Cooper v. Delo</u>, 997 F.2d 376 (8 Cir. 1993); <u>Berdello v. Delo</u>, 972 F.2d 204 (8 Cir. 1992); <u>Chandler v. Baird</u>, 926 F.2d 1057, 1062-63 (11 Cir. 1991); <u>Henthorn v. Swinson</u>, 955 F.2d 351, 354 (5 Cir. 1992); <u>Richardson v. McDonnell</u>, 841 F.2d 120, 122 (5 Cir. 1988).

In addition, the case of <u>Lewis v. Casey</u>, <u>supra</u>, makes clear that not just any prejudice will suffice. In <u>Lewis v. Casey</u>, the Supreme Court emphasized that it is vital to a claim of denial of access to the courts for the plaintiff to specifically demonstrate how he was harmed and prejudiced with respect to any litigation in which he was involved, <u>Id.</u>, 518 U.S. at 349-353. It is not sufficient to merely allege, for example, the denial of access to a law library, even if the denial is ongoing in nature. <u>Id.</u>, at 353 n.4. The Court also stated that "the injury requirement is not satisfied by just any type of frustrated legal claim." <u>Id.</u>, at 354. Rather, the plaintiff must show that he was prejudiced in a criminal appeal, in a post-conviction proceeding, <u>Id.</u>, or in a civil rights action in which he sought "to vindicate 'basic constitutional rights.'" <u>Id.</u> at 354 (quoting <u>Woolf v. McDonnell</u>, 418 U.S. 539, 579 (1974)).

In his pleadings in this case the plaintiff alleges no facts to show that he was prejudiced in any state criminal proceeding.

Moreover, the plaintiff has alleged no facts to show that he was denied access to the courts in connection with any civil lawsuit involving basic constitutional rights; and even assuming *arguendo* that claims involving such rights were raised by him in a civil suit, he has alleged no facts indicating that any such claims have been dismissed due to the alleged actions of the defendants named in this case. Lawson has failed to allege facts showing that he suffered prejudice of the kind required under <u>Lewis v. Casey</u> to establish a claim of denial of access to the courts.

16

3. <u>Placement in Confinement</u>

The plaintiff alleges in the amended complaint that he was "moved to a high custody cell," without due process (Amended Complaint, p.4 at ¶10).

The defendants in their motion to summary judgment and supporting exhibits argue that during his incarceration at the BCMJ the plaintiff has on more than one occasion been placed in lockdown for failure to adhere to rules and regulations of the jail. Specifically, the defendants argue that on August 8, 1998, the plaintiff was relocated to the 8th Floor of the jail due to violent acts (DE# 30, Motion at p. 4; Exhibit, DE# 30 at p. 28); and that on February 16, 1999, the plaintiff was relocated to the 8th Floor of the jail "due to violent/disruptive behavior" (DE# 30, Motion at p. 5; Exhibit, DE# 30 at p. 29). The defendants also cite incidents on other dates in which they argue that the plaintiff was charged with starting a fire in his cell on April 11, 1998, and with being in possession of a stinger made from hair clippers which he was using to cook food over an open flame in his cell on October 5, 1999. The disciplinary report relating to the latter incident indicates that the plaintiff first begged the charging officer not to give him a disciplinary report, and then tried to bribe the charging officer to give him only 15 rather than 30 days of lockdown, by offering the officer an electric motor used to make tatoos. (Exhibits, DE# 30 at pp. 20-22).

In his response the plaintiff argues in part that in conjunction with his August 1998 confinement he was released from the Eighth Floor on August 11, 1998, after three days confinement,

17

because an officer who witnessed the incident which resulted in the confinement came forward and stated that the plaintiff was innocent of the charge.  In his response he denies that he was relocated to the 8th Floor of the jail due to violent or disruptive behavior.

The documentation of record relating to these incidents is incomplete.  In regard to the claim that the plaintiff was denied due process in conjunction with his placement in a high custody cell at the BCMJ, there remains a genuine issue as to material facts, and as to this claim summary disposition of the amended complaint is not appropriate. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>. As to this claim, a determination concerning whether the defendants might be entitled to qualified immunity as they assert cannot be made based on the current record. <u>See</u> <u>Harlow v. Fitzgerald</u>, <u>Flores v. Satz</u>, and <u>Foy v. Holston</u>, <u>supra</u>.

## 4. <u>Confiscation of Documents, Denial of Access to the Courts</u>

In the amended complaint the plaintiff alleges that on an unspecified date "he had his legal documentation and important papers confiscated by defendant William Hitchcock through Deputy Wilcox, and has had much of such papers destroyed, including but not limited to the Plaintiff's Original on this suit." (Amended Complaint, p. 4 at ¶10).

From the defendants' motion for summary judgment, and supporting affidavits of William Hitchcock (DE# 30, Ex. A), Angela Wilcox (DE# 30, Ex. B), and Jean McManus (DE# 30, Ex. C), and the plaintiff's response (DE# 34), it is apparent that the incident in

question occurred in November of 1999, but the parties do not agree
on the date, nor do they agree on what occurred.

The affidavits submitted in support of the defendants' motion
for summary judgment (DE# 30, Exs. A-C) indicate that on November
23, 1999, the plaintiff Lawson gave Officer Wilcox a file and asked
Wilcox to "make copies of his grievances and request slips which
were inside." While handling the documents Officer Wilcox noticed
that commissary ledgers that were contained in the file appeared to
be altered, and she brought the matter to the attention of
defendant Hitchcock. After Hitchcock conducted an investigation, he
gave the file to Officer McManus to return to the plaintiff. Wilcox
states that the file was turned over to Officer Hitchcock in the
same condition as Wilcox had received it from Lawson. Hitchcock,
Wilson, and McManus all state that they did not keep or destroy any
documents that were in the file.

The defendants argue in their motion for summary judgment that
the file contained "grievances, inmate request forms and commissary
ledgers," (DE# 30, p. 5), and that based on the officers'
affidavits the file was returned to the plaintiff the same way it
was received.

In his response, the plaintiff argues that the file was
obtained from him on November 11, 1999, and that it contained "a
lawsuit (this action), grievances, request forms, letters, and
legal work on plaintiff's criminal cases, etc." The plaintiff
denies that the file was returned to him in the same condition in
which it was taken. In pertinent part, he alleges that a copy of

the complaint in this lawsuit was missing when the file was returned to him.[2]

Despite the apparent discrepancies regarding the date on which the file was taken from the plaintiff, and whether items were removed while the file was not in the plaintiff's possession, it is apparent, even taking the plaintiff's allegations as true, that the defendants are entitled to summary judgment on this claim.

Prisoners have a constitutional right to effective access to the courts. Lewis v. Casey, Bounds v. Smith, supra; Wanninger v. Davenport, 697 F.2d 992 (11 Cir. 1983). The right of prisoners to have effective access to the courts, Bounds, Lewis, and Wanniger, supra, in addition to reasonable access to a law library or adequate assistance from persons trained in the law, Bounds, supra; Straub v. Monge, 815 F.2d 1467 (11 Cir. 1987); Wainwright v. Davenport, 697 F.2d 992 (11 Cir. 1993), also includes the right not to have legal materials confiscated and/or destroyed by prison officials. Wright v. Newsome, 795 F.2d 964, 968 (11 Cir. 1986). However, access to and use of legal materials may be reasonably restricted consistent with the demands of prison administration. Turner v. Safley, 482 U.S. 78, 79 (1987); Hoppins v. Wallace, 751 F.2d 1161 (11 Cir. 1985); Wainwright v. Davenport, supra.

---

[2]    In the amended complaint, and the plaintiff's documents in response to the defendants' motion for summary judgment there is no suggestion or allegation that the plaintiff was prejudiced in any way in his state criminal proceedings in relation to his claim that unspecified legal work pertaining to his criminal cases also was removed from this file, and not returned. Apart from reference to a copy of the complaint in this §1983 case, there is no factual allegation by the plaintiff identifying any particular document or documents which were not returned to him.

20

When prison officials interfere with that prisoner's access to active legal files by either confiscating or destroying legal materials, there must be an intent on the part of the official to thwart the prisoner's access to the courts, or at a minimum, reckless indifference to a foreseeable disruptive effect. See, e.g. Simmons v. Dickhaut, 804 F.2d 182, 184 (1 Cir. 1986); Carter v. Hutto, 781 F.2d 1028, 1031-32 (4 Cir. 1986); Patterson v. Mintzes, 717 F.2d 284, 286-88 (6 Cir. 1983).

Moreover, where a prisoner's claim that he has been denied access to the courts involves an alleged deprivation of a minor or short-lived nature, or where it involves an alleged deprivation of access to resources other than Bounds' core concern of actual legal assistance, courts require him to demonstrate that he suffered an actual injury as a result. Chandler v. Baird, 926 F.2d 1057 (11 Cir.1991), and cases cited at 1062 n. 3; see also, Strickler v. Waters, 989 F.2d 1375 (4 Cir. 1993), and cases cited at 1382 n. 10; Sands v. Lewis, 886 F.2d 1166 (9 Cir. 1989); Hoppins v. Wallace, 751 F.2d 1161 (11 Cir. 1985).

In other words, to prove a denial of access to the courts, an inmate must show "some quantum of detriment" caused by the challenged conduct of state officials, resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation. Jenkins v. Lane, 977 F.2d 266, 268 (7 Cir. 1992), quoting Shango v. Jurich, 965 F.2d 289 (7 Cir. 1992). To show "some quantum of detriment," the complaint must allege specific facts such as court dates missed, an inability to make timely filings, or the loss of a case that otherwise could have

been won.  <u>Martin v. Davies</u>, 917 F.2d 336, 338 (7 Cir. 1990), <u>cert.</u> <u>denied</u>, 501 U.S. 1208 (1991).

In this case, the plaintiff Lawson alleges that jail officials removed materials from a file belonging to him.  The sole document specifically identified by the plaintiff as being taken and not returned is a copy of a complaint in this case. There are no other facts alleged to show that Lawson ultimately was prejudiced by the confiscation of the documents which he states were taken.

The plaintiff has filed a complaint and an amended complaint in this case, and has actively pursued this lawsuit.  Even assuming *arguendo* that a copy of a pleading from this case was contained in the file, and was not returned, there is no allegation of fact by the plaintiff to support a claim that he has been denied access to the courts, because there is no showing of prejudice to him. <u>Lewis</u> <u>v. Casey</u>, <u>supra</u>.  As to this claim, there is no genuine issue as to material facts, and the defendants are entitled to summary judgment. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>.

### III. <u>Conclusion</u>

It is therefore recommended that: 1) the defendants' motion to for summary judgment (DE# 30) be granted as to the claims that the plaintiff has been denied access to the law library at the Broward County Main Jail, and that documents were confiscated from him at the facility in November of 1999, and the motion for summary judgment otherwise be denied; 2) as to the defendant Broward County Department of Corrections and Rehabilitation, which is not amenable to suit for damages under 42 U.S.C. §1983, the amended complaint be

dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted; and 3) the case remain pending against the defendants Jenne and Hitchcock on the plaintiff's claims that: (a) in violation of his rights under the First Amendment he has been denied access to both religious and non-religious reading materials due to a ban on receipt of publications by inmates at the Broward County Main Jail, and (b) he has been subjected to confinement in a high custody cell at the Broward County Main Jail, without due process.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: May 24, 2001

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Ross Jay Lawson, <u>Pro Se</u>
     Inmate No. FL97-9905
     Broward County Main Jail
     P. O. Box 9356
     Fort Lauderdale, FL 33310


     Robert H. Schwartz, Esquire
     Tamatha S. Alvarez, Esquire
     ADORNO & ZEDER, P.A.
     888 Southeast Third Avenue
     The Legal Center, Suite 500
     Ft. Lauderdale, FL 33335-9002